# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) MUSCOGEE (CREEK) NATION,
    a federally recognized Indian tribe,

    *Plaintiff*,

v.

(1) TULSA COUNTY, OKLAHOMA;
(2) STEVE KUNZWEILER, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma; and
(3) VIC REGALADO, in his official capacity as Tulsa County Sheriff,

    *Defendants*.

Case No. 25-cv-00075-JFJ

# COMPLAINT

Plaintiff the Muscogee (Creek) Nation ("Nation"), a federally recognized tribal government, by and through counsel, states as follows:

## INTRODUCTION

1. In *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the United States Supreme Court affirmed that in a series of treaties between the 1830s and the 1860s, Congress established a federally protected reservation for the Nation. *Id*. at 899–902. It further affirmed that Congress has never disestablished the Creek Reservation and that, accordingly, the Reservation today remains Indian country under 18 U.S.C. § 1151(a). *Id*. at 902–13.

2. Within Indian country (which includes federal Indian reservations), criminal jurisdiction over Indians is shared between the federal government and tribal governments, exclusive of state jurisdiction. "The policy of leaving Indians free from state jurisdiction and control is deeply rooted in this Nation's history." *Id*. at 928 (citation omitted). Accordingly, neither states nor their political subdivisions may exercise criminal jurisdiction over Indians within Indian country absent "a clear expression of the intention of Congress" to authorize such jurisdiction. *Id*. at 929 (citation omitted); *see also, e.g.*, *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1004 (10th Cir. 2015) ("[U]nless Congress provides an exception to the rule[,] … states possess 'no authority' to prosecute Indians for offenses in Indian country." (quoting *Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980))).

3. In *McGirt*, the Supreme Court confirmed that "Oklahoma cannot come close to satisfying this standard," because Congress has never granted it jurisdiction to prosecute Indians for conduct arising in Indian country. 591 U.S. at 929.

4. That holding applies equally to Oklahoma county governments, because the only criminal powers that those counties possess necessarily derive from Oklahoma's authority. *See Large v. Fremont Cnty.*, 670 F.3d 1133, 1146 (10th Cir. 2012) ("[C]ounties are created by the State as convenient agencies for exercising such of the governmental powers *of the state* as may be entrusted to them." (quotation marks and citation omitted)); *Herndon v. Anderson*, 25 P.2d 326, 329 (Okla. 1933) (a county "has no inherent powers but derives [its] powers solely from the state").

5. *McGirt* therefore put Defendants Tulsa County, its District Attorney, and its Sheriff (collectively "the County") on clear notice that they lack criminal jurisdiction over Indians within the exterior boundaries of the Creek Reservation and that prosecuting Indians under color of such jurisdiction absent the assent of Congress violates federal law.

6. Nevertheless, the County has announced its intention to continue prosecuting Indians for conduct arising within the Creek Reservation after *McGirt*. It claims, despite a wealth of controlling precedent to the contrary, that the State of Oklahoma (and therefore its county governments) enjoys criminal jurisdiction over non-member Indians within the Creek Reservation based on the Oklahoma Court of Criminal Appeals' recent decision in *City of Tulsa v. O'Brien*, Case Number: S-2023-715, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024).[1]

7. The County's prosecution of Indians for conduct occurring within the Creek Reservation constitutes an ongoing violation of federal law and irreparably harms the Nation's sovereignty by subjecting non-member Indians within the Creek Reservation to laws and a

---

[1] Erin Conrad, *Oklahoma Court Rules Some Tribal Members Can Be Prosecuted in State Court*, News on 6 (Jan. 6, 2025), https://bit.ly/3X10JV8.

2

criminal justice system other than the laws and system maintained by the Nation. Doing so impermissibly interferes with the Nation's federally protected rights of self-government.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1362. The Nation maintains a government-to-government relationship with the United States and has a governing body duly recognized by the United States Department of the Interior. The Nation asserts claims arising under the principles of federal Indian law governing federal, tribal, and state authority within Indian country.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the actions or omissions giving rise to the claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and the District Attorney principally discharges his official duties in this District.

## PLAINTIFF

10. Plaintiff the Muscogee (Creek) Nation is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior. *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 99,899-01, 99,901 (Dec. 11, 2024). The Nation exercises sovereign powers of self-governance and jurisdiction over the Creek Reservation, which was guaranteed to the Nation and defined by Congress in the Treaty with the Creeks, 7 Stat. 366 (1832); Treaty with the Creeks, 7 Stat. 417 (1833); Treaty with the Creeks and Seminole, 11 Stat. 699 (1856); and Treaty with the Creeks, 14 Stat. 785 (1866). *See McGirt*, 591 U.S. at 899–902.

11. The Nation, through its Attorney General, Lighthorse police, tribal court system, and comprehensive criminal code, provides for criminal law enforcement "over all Indians

alleged to have committed in Muscogee (Creek) Nation Indian Country a criminal offense enumerated and defined by any law or statute of the Muscogee (Creek) Nation insofar as not prohibited by federal law." MCN Code tit. 27, § 1-102(C).[2] To ensure coordinated law enforcement and public safety, the Nation has incorporated into its criminal code "any criminal offense prescribed by" other governments within the Nation's Reservation boundaries, including Tulsa County. NCA 22-048 (codified at MCN Code tit. 14, § 2-114(B)).[3] Likewise, the Nation revised its traffic code in 2020 to mirror Oklahoma's traffic code (which includes criminal provisions). NCA 20-087 (codified at MCN Code tit. 14, ch. 3).[4]

## DEFENDANTS

12.  Defendant Tulsa County is a county government organized under the laws of the State of Oklahoma. The County is located wholly within the exterior boundaries of the State of Oklahoma, and approximately sixty-seven percent of Tulsa County is located within the Creek Reservation and the remaining thirty-three percent is located within the exterior boundaries of the Cherokee Reservation.

13.  Defendant Steve Kunzweiler is the District Attorney ("District Attorney") for the Fourteenth Prosecutorial District of Oklahoma, which encompasses Tulsa County, and is sued in his official capacity.

14.  Defendant Vic Regalado is the Tulsa County Sheriff ("Sheriff") and is sued in his official capacity.

## STANDING

15.  The County's policy, as stated and enforced by the District Attorney and the

---

[2] https://bit.ly/42tVIry.
[3] https://bit.ly/40NwUtn.
[4] https://bit.ly/3PTjhTd.

4

Sheriff, of pursuing prosecutions against Indians for conduct within the Creek Reservation is causing irreparable injury to the Nation by interfering with its sovereignty and undermining the authority of its own criminal justice system, including the authority of its Attorney General, Lighthorse police, and courts to prosecute under the Nation's own laws criminal offenses committed by Indians within its Reservation. *See Ute Indian Tribe*, 790 F.3d at 1005–06 (stating that there is "just no room to debate" that state and county prosecution of an Indian within a tribe's Indian country absent the assent of Congress is an "infringement on tribal sovereignty" and causes "irreparable injury" to the tribe).

16. The District Attorney's and Sheriff's stated policies to pursue such prosecutions demonstrate that, absent judicial intervention, the County will persist with this unlawful conduct.

17. This Court can redress the injury that the County is inflicting on the Nation and its right to self-government by issuing a declaratory judgment that the County lacks criminal jurisdiction over Indians within the Creek Reservation absent the assent of Congress, and by enjoining the County from prosecuting Indians except where authorized by Congress going forward.

**THE SUPREME COURT'S DECISION IN *McGIRT v. OKLAHOMA***

18. In *McGirt*, the United States Supreme Court affirmed that in treaties entered between 1832 and 1866, Congress established and defined a federally protected Indian reservation for the Nation. 591 U.S. at 899–902. The Court further affirmed that, since 1866, Congress has never disestablished the Creek Reservation and that it remains Indian country today under 18 U.S.C. § 1151(a). *Id*. at 902–13.

19. *McGirt*'s holding that the Creek Reservation is Indian country confirms

that the settled jurisdictional rules that allocate state, tribal, and federal criminal jurisdiction within Indian country apply within the Creek Reservation. Among those rules is that "within Indian country, generally only the federal government or an Indian tribe may prosecute Indians for criminal offenses," and that "unless Congress provides an exception to the rule[,] … states possess no authority to prosecute Indians for offenses in Indian country." *Ute Indian Tribe*, 790 F.3d at 1003–04 (quotation marks omitted). *McGirt* concluded that "Oklahoma cannot come close to" showing that Congress has ever authorized it to exercise criminal jurisdiction over Indians within reservation boundaries. 591 U.S. at 929.

20. Because the County possesses only those powers derived from the State of Oklahoma, the rule reiterated in *McGirt* and *Ute Indian Tribe* applies to it as it does to Oklahoma. *See Ute Indian Tribe*, 790 F.3d at 1006 (rule against state criminal jurisdiction over Indians in Indian country applies to "a state and its subdivisions").

**THE COUNTY'S CONTINUED CLAIM TO CRIMINAL JURISDICTION OVER INDIANS FOR CONDUCT WITHIN THE CREEK RESERVATION AFTER *McGIRT***

21. On January 6, 2025, the District Attorney announced that, pursuant to the Oklahoma Court of Criminal Appeals' decision in *O'Brien*, the County enjoys jurisdiction to prosecute defendants who "are Indians but non-tribal members" of the tribe in whose Indian country the charged conduct occurred—i.e., "non-member Indians."[5]

22. The Nation is aware of multiple such prosecutions for conduct occurring within the Creek Reservation, including five in which the County has very recently opposed the non-member Indian Defendant's motion to dismiss the prosecution and the Tulsa County District Court has authorized the prosecutions to proceed in spite of those motions.

---

[5] *Supra* note 1.

23. The County brought each of these five prosecutions in the district court of Tulsa County, Oklahoma. These cases are styled *Oklahoma v. Bohanan*, No. CM-2022-108 (filed January 10, 2022);[6] *Oklahoma v. Hess*, No. CM-2024-2951 (filed Aug. 8, 2024);[7] *Oklahoma v. Mason*, No. CM-2024-4510 (filed Nov. 27, 2024);[8] *Oklahoma v. Neafus*, No. CM-2024-1222 (filed Apr. 3, 2024);[9] and *Oklahoma v. Morris*, No. CM-2024-4494 (filed Nov. 26, 2024).[10]

24. In each case, the charged conduct occurred within the boundaries of the Creek Reservation.

25. In each case, the Indian defendant challenged the prosecution based on the long-settled law, reaffirmed in *McGirt*, that states and their political subdivisions lack criminal jurisdiction over Indians in Indian country absent the assent of Congress.

26. In each case, the County asserted that the prosecution was justified on the basis of the Oklahoma Court of Criminal Appeals' decision in *O'Brien*.

27. And in each case, the District Court in and for Tulsa County, Oklahoma, accepted the County's arguments, denied the Indian defendant's motion to dismiss, and permitted the prosecution to move forward.

28. The Tulsa County Sheriff has additionally adopted a policy of booking and classifying inmates and asserting criminal jurisdiction over non-member Indians in light of *O'Brien*. In a memorandum that the Sheriff's Department provided to the Nation on January 24, 2025, the Sheriff stated that "tribal members will be charged by tribal courts only if they are a

---

[6] https://bit.ly/40S33il.
[7] https://bit.ly/4hXWPV7.
[8] https://bit.ly/3WXNJiY.
[9] https://bit.ly/42RpFls.
[10] https://bit.ly/40YX7Eg.

member of the tribe in which the criminal offense took place…. Any other tribal citizens will not be booked or charged into tribal courts but rather STATE court and booked into [the David L. Moss Criminal Justice Center] as any other citizen."

29. The David L. Moss Criminal Justice Center is operated by the Sheriff.[11]

30. Although the County purports to justify its policies and decisions on the basis of the Oklahoma Court of Criminal Appeals' decision in *O'Brien*, that case does not alter the longstanding Supreme Court and Tenth Circuit precedents prohibiting state criminal prosecution of Indians for conduct within Indian country absent the assent of Congress. *See Hewitt v. Parker*, No. 08-CV-227, 2012 WL 380335, at *4 (N.D. Okla. Feb. 6, 2012) ("this Court owes no deference to the OCCA's adjudication of" questions of federal law); *see also, e.g.*, *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016) ("[I]t is beyond cavil that we are not bound by a state court interpretation of federal law." (citation omitted)). Those precedents remain binding.

31. The County accordingly lacks all authority to depart from the jurisdictional framework reaffirmed in *McGirt* and *Ute Indian Tribe* and to instead apply a contrary rule on the basis of a state court decision. Doing so is a flagrant violation of controlling federal law and the Supremacy Clause in the United States Constitution and inflicts irreparable harm on the Nation's sovereignty.

## COUNT 1

32. The Nation restates, realleges, and incorporates by reference all preceding paragraphs and allegations.

33. The Creek Reservation is Indian country under 18 U.S.C. § 1151(a).

34. Within its Reservation, the Creek Nation and the United States possess

---

[11] *See* Tulsa County Sheriff's Office, *Jail Information*, https://bit.ly/3X0nRTH.

criminal jurisdiction over Indians exclusive of the State of Oklahoma and its political subdivisions, which are prohibited under federal law from asserting any such jurisdiction absent the assent of Congress. Congress has not authorized such jurisdiction here.

35. The County continues to assert criminal jurisdiction over Indians for conduct occurring within the Creek Reservation despite the lack of congressional authorization. The County's actions directly contravene federal law.

36. The District Attorney and Sheriff have announced that it is the County's policy to continue asserting criminal jurisdiction over Indians for conduct within the Creek Reservation absent judicial intervention.

## PRAYER FOR RELIEF

WHEREFORE, the Nation respectfully requests that this Court:

A. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of the Nation that the County lacks criminal jurisdiction over Indians for conduct occurring within the Creek Reservation and that the County's continued assertion of that jurisdiction violates federal law.

B. Enter a noticed temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) prohibiting the County from exercising criminal jurisdiction over Indians for conduct occurring within the Creek Reservation absent express authorization from Congress.

C. Preliminarily and permanently enjoin the District Attorney from exercising criminal jurisdiction over Indians for conduct occurring within the Creek Reservation absent express authorization from Congress.

D. Award the Nation its reasonable attorney fees and costs.

E. Award the Nation such other relief as the Court deems just and appropriate.

Dated: February 13, 2025

Geraldine Wisner, OBA No. 20128
Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com

O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

Respectfully submitted,

/s/Riyaz A. Kanji
Riyaz A. Kanji
David A. Giampetroni
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

Philip H. Tinker
Stephanie R. Rush, OBA No. 34017
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Ave., Ste. 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com
vrush@kanjikatzen.com

*Counsel for Muscogee (Creek) Nation*

**CERTIFICATE OF SERVICE**

I certify that on February 13, 2025, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji