**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

(1) MUSCOGEE (CREEK) NATION,
   a federally recognized Indian tribe,

          *Plaintiff*,

v.

(1) TULSA COUNTY, OKLAHOMA;
(2) STEVE KUNZWEILER, in his official
   capacity as District Attorney for the
   Fourteenth Prosecutorial District of
   Oklahoma; and
(3) VIC REGALADO, in his official capacity
   as Tulsa County Sheriff,

          *Defendants*.

Case No. 25-cv-00075-JFJ

**MOTION OF THE MUSCOGEE (CREEK) NATION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
AND OPENING BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES....................................................................................................ii

INTRODUCTION ................................................................................................................1

BACKGROUND ..................................................................................................................3

I.    Allocation of Criminal Jurisdiction on the Creek Reservation............................3

II.   The County's Assertion of Criminal Jurisdiction over Non-Member Indians After
      *City of Tulsa v. O'Brien* ....................................................................................4

ARGUMENT .......................................................................................................................5

I.    The Nation Has Standing To Bring This Action. ..................................................5

II.   The Nation Amply Satisfies the Four-Factor Test for a Temporary Restraining
      Order and a Preliminary Injunction. .....................................................................6

      A.    The Nation Is Likely To Succeed on the Merits. .....................................7

            1.    Under Long-Settled Supreme Court Precedent, States Lack Criminal
                  Jurisdiction over *All* Indians in Indian Country Absent Congressional
                  Assent.................................................................................................7

            2.    Congress Likewise Recognizes No Distinction Between Member and
                  Non-Member Indians for Purposes of State Criminal Jurisdiction in
                  Indian Country. ...............................................................................10

            3.    *Castro-Huerta* Repeatedly Disclaims Any Intent To Alter Settled
                  Precedents Addressing State Criminal Jurisdiction over Indians. ............12

            4.    *Castro-Huerta*'s Constitutional Foundation Forecloses Any Distinction
                  Between Member and Non-Member Indians............................................13

            5.    *O'Brien* Does Nothing To Undermine the Nation's Likelihood of
                  Success on the Merits.......................................................................17

      B.    The Nation Will Suffer Irreparable Harm Without a Preliminary Injunction. .......20

      C.    The Balance of Harms and the Public Interest Strongly Favor a Temporary
            Restraining Order and Preliminary Injunction.......................................22

CONCLUSION....................................................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton,*
    521 U.S. 203 (1997) .................................................................................................. 18

*Baker v. USD 229 Blue Valley,*
    979 F.3d 866 (10th Cir. 2020) ................................................................................... 5

*Bosse v. Oklahoma,*
    360 P.3d 1203 (Okla. Crim. App. 2015) ................................................................... 19

*Bosse v. Oklahoma,*
    580 U.S. 1 (2016) ................................................................................................ 18, 19

*Brassfield v. Oklahoma,*
    544 P.3d 938 (Okla. 2024) ......................................................................................... 8

*City of Tulsa v. O'Brien,*
    Case Number: S-2023-715, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024) ........... passim

*Conover v. Oklahoma,*
    933 P.2d 904 (Okla. Crim. App. 1997) ..................................................................... 19

*Denver Homeless Out Loud v. Denver,*
    32 F.4th 1259 (10th Cir. 2022) .................................................................................. 6

*Dick v. United States,*
    208 U.S. 340 (1908) .................................................................................................. 20

*Duro v. Reina,*
    495 U.S. 676 (1990) ....................................................................................... 10, 11, 12

*Fisher v. District Court,*
    424 U.S. 382 (1976) .................................................................................................. 22

*Garcia v. San Antonio Metropolitan Transit Authority,*
    469 U.S. 528 (1985) ............................................................................................ 15, 20

*Haaland v. Brackeen,*
    599 U.S. 255 (2023) .................................................................................................. 14

*Hagen v. Utah,*
    510 U.S. 399 (1994) ............................................................................................... 7, 9

*Herndon v. Anderson,*
    25 P.2d 326 (Okla. 1933) ............................................................................................ 7

ii

*Herrera v. Wyoming,*
   587 U.S. 329 (2019) ................................................................................ 19, 20

*Hewitt v. Parker,*
   No. 08-CV-227, 2012 WL 380335 (N.D. Okla. Feb. 6, 2012) .................................. 18

*Kansas v. Garcia,*
   589 U.S. 191 (2020) ...................................................................................... 17

*Large v. Fremont County,*
   670 F.3d 1133 (10th Cir. 2012) ......................................................................... 7

*Ledbetter v. Oklahoma,*
   933 P.2d 880 (Okla. Crim. App. 1997) ............................................................... 19

*Little v. Budd Co., Inc.,*
   955 F.3d 816 (10th Cir. 2020) ......................................................................... 18

*Mallory v. Norfolk Southern Railway Co.,*
   600 U.S. 122 (2023) ...................................................................................... 18

*Maricopa County v. Valley National Bank of Phoenix,*
   318 U.S. 357 (1943) ...................................................................................... 15

*McGirt v. Oklahoma,*
   591 U.S. 894 (2020) ............................................................................... passim

*Means v. Navajo Nation,*
   432 F.3d 924 (9th Cir. 2005) .......................................................................... 9, 10

*Muscogee (Creek) Nation v. Ballard,*
   Case No. 4:25-cv-00050-CVE-JFJ (N.D. Okla. filed Jan. 29, 2025)............................ 2

*Muscogee (Creek) Nation v. Iski,*
   Case No. 6:25-cv-00028-CVE (E.D. Okla. filed Jan. 28, 2025).................................. 2

*Oklahoma v. Bohanan,*
   No. CM-2022-108 (Tulsa Cnty. Dist. Ct. filed Jan. 10, 2022) ................................... 5

*Oklahoma v. Castro-Huerta,*
   597 U.S. 629 (2022) ............................................................................... passim

*Oklahoma v. Hess,*
   No. CM-2024-2951 (Tulsa Cnty. Dist. Ct. filed  Aug. 8, 2024)................................. 5

*Oklahoma v. Mason,*
   No. CM-2024-4510 (Tulsa Cnty. Dist. Ct. filed Nov. 27, 2024).................................. 5

*Oklahoma v. Morris,*
  No. CM-2024-3928 (Tulsa Cnty. Dist. Ct. filed Oct. 14, 2024)...................................5

*Oklahoma v. Neafus,*
  No. CM-2024-1222 (Tulsa Cnty. Dist. Ct. filed Apr. 3, 2024)...................................5

*Payne v. Tennessee,*
  501 U.S. 808 (1991) ...................................................................................... 19

*Pollard v. Hagan,*
  44 U.S. 212 (1845) ........................................................................................ 15

*Prairie Band of Potawatomi Indians v. Pierce,*
  253 F.3d 1234 (10th Cir. 2001) .................................................................. 6, 21

*Prairie Band watomi Nation v. Wagnon,*
  476 F.3d 818 (10th Cir. 2007) .......................................................................25

*Puerto Rico Department of Consumer Affairs v. Isla Petroleum Corp.,*
  485 U.S. 495 (1988) ...................................................................................... 17

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
  490 U.S. 477 (1989) ...................................................................................... 18

*Seminole Tribe of Florida v. Florida,*
  517 U.S. 44 (1996) ........................................................................................ 14

*Skiriotes v. Florida,*
  313 U.S. 69 (1941) ........................................................................................ 15

*Sturges v. Crowninshield,*
  17 U.S. (4 Wheat.) 122 (1819) ................................................................. 15, 16

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,*
  460 U.S. 533 (1983) ...................................................................................... 18

*Torres v. Texas Department of Public Safety,*
  597 U.S. 580 (2022) ...................................................................................... 16

*United States v. Ballard,*
  Case No. 4:24-cv-00626-CVE-SH (N.D. Okla. filed Dec. 23, 2024).......................... 2

*United States v. Comstock,*
  560 U.S. 126 (2010) ...................................................................................... 15

*United States v. Iski,*
  Case No. CIV-24-493-CVE (E.D. Okla. filed Dec. 23, 2024) .................................. 2

iv

*United States v. Kagama*,
118 U.S. 375 (1886) ........................................................................................ 17

*United States v. Lara*,
541 U.S. 193 (2004) ................................................................................... passim

*United States v. Maloid*,
71 F.4th 795 (10th Cir. 2023) ......................................................................... 18

*United States v. Pink*,
315 U.S. 203 (1942) ........................................................................................ 16

*U.S. Term Limits, Inc. v. Thornton*,
514 U.S. 779 (1995) ........................................................................................ 15

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence*,
22 F.4th 892 (10th Cir. 2022) ......................................................................... 16

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*,
790 F.3d 1000 (10th Cir. 2015) ................................................................. passim

*Vietti v. Welsh & McGough, PLLC*,
Case No. 21-CV-58-JFH-SH, 2022 WL 1288314 (N.D. Okla. Apr. 30, 2022) ......................... 6

*Ward v. Race Horse*,
163 U.S. 504 (1896) ........................................................................................ 19

*Williams v. Lee*,
358 U.S. 217 (1959) .......................................................................................... 9

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008) ............................................................................................. 6

*Wyandotte Nation v. Sebelius*,
443 F.3d 1247 (10th Cir. 2006) ....................................................................... 20

**Constitutional Provisions and Statutes**

25 U.S.C. § 1301(1) ................................................................................. 11, 12

25 U.S.C. § 1301(2) .............................................................................. 4, 5, 24

Act of Mar. 3, 1885, ch. 341, 23 Stat. 362 ........................................................ 17

Act of Aug. 15, 1953, Pub. L. No. 83-280, 67 Stat. 588 ................................ 11, 12

Muscogee (Creek) Nation Code tit. 14 ...................................................................... 22

Muscogee (Creek) Nation Code tit. 16 ...................................................................... 22

Muscogee (Creek) Nation Code tit. 27 ...................................................................... 22

Muscogee (Creek) Nation Const. art. VII ..................................................................22

U.S. Const. amend. X............................................................................... 13, 14, 19

**Legislative Material**s

H.R. Conf. Rep. No. 101-938, 1990 WL 201576 (1990)............................................... 12

H.R. Conf. Rep. No. 102-261, 1991 WL 218024 (1991)............................................... 12

H.R. Rep. No. 102-61 (1991)................................................................................ 12

**Other Authorities**

*Cohen's Handbook of Federal Indian Law* (Nell Jessup Newton ed., 2012) ............................ 16

Erin Conrad, *Oklahoma Court Rules Some Tribal Members Can Be Prosecuted in State Court*,
    News on 6 (Jan. 6, 2025)............................................................................... 1

*Katie Hallum*, *Tulsa Prosecutor Takes On Case of Cherokee Citizen on Muscogee Land
    After Criminal Appeals Court Decision*, KOSU (Jan. 9, 2025) ............................................. 1, 4

Restatement of the Law of American Indians § 71........................................................ 10

William C. Canby, Jr., *American Indian Law in a Nutshell* (7th ed. 2020)................................. 10

## INTRODUCTION

The Muscogee (Creek) Nation ("Nation") respectfully moves this Court for a temporary restraining order (which it seeks with full notice to the Defendants) and a preliminary injunction prohibiting Defendants Tulsa County, Oklahoma; Steve Kunzweiler, District Attorney for Oklahoma's Fourteenth Prosecutorial District (which encompasses Tulsa County); and Vic Regalado, Tulsa County Sheriff (collectively the "County"), from asserting criminal jurisdiction over Indians within the boundaries of the Muscogee (Creek) Reservation. Pursuant to the United States Constitution and bedrock principles of federal Indian law, Oklahoma and its political subdivisions may exercise criminal jurisdiction over Indians within the Reservation only with the assent of Congress. "Nor has Congress ever passed a law conferring jurisdiction on Oklahoma." *McGirt v. Oklahoma*, 591 U.S. 894, 932 (2020).

The County nevertheless asserts that it enjoys authority to prosecute certain Indians for conduct within the Creek Reservation and is presently undertaking such prosecutions. It contends that, under the authority of *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), and the recent decision of the Oklahoma Court of Criminal Appeals ("OCCA") in *City of Tulsa v. O'Brien*, Case Number: S-2023-715, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024), Oklahoma and its political subdivisions enjoy criminal jurisdiction within Indian country over defendants who "are Indians but non-tribal members" of the tribe in whose Indian country the charged conduct occurred (hereafter "non-member Indians").[1]

---

[1] Katie Hallum, *Tulsa Prosecutor Takes On Case of Cherokee Citizen on Muscogee Land After Criminal Appeals Court Decision*, KOSU (Jan. 9, 20205), https://bit.ly/3WDmNEZ; *see also* Erin Conrad, *Oklahoma Court Rules Some Tribal Members Can Be Prosecuted in State Court*, News on 6 (Jan. 6, 2025), https://bit.ly/3ECoYTd. The County has reiterated these assertions in briefs filed in its own courts. *See, e.g.*, State's Response Objecting to Defendant's Motion to Dismiss, *Oklahoma v. Bohanan*, Case No. CM-2022-108 (Dist. Ct. Tulsa Cnty. Jan. 27, 2025), https://bit.ly/4gGPacH.

The County is wrong. *O'Brien* premises its analysis on *Castro-Huerta*, and that reliance is entirely misplaced. *Castro-Huerta* repeatedly disavows any intent to address state criminal jurisdiction over Indians in Indian country. *See* 597 U.S. at 650 n.6 (referring to "crimes committed by an Indian" and stating that "[w]e express no view on state jurisdiction over a criminal case of that kind"); *id*. at 655 n.9 ("To reiterate, we do not take a position on that question."). *Castro-Huerta* instead confines its holding to state jurisdiction over *non*-Indians, which it upholds as a matter of state power reserved by the Tenth Amendment—and long-settled Supreme Court precedent confirms that the Tenth Amendment reserves to states no measure of criminal jurisdiction over any Indians in Indian country.

The Nation accordingly has a strong likelihood of success on the merits of this suit, as further evidenced by the fact that the United States is in full accord with the Nation's position. On December 23, 2024, the United States filed suit in this Court against the District Attorney for Rogers, Craig, and Mayes Counties, and in the Eastern District of Oklahoma against the District Attorney for McIntosh and Okmulgee Counties, for unlawfully prosecuting non-member Indians and seeking preliminary and permanent injunctive relief. *United States v. Ballard*, Case No. 4:24-cv-00626-CVE-SH (N.D. Okla. filed Dec. 23, 2024); *United States v. Iski*, Case No. CIV-24-493-CVE (E.D. Okla. filed Dec. 23, 2024). The Nation has likewise filed suit against those District Attorneys. *Muscogee (Creek) Nation v. Ballard*, Case No. 4:25-cv-00050-CVE-JFJ (N.D. Okla. filed Jan. 29, 2025); *Muscogee (Creek) Nation v. Iski*, Case No. 6:25-cv-00028-CVE (E.D. Okla. filed Jan. 28, 2025). The United States and the Nation concur as to the requirements of federal law that control the outcome of their respective suits. *Compare, e.g.*, United States' Motion for Preliminary Injunction and Opening Brief in Support, *United States v. Ballard* ("U.S. Br."), *with*

Motion of Muscogee (Creek) Nation for Preliminary Injunction and Opening Brief in Support, *Muscogee (Creek) Nation v. Ballard*.

The other requirements for a noticed temporary restraining order and preliminary injunction are likewise satisfied here. The County's unlawful assertion of criminal jurisdiction over Indians within the Creek Reservation irreparably harms the Nation's sovereignty, as repeated decisions of the Tenth Circuit confirm. Permitting the County to continue asserting such jurisdiction during the pendency of this action would only compound that harm. And the balance of the equities and the public interest tip decisively in favor of putting a prompt end to the County's unceasing violation of federal law. In addition to direct impairment of the Nation's sovereignty, assertions of criminal jurisdiction over non-member Indians by counties within the Creek Reservation have contributed to "intolerable jurisdictional chaos" in Oklahoma Indian country, and "if allowed to stand would seriously impact the United States' ability to protect tribal sovereignty and its own prosecutorial jurisdiction both in Oklahoma and nationwide," U.S. Br. 2–3. A temporary restraining order and preliminary injunction should issue.

## BACKGROUND

### I.    Allocation of Criminal Jurisdiction on the Creek Reservation

In *McGirt*, the Supreme Court affirmed that in treaties entered between 1832 and 1866, Congress established a federally protected Indian reservation for the Nation, 591 U.S. at 899– 902, and that Congress has never disestablished the Reservation, such that it remains Indian country today, *see id.* at 902–913. Accordingly, the settled rules governing state, tribal, and federal criminal jurisdiction within Indian country govern within the Creek Reservation. These include the cardinal principle that "a clear expression of the intention of Congress" is required before states may prosecute Indians within Indian country. *Id.* at 929 (citation omitted); *see also,*

*e.g.*, *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000, 1003 (10th Cir. 2015) ("[U]nless Congress provides an exception to the rule[,] … states possess no authority to prosecute Indians for offenses in Indian country." (quotation marks omitted)). *McGirt* confirms, moreover, that "Oklahoma cannot come close" to establishing that Congress has authorized it to exercise criminal jurisdiction over Indians in Indian country. 591 U.S. at 929.

## II.    The County's Assertion of Criminal Jurisdiction over Non-Member Indians After *City of Tulsa v. O'Brien*

On January 6, 2025, Defendant District Attorney Kunzweiler announced publicly that the County would rely on the OCCA's decision in *O'Brien* to prosecute defendants who "are Indians but non-tribal members" of the tribe in whose Indian country the charged conduct occurred.[2] Defendant Sheriff Regalado, in a written statement announcing a new County policy in light of *O'Brien*, additionally instructed his department that going forward, "tribal members will be charged by tribal courts only if they are a member of the tribe in which the criminal offense took place…. Any other tribal citizens will not be booked or charged into tribal courts but rather the STATE court and booked into [the Tulsa County Jail] as any other citizen." Decl. of Att'y Gen. Geraldine Wisner ¶ 5, Ex. 2.

Moreover, the County's new jail policy, which it provided to the Nation on January 24, 2025, *see* Wisner Decl. ¶ 5, not only purports to authorize its criminal jurisdiction over non-member Indians within the Creek Reservation, it reflects the County's intent to undermine *the Nation's* authority to assert jurisdiction over such Indians, despite the fact that such jurisdiction is guaranteed by federal law.[3] Under the policy, for Indian conduct occurring within the Creek

---

[2] Hallum, *supra* note 1.

[3] *See* 25 U.S.C. § 1301(2) (tribal "'powers of self-government'" include "the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians");

Reservation, "[t]he *only tribal arrests that will take place* will be Creek Citizens …. All others will be booked into [the Tulsa County Jail] and charged in Tulsa Co. District Court." *Id.* ¶ 5, Ex. 2. (emphasis added).

Exemplary of the new policy, the Tulsa County District Court held hearings on January 31, 2025, in five prosecutions brought by the County against non-member Indians for conduct within the Creek Nation. In each case, the non-member Indian defendant challenged the County's jurisdiction based on his or her Indian status and the Indian country status of the Creek Reservation and relied explicitly on *McGirt*. In each case, the County opposed the jurisdictional challenge under the authority of *Castro-Huerta* and *O'Brien*. And in each case, the Tulsa County District Court rejected the jurisdictional challenge and allowed the prosecutions to proceed.[4]

The County is knowingly prosecuting these and other defendants with full knowledge of their Indian status and the Indian country status of the Creek Reservation. Its public statements, prosecutorial conduct, and court filings confirm the County's full intent to continue doing so going forward.

## ARGUMENT

### I.    The Nation Has Standing To Bring This Action.

Standing requires "(1) … an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020) (citation omitted). These elements are satisfied here. The County is prosecuting numerous Indians for conduct within the

---

*United States v. Lara*, 541 U.S. 193, 198 (2004) (tribes' inherent criminal jurisdiction extends to "'*all* Indians,' including nonmembers" (quoting 25 U.S.C. § 1301(2)).

[4] *Oklahoma v. Bohanan*, https://bit.ly/4gFfkwc; *Oklahoma v. Hess*, https://bit.ly/4hXWPV7; *Oklahoma v. Mason*, https://bit.ly/3WXNJiY; *Oklahoma v. Neafus*, https://bit.ly/42RpFls; *Oklahoma v. Morris*, https://bit.ly/3CLmhhA.

Creek Reservation and has publicly proclaimed and demonstrated its intent to continue to do so going forward as a matter of settled County policy. These assertions of jurisdiction constitute an invasion of the Nation's own sovereignty and right of self-government. The Tenth Circuit has repeatedly found such conduct by non-tribal governments to constitute unlawful interference with tribal self-government. *See infra* Section II.B. A decision in the Nation's favor would put an end to that interference. Article III standing obtains under these circumstances. *See, e.g.*, *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001).

## II.    The Nation Amply Satisfies the Four-Factor Test for a Temporary Restraining Order and a Preliminary Injunction.

"Except as to notice and duration, the legal standards governing a temporary restraining order … and a preliminary injunction are the same." *Vietti v. Welsh & McGough, PLLC*, Case No. 21-CV-58-JFH-SH, 2022 WL 1288314, at *2 (N.D. Okla. Apr. 30, 2022). The plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of [the requested] relief, that the balance of equities tips in his favor, and that [the relief] is in the public interest." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each of these factors weighs strongly in favor of a temporary restraining order and preliminary injunction.

The Nation seeks a noticed temporary restraining order in addition to a preliminary injunction given the important time sensitivities involved. Since the OCCA's decision in December, Tulsa County has aggressively pursued the prosecution of non-member Indian defendants and has announced new policies and practices designed to undermine the Nation's ability to exercise its own inherent, congressionally affirmed jurisdiction over those Defendants. Nor is the County alone in such efforts. *See supra* p. 2.

In November 2023, the Nation filed suit and sought a preliminary injunction against similar practices by the City of Tulsa. As of December 2024, when the parties sought a stay of that matter (which is pending in front of a different district court judge) in order to negotiate an end to the City's practices, the district court had not yet ruled on the Nation's motion for a preliminary injunction. The Nation is anxious to avoid a delay of that duration in the vindication of its sovereign rights here.

### A.    The Nation Is Likely To Succeed on the Merits.

Oklahoma counties possess only those criminal powers that they derive from Oklahoma. *See Large v. Fremont Cnty.*, 670 F.3d 1133, 1146 (10th Cir. 2012) ("[C]ounties are created by the State as convenient agencies for exercising such of the governmental powers *of the state* as may be entrusted to them." (quotation marks and citation omitted)); *Herndon v. Anderson*, 25 P.2d 326, 329 (Okla. 1933) (a county "has no inherent powers but derives [its] powers solely from the state"). Thus, if Oklahoma lacks criminal jurisdiction over non-member Indians in Indian country, then so does the County—and that is precisely the case.

### 1.    Under Long-Settled Supreme Court Precedent, States Lack Criminal Jurisdiction over *All* Indians in Indian Country Absent Congressional Assent.

When the Supreme Court issued its decision in *Castro-Huerta*, the law was crystal clear that "State courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country'" absent "a clear expression of the intention of Congress." *McGirt*, 591 U.S. at 898, 929 (citations omitted); *see also, e.g.*, *Hagen v. Utah*, 510 U.S. 399, 401–02, 408 (1994) (because "Congress has not granted criminal jurisdiction to … Utah to try crimes committed by Indians in Indian country," only if the locus of the crime "is not in Indian country" did Utah "properly exercise[] criminal jurisdiction over petitioner, an Indian" (quotation marks omitted)); *accord Ute Indian Tribe*, 790 F.3d at 1003 ("[U]nless Congress provides an exception to the rule[,] … states

possess no authority to prosecute Indians for offenses in Indian country." (quotation marks omitted)).

The County does not contest the controlling force of this rule with respect to member Indians. Nor does the State of Oklahoma or the Oklahoma Supreme Court. In *Brassfield v. Oklahoma*, 544 P.3d 938 (Okla. 2024), the Oklahoma Supreme Court recently confirmed that an Oklahoma county lacks criminal jurisdiction over a Cherokee citizen for conduct occurring within the Cherokee Reservation "because the State of Oklahoma lacks jurisdiction." *Id*. at 939. The State of Oklahoma concurred with this principle in its briefing to the Court. *See* Brief in Chief of Appellee Oklahoma State Bureau of Investigation at 5, *Brassfield v. Oklahoma* (No. 119,998), 2022 WL 4236254, at *5 ("Oklahoma did not have jurisdiction to prosecute this matter …. That jurisdiction would be with either the Federal Government or the Cherokee Nation in accordance with … *McGirt v. Oklahoma*[.]").

Instead, the County asserts that the presumptive prohibition against state criminal jurisdiction over Indians in Indian country does not apply to state jurisdiction over non-member Indians. However, the prohibition recognizes no distinction between member and non-member Indians. *McGirt*, after all, involved a non-member Indian defendant. *See* 591 U.S. at 898 (stating that defendant "is an enrolled member of the Seminole Nation of Oklahoma and his crimes took place on the Creek Reservation"). Yet the Court readily affirmed the applicability of the general rule. *See id*. at 898, 929, 932 (holding that "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country'" absent "a clear expression of the intention of Congress," and "Oklahoma cannot come close to satisfying this standard" in the case before the Court because Congress had not "ever passed a law conferring jurisdiction on Oklahoma" (citation omitted). These statements of governing law would have had no conceivable relevance

8

in the case if the non-member Indian defendant was, as the County contends, not subject to them.[5]

*McGirt* is the latest in a long line of precedent making plain that "when Congress has wished" states to enjoy criminal authority over Indians, "it has expressly granted them the jurisdiction[.]" *Williams v. Lee*, 358 U.S. 217, 221 (1959). And like *McGirt*, those precedents do not distinguish between member and non-member Indians. For example, in *Hagen*, the Court addressed a challenge to Utah's jurisdiction to prosecute a drug offense committed by a "member of the Little Shell Band of Chippewa Indians of Montana," Petitioner's Brief, *Hagen* (No. 92-6281), 1993 WL 384821, at *4, on land alleged to be part of the Uintah Reservation in Utah. And contrary to the District Attorney's position, the *Hagen* Court applied the rule that pertains to Indians generally: if the locus of the offense was Indian country, the Court reasoned, Utah lacked jurisdiction over the non-member Indian defendant—whom the Court referred to as simply "an Indian"—because Congress had not authorized the prosecution. *See* 510 U.S. at 401–02, 408 (because "Congress has not granted criminal jurisdiction to … Utah to try crimes committed by Indians in Indian country," only if the locus of the crime "is not in Indian country" did Utah "properly exercise[] criminal jurisdiction over petitioner, an Indian" (quotation marks omitted).

In sum, the Supreme Court has never distinguished between member and non-member Indians for purposes of state criminal jurisdiction. And the lower federal courts have adhered to the Supreme Court's controlling rule. In *Means v. Navajo Nation*, 432 F.3d 924 (9th Cir. 2005),

---

[5] The *McGirt* dissenters (each of whom joined, and one of whom authored, the *Castro-Huerta* majority opinion) did not dispute the applicability of these governing rules to the non-member Indian defendant, *see* 591 U.S. at 938–73 (Roberts, C.J., dissenting). They simply disagreed with the majority as to whether Congress had, in fact, provided the requisite statutory assent, *see id*. at 958–59 (discussing the "progression of major statutes" by which Congress allegedly conferred the disputed criminal jurisdiction on Oklahoma).

for example, the Ninth Circuit rejected a claim of state criminal jurisdiction within the Navajo Reservation over a defendant "who is not a member of the [Navajo] tribe, but who is an enrolled member of another Indian tribe," because "Arizona, like the majority of states, does not have jurisdiction to try Indians for offenses committed on a reservation[.]" *Id*. at 927, 933; *see also, e.g.*, Restatement of the Law of American Indians § 71 cmt. b ("Absent federal authorization, states have no jurisdiction over crimes committed by *an Indian* in Indian country." (emphasis added)); William C. Canby, Jr., *American Indian Law in a Nutshell* 215 (7th ed. 2020) ("[T]ribes … have jurisdiction over crimes by nonmember Indians in Indian country and the state does not.").

> **2.    Congress Likewise Recognizes No Distinction Between Member and Non-Member Indians for Purposes of State Criminal Jurisdiction in Indian country.**

In *Duro v. Reina*, 495 U.S. 676 (1990), the Supreme Court addressed whether tribes possess criminal jurisdiction over non-member Indians, and in so doing drew a sharp distinction between member and non-member Indians for purposes of tribal criminal jurisdiction. While acknowledging tribes' inherent criminal jurisdiction over member Indians, it concluded (in a ruling subsequently rejected by Congress) that "inherent tribal jurisdiction extends to tribe members only." *Id*. at 691.

However, nowhere did the *Duro* Court even hint that if tribes lack criminal jurisdiction over non-member Indians, states must therefore possess it. *See id*. at 684–96. To the contrary, the Court recognized that by holding that tribes lack criminal jurisdiction over non-member Indians, a jurisdictional gap would arise because of the corresponding lack of state authority. As the dissent put it:

> [T]he Court today creates a jurisdictional void …. Because of the Indian-against-Indian exception in 18 U.S.C. § 1152, federal courts have no jurisdiction over

10

> such crimes…. [and] *States do not have power* to exercise criminal jurisdiction over crimes involving Indians on the reservation…. Thus, under the Court's holding today, the tribe, the Federal Government, and *the State* each lack jurisdiction to prosecute the [non-member Indian] crime involved in this case.

*Id.* at 704–05 & n.3 (Brennan, J., dissenting) (emphasis added).

The *Duro* majority did not dispute that such a jurisdictional void would result from its ruling but deemed that an inadequate "policy … basis for finding tribal jurisdiction," *id*. at 698, in part because, under Public Law 280, states can assume the jurisdiction they otherwise lack: "States may, *with the consent of the tribes*, assist in maintaining order on the reservation by punishing minor crime. Congress has provided a mechanism by which the *States now without jurisdiction* in Indian country may assume criminal jurisdiction through Pub.L. 280." *Id*. at 697 (emphases added) (citation omitted). Again, the Court made these statements specifically in reference to state criminal jurisdiction over non-member Indians.

In other words, for purposes of *state* criminal jurisdiction in Indian country, both the majority and the dissent in *Duro* recognized that non-member Indians, like Indians generally, are subject to the rule that "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in Indian country" absent "a clear expression of the intention of Congress," *McGirt*, 591 U.S. at 898, 929 (quotation marks and citation omitted).

The *Duro* Court invited Congress to address the jurisdictional void it had acknowledged, noting that "[i]f the present jurisdictional scheme proves insufficient to meet the practical needs of reservation law enforcement, then the proper body to address the problem is Congress, which has the ultimate authority over Indian affairs." 495 U.S. at 698. Congress subsequently did just that, restoring to tribes the inherent criminal jurisdiction over non-member Indians that *Duro* had denied. *See* 25 U.S.C. § 1301(1) ("*Duro* fix"); *see United States v. Lara*, 541 U.S. 193 (2004)

(affirming constitutionality of *Duro* fix). And Congress did so precisely to fill the jurisdictional

void resulting from the absence of state criminal jurisdiction over non-member Indians:

> [T]he states do not have jurisdiction to try Indians for criminal offenses committed within Indian reservations except in those few instances in which Congress has conferred such authority upon them. Thus, *Duro*'s holding that tribes lack criminal jurisdiction over *non-member Indians* has created a void in the preservation of law and order on many reservations.

H.R. Rep. No. 102-61, at 3–4 (1991) (emphases added); *see also* H.R. Conf. Rep. No. 102-261,

at 5, 1991 WL 218024, at *5 (1991) (stating that unless jurisdiction is assumed under Public Law

280, "a state cannot exercise jurisdiction over crimes committed by non-tribal member Indians");

H.R. Conf. Rep. No. 101-938, 1990 WL 201576, at *104 (1990) ("[U]nless the Congress acts to

fill this jurisdictional void, [non-member Indians] … may come onto an Indian reservation,

commit a criminal misdemeanor, and know that there is *no governmental entity that has the*

*jurisdiction to prosecute them* for their criminal acts. Such is the situation across Indian country

since the Court's ruling[.]" (emphasis added)).[6]

*    *    *

In sum, neither the Supreme Court nor Congress has recognized any distinction between

member and non-member Indians for purposes of state criminal jurisdiction over Indians in

Indian country. As discussed next, *Castro-Huerta* does nothing to change that.

### 3. *Castro-Huerta* Repeatedly Disclaims Any Intent To Alter Settled Precedents Addressing State Criminal Jurisdiction over Indians.

*Castro-Huerta*, which involves state criminal jurisdiction over *non*-Indians, does not

disturb the long-settled precedents of the Supreme Court directly addressing state jurisdiction

---

[6] Dissenting on unrelated grounds in *Lara*, Justices Souter and Scalia (who was part of the *Duro* majority) agreed that "the principal object" of the *Duro* fix "was to close the jurisdictional void created by *Duro*[.]" 541 U.S. at 231 (Souter, J., and Scalia, J., dissenting) (quotation marks omitted).

over Indians. To the contrary, it refers to the issue of state jurisdiction over crimes by non-Indians in Indian country as "the narrow jurisdictional issue in this case" and distinguishes it from the question of state jurisdiction "over other crimes committed in Indian country, such as crimes committed by Indians," 597 U.S. at 648; *see also* U.S. Br. 9 (discussing same). And the Court repeatedly disclaimed any intent to address the latter issue. *See, e.g.*, 597 U.S. at 639 n.2 (describing state jurisdiction "over crimes committed by Indians in Indian country" as "a question not before us"); *id.* at 650 n.6 ("We express no view on state jurisdiction over a criminal case of that kind."); *id.* at 655 n.9 ("To reiterate, we do not take a position on that question.").

*Castro-Huerta* contains not a word distinguishing between member and non-member Indians or otherwise suggesting that non-member Indians are somehow swept up within its holding when "Indians" in general are so emphatically excluded from it. Indeed, as addressed next, *Castro-Huerta*'s constitutional underpinnings in fact preclude any such distinction.

### 4. ***Castro-Huerta*'s Constitutional Foundation Forecloses Any Distinction Between Member and Non-Member Indians.**

*Castro-Huerta* holds that states have jurisdiction concurrent with the federal government to prosecute *non*-Indians for crimes committed against Indians in Indian country. *Id.* at 655. The Court premised its conclusion explicitly on the Tenth Amendment:

> [T]he Constitution allows a State to exercise jurisdiction in Indian country.... [A]s a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country. **See U.S. Const., Amdt. 10**. As this Court has phrased it, a State is generally "entitled to the sovereignty and jurisdiction over all the territory within her limits." *Lessee of Pollard v. Hagan*, 3 How. 212, 228, 11 L.Ed. 565 (1845).

*Id*. at 636 (emphasis added). Accordingly,

> under the Constitution and this Court's precedents, the default is that States may exercise criminal jurisdiction within their territory[, **s]ee Amdt. 10** [,]… unless that jurisdiction is *preempted*.

*Id*. at 653 (emphasis added.

The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Under *Castro-Huerta*, since criminal authority over non-Indians in Indian country was not delegated exclusively to the United States by the Constitution, or prohibited by it to the states, a measure of that jurisdiction was reserved to the states by the Tenth Amendment, such that states enjoy "concurrent jurisdiction with the Federal Government to prosecute crimes committed by non-Indians against Indians in Indian country." 597 U.S. at 635.

This reasoning does not support state jurisdiction over crimes by Indians, given two central, undeniable propositions. <u>First</u>, as the Supreme Court underscored just this past Term: "In a long line of cases, we have characterized Congress's power to legislate with respect to the Indian tribes as 'plenary and exclusive.'" *Haaland v. Brackeen*, 599 U.S. 255, 272 (2023) (quotation marks and citation omitted) (collecting cases). That exclusive "power to legislate with respect to Indians …. includ[es] criminal law," *id*. at 275, extends to "Indians as individuals," *id*. at 278, and derives squarely from the Constitution, *see id.* at 273–74 (locating the grant of exclusive federal "authority to regulate Indians" in various constitutional provisions); *accord Lara*, 541 U.S. at 200 ("the Constitution grants Congress broad general powers to legislate in respect to Indian tribes" that are "plenary and exclusive" (citation omitted)). As a result, the Constitution places Indians in Indian country "under the exclusive control of the Federal Government," *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 62, 72 (1996); *see also* U.S. Br. 7 (stating that "the U.S. Constitution assigns Congress 'plenary and exclusive' responsibility over … the regulation of relationships with Indian tribes and people …. including criminal law").

<u>Second</u>, the Tenth Amendment reserves to states only "that residuum of sovereignty not delegated to the United States by the Constitution[.]" *Skiriotes v. Florida*, 313 U.S. 69, 77 (1941) (citation omitted). Thus, where the Constitution grants a power *exclusively* to Congress, no "residuum" of state authority remains because states retain sovereignty under the Tenth Amendment "*only to the extent* that the Constitution has not … transferred those powers to the Federal Government," *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 549 (1985) (emphasis added). In other words, where "Congress … has under the Constitution exclusive authority" over a matter, it falls outside of "the powers 'reserved to the States' under the Tenth Amendment." *Maricopa Cnty. v. Valley Nat'l Bank of Phoenix*, 318 U.S. 357, 361 (1943).[7] This has been well understood since the Founding. Chief Justice Marshall explained that when the Constitution grants a power to be "exercised exclusively by congress, the subject is … completely taken from the state[s] … as if they had been expressly forbidden to act on it," and no "concurrent power" is retained by the states. *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 193 (1819). And it has remained the understanding ever since. *See, e.g.*, *United States v. Comstock*, 560 U.S. 126, 144 (2010) ("Virtually by definition, these powers [delegated to Congress by the Constitution] are not powers that the Constitution 'reserved to the States.'"); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 801 (1995) (Tenth Amendment

---

[7] Oklahoma agrees and said so in its briefing in *Castro-Huerta*. *See* Petitioner's Brief at 16, *Castro-Huerta* (No. 21-429), 2022 WL 628282, at *16 (stating that states retain "that residuum of sovereignty not delegated to the United States by the Constitution itself" (quoting *Skiriotes*, 313 U.S. at 77). The United States agrees as well. *See* U.S. Br. 24 (because Congress's constitutional authority to regulate the conduct of Indians in Indian country is plenary and exclusive, "[t]he states … do not and cannot enjoy that responsibility under the structure of the U.S. Constitution"). Indeed, while *Castro-Huerta* quotes *Pollard v. Hagan*, 44 U.S. 212, 228 (1845), for the proposition that "a State is generally 'entitled to the sovereignty and jurisdiction over all the territory within her limits,'" 597 U.S. at 636, *Pollard* states that those "rights of sovereignty and jurisdiction" are "*subject to the rights surrendered by the Constitution to the United States*," 44 U.S. at 229 (emphasis added).

"unambiguously confirms" that states retained no rights of sovereignty over matters that the Constitution "*exclusively* delegated to the United States"); *United States v. Pink*, 315 U.S. 203, 233 (1942) (a power "vested in the national government exclusively" is "not shared by the States"); *Torres v. Tex. Dep't of Pub. Safety*, 597 U.S. 580, 612 (2022) (Thomas, J., dissenting, joined by Alito, J., Gorsuch, J., and Barrett, J.) ("Our precedents teach that whenever a power is 'exercised exclusively by Congress, the subject is as completely taken from the State Legislatures, *as if they had been expressly forbidden to act on it*.'" (quoting *Sturges*, 17 U.S. (4 Wheat.) at 193)).[8]

Taken together, the two principles lead to an inescapable conclusion. Because the Constitution vests criminal authority over Indians in Indian country exclusively in the federal government, the Tenth Amendment reserves no residuum of that authority to the states. *See Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence*, 22 F.4th 892, 899–900 (10th Cir. 2022) ("[T]he federal government's plenary and exclusive constitutional authority to legislate in respect to Indian tribes … leav[es] Indians free from state jurisdiction and control." (quotation marks omitted)), *cert. denied*, 143 S.Ct. 273 (2022).

Accordingly, as *McGirt* reaffirms, states lack that authority unless and until Congress confers it explicitly. *See, e.g.*, *Lara*, 541 U.S. at 211 (Stevens, J., concurring) ("Congress can authorize the States to exercise—as *their own*—inherent powers that the Constitution has otherwise placed off limits[.]"); *Cohen's Handbook of Federal Indian Law* § 6.03[1][a], at 512 (Nell Jessup Newton ed., 2012) (the Constitution "vests exclusive authority over Indian affairs in the federal government .… vis-à-vis the states … unless Congress legislates to the contrary").

---

[8] The *Torres* majority did not dispute this principle; it focused on other issues to resolve the case.

Once again, these principles allow for no distinction between member and non-member Indians. Congress's first criminal statute applicable to Indians in Indian country, the 1885 Major Crimes Act, provided for federal criminal prosecution of "*all Indians* … committing … the following crimes … within the limits of *any* Indian reservation[.]" Act of Mar. 3, 1885, ch. 341, § 9, 23 Stat. 362, 385 (emphases added). In upholding the constitutionality of that act, the Supreme Court confirmed that Congress's exclusive authority to prosecute Indians for an offense within a specific tribe's reservation requires only that the defendant be "an Indian of *some* tribe"—i.e., "the offending Indian shall belong to that *or some other* tribe," *United States v. Kagama*, 118 U.S. 375, 383 (1886) (emphasis added)); *see also id.* at 384–85 (that authority "never has existed" in the states, and the federal government "alone" possesses it).

*Castro-Huerta*'s declaration that "unless preempted, States have jurisdiction over crimes committed in Indian country," 597 U.S. at 638, accordingly defeats rather than supports the County's position. State criminal jurisdiction over all Indians—members and non-members—is indeed preempted by the Constitution's delegation of exclusive authority to Congress. *See Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (preemption may arise "from … *the Constitution itself*" (emphasis added) (citing *P.R. Dep't of Consumer Affs. v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988))). The United States again agrees. *See* U.S. Br. 8 (Congress's exclusive constitutional power to regulate Indians in Indian country operates "to preempt the operation of state law over Indians in Indian country").

### 5. *O'Brien* Does Nothing To Undermine the Nation's Likelihood of Success on the Merits.

On December 5, 2024, the OCCA upheld the City of Tulsa's efforts to prosecute non-member Indians for criminal offenses within the Creek Reservation. *See O'Brien*, 2024 WL 5001684. As noted, the County has invoked *O'Brien* as the warrant for the sea-change it seeks to

effect in Tulsa County's approach to criminal jurisdiction over non-member Indians. But *O'Brien* does nothing to undermine the Nation's likelihood of success on the merits because *O'Brien*—to which "this Court owes no deference" on questions of federal law, *Hewitt v. Parker*, No. 08-CV-227, 2012 WL 380335, at *4 (N.D. Okla. Feb. 6, 2012)—stands in direct defiance of that law.

To begin, the OCCA acknowledged *McGirt*'s affirmation of the bedrock rule that states lack criminal jurisdiction over Indians in Indian country absent congressional assent. *See O'Brien*, 2024 WL 5001684, at *6 n.4. It concluded, however, that the rule no longer controls because "[t]his portion of *McGirt* … was undermined by *Castro-Huerta*[.]" *Id*. In so holding, the OCCA flatly violated the principle repeatedly stated by the Supreme Court that its "decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (citation omitted). Thus, "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). "Until that occurs, [prior precedent] is the law," *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983), "even if the lower court thinks the [prior] precedent is in tension with" the later decision, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023); *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) (same); *United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023) (same), *cert. denied*, 144 S.Ct. 1035 (2024); *Little v. Budd Co., Inc.*, 955 F.3d 816, 824–25 (10th Cir. 2020) (same); U.S. Br. 9–10 (same).

This clear limitation on the authority of lower courts is at its zenith where the later Court precedent limits its holding to a specific issue, as does *Castro-Huerta*. *See Bosse*, 580 U.S. at 2

(where later case states that it is "limited to" a given issue, lower court was prohibited from finding that it "*implicitly* overruled" prior precedent on different issue (citations omitted)). Yet the OCCA ignored the limitation, deeming *Castro-Huerta* to have implicitly undermined *McGirt*'s clear reiteration of the presumptive rule against state criminal jurisdiction over Indians.

But of all courts, the OCCA should know better. In *Bosse*, the Supreme Court struck down three decisions in which the OCCA had concluded that a Supreme Court decision—*Payne v. Tennessee*, 501 U.S. 808 (1991)—"*implicitly* overruled" prior Supreme Court precedent on a specific issue, despite the fact that *Payne* (like *Castro-Huerta*) stated that its "holding was expressly 'limited to'" a different issue. *Bosse*, 580 U.S. at 2 (citations omitted).[9] The Supreme Court admonished the OCCA that "[i]t is this Court's prerogative alone to overrule one of its precedents," *id.* at 3 (citation omitted), and that *Payne*'s express disclaimer regarding the reach of its holding "should have ended [the OCCA's] inquiry …; the [OCCA] was wrong to go further and conclude that *Payne* implicitly overruled" prior case law, *id*. So too here. The OCCA lacked authority to decline to follow *McGirt* on the theory that *Castro-Huerta* "undermined" *McGirt* on the very issue that the *Castro-Huerta* Court expressly declined to reach.

*O'Brien* is equally infirm on the substance of its Tenth Amendment discussion. It quotes *Herrera v. Wyoming*, 587 U.S. 329 (2019), for the proposition that "Oklahoma's authority to exercise its sovereign criminal jurisdiction over all its territory, including Indian country, extends from the doctrine 'that new States are admitted to the Union on an "equal footing" with existing States.'" 2024 WL 5001684, at *6. However, in the passage quoted by the OCCA, the *Herrera* Court was simply describing the holding of *Ward v. Race Horse*, 163 U.S. 504 (1896). The Court

---

[9] Abrogating *Conover v. Oklahoma*, 933 P.2d 904 (Okla. Crim. App. 1997), and *Ledbetter v. Oklahoma*, 933 P.2d 880 (Okla. Crim. App. 1997), and vacating *Bosse v. Oklahoma*, 360 P.3d 1203 (Okla. Crim. App. 2015).

went on to explain, in language nowhere acknowledged in *O'Brien*, that it has "entirely rejected the 'equal footing' reasoning applied in *Race Horse*." 587 U.S. at 339. The OCCA erred gravely in cherry-picking from the *Herrera* opinion in a way that so plainly distorts its meaning.

The OCCA's equal footing argument is also a non sequitur. All states enter the Union on an equal footing. But the limitations of the Tenth Amendment are a central component of that footing, including the limitation that states retain powers under the Amendment "only to the extent that the Constitution has not … transferred those powers to the Federal Government," *Garcia*, 469 U.S. at 549; *see supra* Section II.A.4. Indeed, *O'Brien* invokes *Dick v. United States*, 208 U.S. 340 (1908), but *Dick* is clear that "a state, upon its admission into the Union, … has full and complete jurisdiction over all persons and things within its limits, *except as it may be restrained by the provisions of the Federal Constitution*," *id*. at 353 (emphasis added).

In sum, *O'Brien* lacks both binding and persuasive force and accordingly does nothing to undermine the Nation's likelihood of success on the merits.

### B.    The Nation Will Suffer Irreparable Harm Without a Preliminary Injunction.

The County's efforts confirm that it will continue to prosecute Indians within the Creek Reservation until the courts instruct it to stop. This constitutes a direct invasion of the Nation's sovereignty. The Tenth Circuit has "repeatedly stated that … an invasion of tribal sovereignty can constitute irreparable injury," *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006), and has found actions like those at issue here to represent the very sort of invasion warranting a preliminary injunction, *see* U.S. Br. 22–23 (discussing same).

In *Ute Indian Tribe*, 790 F.3d 1000, for example, Utah and a Utah county were prosecuting Indians for traffic offenses within a tribe's Indian country. The Tenth Circuit held that this was "itself an infringement on tribal sovereignty," *id*. at 1005, one compounded by the

defendants' "disregard of [the Circuit's] decisions," *id.*, as demonstrated by their efforts to relitigate in the "friendlier forum" of state courts issues already decided by the Tenth Circuit, *id.* at 1003 (citation omitted). Under these circumstances, the Circuit concluded, "the harm to tribal sovereignty in this case is perhaps as serious as any to come our way in a long time." *Id*. at 1005.

This case is no different. The County continues to prosecute Indians in state courts for conduct within the Creek Reservation despite the rule against such prosecutions (absent congressional assent) long adhered to by the Supreme Court and the Tenth Circuit. Just as in *Ute Indian Tribe*, the County's prosecution of Indian defendants alone constitutes "an infringement on tribal sovereignty" in direct "disregard of [the Circuit's] decisions."

Under these circumstances, "there's just no room to debate whether the defendants' conduct 'create[s] the prospect of significant interference with [tribal] self-government' that this court has found sufficient to constitute 'irreparable injury.'" *Ute Indian Tribe*, *id.* at 1006 (brackets in original) (quoting *Prairie Band*, 253 F.3d at 1250–51).

In *Prairie Band*, the Tenth Circuit likewise found a state's enforcement of its vehicle licensing and registration provisions against Indians to constitute irreparable injury to tribal sovereignty because the tribe had enacted its own such provisions—which the Court described as "a traditional governmental function"—and thus "the threat of continued citation by the state [of owners of vehicles licensed by the tribe] created the prospect of significant interference with [tribal] self-government." 253 F.3d at 1250 (brackets in original) (quotation marks omitted). Under these circumstances, "the injury to the tribe was 'certain and great' and more than 'merely serious or substantial.'" *Id*.

The Nation's sovereignty is no less threatened by the County's actions. The Nation has enacted its own criminal and traffic laws. It maintains tribal courts and a Lighthorse Police

Department to enforce them against all Indians within its boundaries. *See* MCN Const. art. VII

(Judicial Branch);[10] MCN Code tit. 14 (Crimes and Punishments), tit. 16 (Executive Branch),

and tit. 27 (Judicial Procedures).[11] These are core governmental functions, and they are impaired

when the County asserts authority to enforce its own criminal laws against those same Indians,

subjecting them to a criminal justice system other than the Nation's own and purporting to deny

the Nation's own inherent jurisdiction over those offenses. *Compare Fisher v. Dist. Ct.*, 424 U.S.

382, 387–88 (1976) ("State-court jurisdiction plainly would interfere with the powers of self-

government" by subjecting Indians in Indian country "to a forum other than the one they have

established for themselves."), *with Castro-Huerta*, 597 U.S. at 650 (stating that state criminal

jurisdiction over non-Indians in Indian country "would not deprive the tribe of any of its

prosecutorial authority …. because … tribes [ordinarily] lack criminal jurisdiction to prosecute

crimes committed by non-Indians" and because "a state prosecution of a non-Indian does not

involve the exercise of state power over any Indian").

> ### C. The Balance of Harms and the Public Interest Strongly Favor a Temporary Restraining Order and Preliminary Injunction.

Where a case involves competing claims of jurisdiction, the Tenth Circuit analyzes the

balance of harms and public interest factors together. *See Ute Indian Tribe*, 790 F.3d at 1007. In

assessing analogous circumstances in *Ute Indian Tribe*, the Circuit declared that

> there's no question who has the better of it. On the Tribe's side of the ledger [is]
> … the "paramount federal policy" of ensuring that Indians do not suffer
> interference with their efforts to "develop ... strong self-government." *Seneca-
> Cayuga Tribe v. Oklahoma ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir.1989);
> *see also Prairie Band*, 253 F.3d at 1253. Against this, the State and Wasatch
> County argue an injunction would impede their ability to ensure safety on public
> rights-of-way. But this concern "is not as portentous as [they] would have it."
> *Prairie Band*, 253 F.3d at 1253…. [N]othing in the requested temporary

---

[10] https://bit.ly/4jPAASZ.
[11] https://bit.ly/40xxCts.

22

> injunction would prevent the State and County from patrolling roads like the ones on which Ms. Jenkins was stopped, from stopping motorists suspected of traffic offenses to verify their tribal membership status, from ticketing and prosecuting non-Indians for offenses committed on those roads, from referring suspected offenses by Indians to tribal law enforcement, or from adjudicating disputes over the Indian status of accused traffic offenders when meaningful reasons exist to question that status. Instead, the temporary injunction would simply prohibit the State and County from prosecuting Ms. Jenkins and perhaps other tribal members for offenses in Indian country—something they have no legal entitlement to do in the first place. In this light, the defendants' claims to injury should an injunction issue shrink to all but "the vanishing point." *Seneca-Cayuga*, 874 F.2d at 716.

*Id*. (second ellipsis and second brackets in original).

The same reasoning applies here. Any law enforcement concerns the County may invoke will surely not be as portentous as it may assert. The Nation and the County have in place a comprehensive cross-deputization agreement that memorializes the very practices the Tenth Circuit concluded in *Ute Indian Tribe* would allay public safety concerns. See Wisner Decl. ¶ 2, Ex. 1.

On the Nation's side of the ledger, while the County has no legally cognizable interest in continuing to carry out unlawful prosecutions during the pendency of this litigation, the irreparable harm to the Nation's sovereignty and self-government and to the Indian residents of the Nation's Reservation are compounded by the day. Absent a temporary restraining order and injunctive relief by this Court, the County's strategy of re-litigating foundational rules of federal Indian law in the friendlier forum of the state courts will only be rewarded, with the *O'Brien* decision providing the OCCA's blessing for that approach.

Additionally, the County is not alone in unlawfully asserting state criminal jurisdiction over non-member Indians within the Nation's Reservation. The District Attorneys for Rogers, Mayes, Craig, Muskogee, McIntosh and Okmulgee Counties—all or parts of which lie within the Creek Reservation and account for approximately forty-four percent of its land area—are

likewise choosing to prosecute non-member Indians in the Creek Reservation.[12] But Tulsa County stands alone in the extent of its aggressive disregard of governing federal law. The County's approach under *O'Brien* not only purports to assert jurisdiction foreclosed by federal law but also seeks to undermine the Nation's *own* jurisdiction to prosecute non-member Indians by declaring that, within the Creek Reservation "[t]he *only tribal arrests* that will take place will be Creek Citizens .… All others will be booked into [the Tulsa County Jail] and charged in Tulsa Co. District Court." Wisner Decl. ¶ 5, Ex. 2 (emphasis added). This policy is patently at war with the statutory command of Congress as affirmed by the Supreme Court. *See* 25 U.S.C. § 1301(2) (tribes' "'powers of self-government'" include "the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians"); *Lara*, 541 U.S. at 198 (tribes' "'powers of self-government'" include inherent criminal jurisdiction over "'*all* Indians,' including nonmembers" (quoting 25 U.S.C. § 1301(2)).[13]

Finally, the harm from the County's conduct reaches beyond the Nation to the public at large. As the United States asserts, "the balance of equities and the public interest weigh heavily in favor of stopping Defendant's clear violations of federal law." U.S. Br. 2. This is so in part because assertions by counties of criminal jurisdiction over non-member Indians within the Creek Reservation and others, particularly as they are premised on distortions of Supreme Court precedent, have resulted in "intolerable jurisdictional chaos" in Oklahoma Indian country, and "if allowed to stand would seriously impact the United States' ability to protect tribal sovereignty and its own prosecutorial jurisdiction both in Oklahoma and nationwide." U.S. Br. 2–3. The

---

[12] *See supra* p. 2 (Rogers, Mayes, McInosh, and Okmulgee Counties); *see also*, *e.g.*, https://bit.ly/3WWtaTS (Muskogee County).

[13] As both the text of § 1301(2) and *Lara* make clear, any argument by the County that the Nation's sovereign rights of self-government do not extend to non-member Indians is dead on arrival.

Tenth Circuit is emphatic that, as a matter of federal law repeatedly reaffirmed by the Supreme Court, Congress, and the Executive Branch, the protection of tribal sovereignty and self-government is of paramount public importance, *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 824 n.9 (10th Cir. 2007) (collecting authorities), and that protection is squarely in play here.

## CONCLUSION

The Nation respectfully requests that the Court temporarily restrain and preliminarily enjoin the County from any further assertion of criminal jurisdiction over Indians within the Creek Reservation pending final resolution of this action.

Dated: February 13, 2025                             Respectfully submitted,

                                                     */s/ Riyaz A. Kanji*
Geraldine Wisner, OBA No. 20128                      Riyaz A. Kanji
Attorney General                                     David A. Giampetroni
Muscogee (Creek) Nation                              Kanji & Katzen, P.L.L.C.
P.O. Box 580                                         P.O. Box 3971
Okmulgee, OK 74447                                   Ann Arbor, MI 48106
(918) 295-9720                                       (734) 769-5400
gwisner@mcnag.com                                    rkanji@kanjikatzen.com
                                                     dgiampetroni@kanjikatzen.com

O. Joseph Williams, OBA No. 19256
O. Joseph Williams Law Office, PLLC                  Philip H. Tinker
The McCulloch Building                               Stephanie R. Rush, OBA No. 34017
114 N. Grand Avenue, Suite 520                       Kanji & Katzen, P.L.L.C.
P.O. Box 1131                                        12 N. Cheyenne Ave., Ste. 220
Okmulgee, OK 74447                                   Tulsa, OK 74103
(918) 752-0020                                       (206) 344-8100
jwilliams@williamslaw-pllc.com                       ptinker@kanjikatzen.com
                                                     vrush@kanjikatzen.com

*Counsel for Muscogee (Creek) Nation*

25

## CERTIFICATE OF SERVICE

I certify that on February 13, 2025, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji