# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**MUSCOGEE (CREEK) NATION,**

        **Plaintiff,**

**v.**

                                         **CASE NO. 25-cv-00075-GKF-JFJ**

**TULSA COUNTY, OKLAHOMA, et al.,,**

        **Defendants.**

---

## MOTION TO DISMISS AND BRIEF IN SUPPORT
## BY DEFENDANT VIC REGALADO

---

Keith A. Wilkes, OBA No. 16750
HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.
521 East 2nd Street, Suite 1200
Tulsa, Oklahoma  74120-1855
Telephone: (918) 594-0400
Facsimile: (918) 594-0505

**ATTORNEYS FOR DEFENDANTS,
TULSA COUNTY AND VIC REGALADO**

## <u>TABLE OF CONTENTS</u>

**BRIEF IN SUPPORT OF MOTION TO DISMISS** ................................................................ 1

   **I.**    **INTRODUCTION** ............................................................................................................ 1

  **II.**    **UNDERLYING PROSECUTIONS AT-ISSUE** ................................................................ 2

 **III.**    **MOTION TO DISMISS STANDARD** ........................................................................ 5

**PROPOSITION ONE** ................................................................................................................ 6

   **PLAINTIFF CANNOT PREVAIL AGAINST SHERIFF REGALADO UNDER EXISTING LAW** .......... 6

**PROPOSITION TWO** ............................................................................................................ 10

   **PLAINTIFF LACKS STANDING** .......................................................................................... 10

  **A.**  **Plaintiff Has Not Suffered An Injury in Fact.** ................................................ 11

  **B.**  **Plaintiff Cannot Demonstrate Redressability.** .............................................. 13

**PROPOSITION THREE** ........................................................................................................ 15

   **THE COURT SHOULD DISMISS UNDER THE *YOUNGER* ABSTENTION DOCTRINE** .................. 15

  **A.**  **Introduction to *Younger*.** ............................................................................ 15

  **B.**  **Threshold Consideration to *Younger* Analysis.** ........................................... 17

  **C.**  **The First *Younger* Element.** ......................................................................... 19

  **D.**  **The Second *Younger* Element.** ..................................................................... 19

  **E.**  **The Third *Younger* Element.** ....................................................................... 19

  **F.**  **There are No Applicable Exceptions.** ............................................................ 20

  **G.**  ***Younger* Abstention Applies to Future Prosecutions.** ..................................... 21

**PROPOSITION FOUR** .......................................................................................................... 22

   **PLAINTIFF'S COMPLAINT FAILS TO IDENTIFY A FEDERAL LAW VIOLATION BY SHERIFF REGALDAO** ........................................................................................................................ 22

**PROPOSITION FIVE** ............................................................................................................ 24

   **THE COLORADO RIVER ABSTENTION DEMANDS DISMISSAL** ............................................. 24

**CONCLUSION** .................................................................................................................... 24

### TABLE OF AUTHORITIES

<u>**Cases**</u>

*Allen v. McCurry,*
449 U.S. 90, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980) .................................................. 19

*Am. Fed'n of State, County and Municipal Employees v. Tristano,*
898 F.2d 1302 (7th Cir. 1990) ...................................................................................... 17

*Amanatullah v. Colo. Bd. of Med. Exam'rs,*
187 F.3d 1160 (10th Cir. 1999) .................................................................................... 15

*Arbaugh v. Y&H Corp.,*
546 U.S. 500, (2006).................................................................................................... 13

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................................ 5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................ 5

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,*
861 F.3d 1081, (10th Cir. 2017) ................................................................................... 5

*Carpenter v. State,*
1996 OK CR 56, 929 P.2d 988,..................................................................................... 23

*City of Tulsa v. O'Brien,*
2024 OK CR 31 ................................................................................... 8, 9, 10, 12

*Columbia Basement Apartment Assoc. v. City of Pasco,*
268 F.3d 791 (9th Cir. 2001) ........................................................................................ 17

*D.L., et al. v. Unified Sch. Dist. No. 497,*
 392 F.3d 1223, (10th Cir. 2004) .................................................................................. 15

*Denezpi v. United States,*
596 U.S. 591 (2022)...................................................................................................... 13

*Deo v. Parish,*
2023 OK CR 20, 541 P.3d 833 (Okla. Crim. App. 2023) ............................................ 7

*Doran v. Salem Inn, Inc.,*
422 U.S. 922, (1975);.................................................................................................... 21

*Ellis v. Morzelewski,*
2:21-CV-639-TC, 2022 WL 3645850, (D. Utah Aug. 24, 2022) .................................. 21

*FW/PBS, Inc.* v. *Dallas*,
493 U. S. 215, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) ............................................................ 11

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
130 F.3d 1381, (10th Cir. 1997) ...................................................................................... 5

*Grayson* v. *State*,
2021 OK CR 8, ¶10, 485 P. 3d 250, ......................................................................................... 7

*Herrera v. City of Palmdale*,
918 F.3d 1037, (9th Cir. 2019) .................................................................................... 21

*Hicks v. Miranda*,
422 U.S. 332, (1975) ........................................................................................................ 21

*Hogner v. State*,
2021 OK CR 4, 500 P.3d 629, (Okla. Crim. App. 2021) ............................................... 7

*Hooper v. City of Tulsa*,
71 F.4th 1270, (10th Cir. 2023) ..................................................................................... 9

*Huffman v. Pursue, Ltd.*,
420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975) ......................................... 16, 18

*Inverarity v. Zumwalt*,
1953 OK CR 148, 262 P.2d 725, 730 .......................................................................... 15

*J.B. ex rel. Hart v. Valdez*,
 186 F.3d 1280, (10th Cir. 1999) ................................................................................. 16

*Jackson v. Alexander*,
465 F.2d 1389, (10th Cir. 1972) ..................................................................................... 6

*Juidice v. Vail*,
430 U.S. 327, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977) ......................................... 16, 20

*Kelly v. Robinson*,
479 U.S. 36, 107 S. Ct. 353, 93 L. Ed. 2d 216 (1986) ................................................ 19

*Lujan* v. *Defenders of Wildlife*,
504 U. S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ......................................... 11

*Marks v. Stinson*,
19 F.3d 873, (3d Cir. 1994) ........................................................................................... 17

*McClanahan v. State Tax Comm'n of Arizona*,
411 U.S. 164 (1973) .................................................................................................. 10

*McGirt v. Oklahoma*,
591 U.S. 894, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020) ................................. 2, 4, 6, 7

*Middlesex County Ethics Comm.*,
457 U.S. 423, 73 L. Ed. 2d 116, 102 S. Ct. 2515 .......................................................... 18

*Mitchum v. Foster*,
407 U.S. 225, (1972) ...................................................................................................... 20

*Murphy v. Royal*,
875 F.3d 896, (10th Cir. 2017) ........................................................................................ 7

*N. Mill St., LLC v. City of Aspen*,
6 F.4th 1216, (10th Cir. 2021) ........................................................................................ 11

*Nova Health Sys. v. Gandy*,
416 F.3d 1149, (10th Cir. 2005). .................................................................................... 14

*Ohio Civil Rights Comm'n*,
477 U.S. 619, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986) ............................................... 17

*Oklahoma v. Castro-Huerta*,
597 U.S. 629, 142 S. Ct. 2486, 213 L. Ed. 2d 847 (2022) ................................... 2, 4, 7, 8

*Pennzoil Co. v. Texaco Inc.*,
481 U.S. 1, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) ................................................ 16, 19

*Phelps v. Hamilton*,
122 F.3d 885, (10th Cir. 1997) ....................................................................................... 20

*Railroad Retirement Bd. v. Fritz*,
449 U.S. 166, 101 S. Ct. 453, 66 L. Ed. 2d 368 (1980) ............................................. 9, 24

*Raines v. Byrd*,
521 U.S. 811, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997) .............................................. 11

*Rappaport v. Norlar, Inc.*,
1994 U.S. Dist. LEXIS 5754, Civ.A.No.93-4756, 1994 WL 167959, (E.D. Pa. April 29, 1994) 17, 18

*Rienhardt v. Kelly*,
164 F.3d 1296, (10th Cir. 1999) ..................................................................................... 15

iii

*Seneca-Cayuga Tribe v. Oklahoma*,
874 F.3d 709, (10th Cir. 1989) ................................................................. 16

*Sharp v. Murphy*,
591 U.S. 977, 140 S. Ct. 2412, 207 L. Ed. 2d 1043 (2020) ...................... 6, 7

*Special Souvenirs, Inc. v. Town of Wayne*,
56 F. Supp. 2d 1062, (E.D. Wis. 1999) .................................................... 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ......................... 13

*State ex rel. Matloff v. Wallace*,
2021 OK CR 21, 497 P. 3d 686, 689 ........................................................ 7

*State ex rel. Stout v. Craytor*,
1996 OK CR 79, 753 P.2d 1365, 1368 ...................................................... 23

*State v. Bohanan*,
CM-2022-108 (Dist. Ct. Tulsa Co.) ....................................................... 2, 20

*State v. Brester*,
2023 OK CR 10, 531 P.3d 125 ................................................................. 7

*State v. Davis*,
1913 OK CR 80, 130 P. 962, 964 ............................................................. 15

*State v. Hess*,
CM-2024-2951 (Dist. Ct. Tulsa Co.) ...................................................... 3

*State v. Mason*,
CM-2024-4510 (Dist. Ct. Tulsa Co.) ...................................................... 3, 4

*State v. Morris*,
CM-2024-4494 (Dist. Ct. Tulsa Co., Nov. 26, 2024) ............................... 4, 5

*State v. Neafus*,
CM-2024-1222 (Dist. Ct. Tulsa Co., April 3, 2024) ................................ 4

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) .................. 11, 14

*Stitt v. City of Tulsa*,
2025 OK CR 5 ....................................................................................... 21

*Stone v. Powell,*
428 U.S. 465, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (1976) ........................................... 19

*Taylor v. Jacquez,*
126 F.3d 1294, (10th Cir. 1997). ........................................................ 17, 19

*Trackwell v. Kansas,*
2001 U.S. Dist. LEXIS 8301, 2001 WL 709366, (D. Kan. May 10, 2001) ................................ 18

*United States v. Lanza,*
260 U.S. 377, (1922) ......................................................................... 13

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,*
454 U. S. 464, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982) ....................................... 11

*Warth v. Seldin,*
422 U. S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ....................................... 11

*Weitzel v. Div. of Occupational & Prof'l Licensing,*
240 F.3d 871, (10th Cir. 2001) ......................................................... 17, 19, 20

*White Mountain Apache Tribe v. Bracker,*
448 U.S. 136, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980) ........................................ 8, 9

*Younger v., Harris,*
401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) ........................................ 1, 12, 15 ,16, 19

**Statutes**

18 U.S.C. § 1151 .......................................................................... 6
18 U.S.C. § 1153(a) ..................................................................... 2, 6
74 O.S. § 18(A)(3) ....................................................................... 14
74 O.S.  § 18b(A)(1) ..................................................................... 14
OKLA. STAT. tit. 19, § 513 ................................................................ 1
OKLA. STAT. tit. 20, § 40 ................................................................ 15
OKLA. STAT. tit. 21, § 1541.1 ............................................................. 2
OKLA. STAT. tit. 21, § 1731 .............................................................. 4
OKLA. STAT. tit. 21, § 533 ............................................................... 1
OKLA. STAT. tit. 21, § 540 ............................................................... 14
OKLA. STAT. tit. 47, § 11-902(A)(2) ....................................................... 3
OKLA. STAT. tit. 74, § 6 ................................................................. 14

## Other Authorities

1906 Oklahoma Enabling Act ...................................................................... 10

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327 & n. 13 (2d ed. 1990)). ....................................................................... 6

Public Law 280 ........................................................................................ 10

## Rules

10th Cir. R. 32.1 ..................................................................................... 21

FED R. CIV. P. 12(b) .................................................................................. 8

Federal Rule of Civil Procedure 12(B)(6) ............................................. 4, 8

LCvR7-1(b) ............................................................................................... 4

## Constitutional Provisions

OKLA. CONST. art. 6, § 8 ......................................................................... 14

OKLA. CONST. art. 7, § 7(a). ..................................................................... 15

## MOTION TO DISMISS AND BRIEF IN SUPPORT
## BY DEFENDANT VIC REGALADO

Defendant Vic Regalado, in his official capacity as Tulsa County Sheriff ("Sheriff Regalado"), moves the Court to enter an order dismissing Plaintiff Muscogee (Creek) Nation's ("Nation") Complaint [Doc. 2] against Sheriff Regalado for failure to state a claim upon which relief can be granted against the movant. FED. R. CIV. P. 12(b)(6). Pursuant to LCvR7-1(b), Sheriff Regalado provides the following brief in support.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

### I.    INTRODUCTION.

There are multi-faceted fatal flaws in the Nation's complaint that should result in early dismissal of Sheriff Regalado.

Sheriff Regalado does not make the decision to file criminal charges or prosecute an accused regardless of an individual's race, ethnicity, or status as a Member (or non-Member) of any tribe. Amongst the duties and responsibilities he does have, Sheriff Regalado is statutorily entrusted with "the charge and custody of the jail of his county, and all the prisoners in the same . . . ." OKLA. STAT. tit. 19, § 513. In his role as having the "charge and custody of the jail," if Sheriff Regalado were to refuse to receive a person into custody at the county jail, he could be charged—by the district attorney on behalf of the State—with a misdemeanor crime. OKLA. STAT. tit. 21, § 533. Yet, the Nation's suit against Sheriff Regalado is for doing his constitutionally created job and performing his statutory mandated duties by following existing state and federal law. Furthermore, the Nation is unable to establish either an injury-in-fact or redressability to have standing to bring this action against Sheriff Regalado or any defendant. Based upon principles of federalism and comity, the court should refuse to interfere with ongoing state criminal prosecutions under the *Younger* abstention doctrine, and dismissal is proper under the *Colorado River* abstention doctrine.

1

## II.    UNDERLYING PROSECUTIONS AT-ISSUE.

In its Complaint, Plaintiff references five (5) state court criminal prosecutions which the Nation incorrectly alleges were brought by the "County." The Court can take judicial notice that state court criminal prosecutions are brought on behalf of the State of Oklahoma, by the state's prosecutor, District Attorney Kunzweiler. As to the "State" criminal actions referenced here, all involved conduct occurring in Tulsa County, Oklahoma, within the historical boundaries of the Cherokee Nation or Muscogee (Creek) Nation (the "State Prosecutions"). Complaint [Doc. 2, ¶35]. All of the State Prosecutions have at least three common themes: 1) each defendant is a member of a tribe other than the Muscogee (Creek) Nation; 2) each non-Member[1] was charged with committing a general crime, and not a crime defined in the Major Crimes Act, 18 U.S.C. § 1153(a); and 3) each general crime was allegedly committed by a defendant within the historical boundaries of a tribe in which he or she is not a member. The State Prosecutions are as follows.

*State v. Bohanan*, CM-2022-108 (Dist. Ct. Tulsa Co.).[2] Defendant Kunzweiler filed charges on behalf of the State of Oklahoma and a warrant was issued for the arrest of Ky Wolf Bohanan, a Choctaw Nation member, for creating a bogus check under $1,000. OKLA. STAT. tit. 21, § 1541.1. After his arrest more than 2 ½ years later, Bohanan challenged the court's jurisdiction, raising similar arguments as those in the Complaint (e.g. application of *McGirt*[3] to the exclusion of the *Castro-Huerta* framework[4]). *See State v. Bohanan*, Motion to Dismiss for Lack of Jurisdiction (in which Bohanan stated that the alleged crime was committed in either the Cherokee Nation or Muscogee (Creek) Nation). The State court denied Bohanan's motion. Bohanan did not appeal and

---

[1] An Indian who is not a member of the tribe in which the alleged offense occurred is referred to as a "non-Member."

[2] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2022-108.

[3] *McGirt v. Oklahoma*, 591 U.S. 894, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020).

[4] *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 142 S. Ct. 2486, 213 L. Ed. 2d 847 (2022).

voluntarily entered into a Misdemeanor Diversion Program plea agreement with the State in February 2025. Bohanan is not a detainee in the county jail—the David L. Moss Criminal Justice Center ("DLM"). *Id*.

*State v. Hess*, CM-2024-2951 (Dist. Ct. Tulsa Co.).[5] Jessica Diane Hess, a Choctaw Nation member, was arrested by the Tulsa Police Department, not the Tulsa County Sheriff's Office, for obstructing an officer. OKLA. STAT. tit. 21, § 540. Defendant Kunzweiler filed charges of behalf of the State of Oklahoma. Hess challenged the state district court's jurisdiction. *See State v. Hess*, Motion to Dismiss for Lack of Jurisdiction (stating the alleged crime was committed in either the Cherokee Nation or Muscogee (Creek) Nation); Defendant's Reply to State's Response Objecting to Defendant's Motion to Dismiss. The state court denied the motion. Ms. Hess has not appealed. A jury trial is set for April 28, 2025. Ms. Hess is not detained at the DLM. *Id*.

*State v. Mason*, CM-2024-4510 (Dist. Ct. Tulsa Co.).[6] Charles Aaron Mason, a Navajo Nation member, was arrested by the Tulsa Police Department, not the Tulsa County Sheriff's Department, for driving under the influence, for which the State of Oklahoma—by and through Defendant Kunzweiler—filed a criminal charge. OKLA. STAT. tit. 47, § 11-902(A)(2). The conduct occurred within the historical bounds of the Nation. Mason challenged the court's jurisdiction based on similar arguments. *See State v. Mason*, Motion to Dismiss for Lack of Jurisdiction. Like The state court denied the motion and Mason did not appeal. On March 6, 2025, Mason entered a guilty plea. *Id*. Mr. Mason is not in custody at the DLM. Plaintiff presumably would have this Court interfere with the plea agreement between the State of Oklahoma and Mr. Mason.

---

[5] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-2951.
[6] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-4510.

*State v. Neafus*, CM-2024-1222 (Dist. Ct. Tulsa Co., April 3, 2024).[7] Leigha Marie Neafus, a member of the Sac and Fax Nation of Missouri, was arrested by the Tulsa Police Department, not the Tulsa County Sheriff's Department, for suspicion of larceny of merchandise from a retailer. OKLA. STAT. tit. 21, § 1731. The State of Oklahoma, by and through Defendant Kunzweiler, filed a criminal charge. The conduct occurred within the historical boundaries of the Nation. Ms. Neafus challenged the court's jurisdiction, arguing as well that *McGirt*—a case that addressed the State's jurisdiction to prosecute Indians who commit major crimes in Indian country (not at issue here)— applies to the exclusion of the mandatory analytical framework articulated in *Castro-Huerta*. *See State v. Neafus*, Motion to Dismiss for Lack of Jurisdiction. The State court denied the motion. Neafus has not appealed and is not in custody at the DLM. A jury trial is currently set for May 5, 2025. As with the other State Prosecutions, Plaintiff asks the Court to interfere with the State district court's jurisdictional determination and upcoming jury trial setting.

*State v. Morris*, CM-2024-4494 (Dist. Ct. Tulsa Co., Nov. 26, 2024).[8] Megan Marie Morris a/k/a Megan Marie Webb, a Choctaw Nation member, was arrested by the Tulsa Police Department, not the Tulsa County Sheriff's Office, and charged with larceny of merchandise from a retailer. OKLA. STAT. tit. 21, § 1731. The conduct occurred within the historical boundaries of the Nation. Morris offered extensive briefing with similar arguments in his motion to dismiss, which was denied. *See State v. Morris*, Def. Mot. to Dismiss for Lack of Jurisdiction; *see also Id.*, Reply Brief in Support of Motion to Dismiss (arguing, at page 10, "that state criminal jurisdiction over *any* Indian for a crime alleged in Indian Country is *per se* foreclosed without express authorization, and delegation of authority to the state, by [C]ongress via legislation or treaty.") (emphasis in

---

[7] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-1222.
[8] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CM-2024-4494.

original). The State district court denied the motion to dismiss on March 28, 2025. Ms. Morris is not in custody at the DLM. Plaintiff asks this Court to interfere in *State v. Morris*, an ongoing criminal prosecution, disregarding principles of federalism and comity.

### III. MOTION TO DISMISS STANDARD.

Federal Rule of Civil Procedure 12(B)(6) permits a court to dismiss a claim that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The court should accept as true all factual allegations and views them in the light most favorable to the non-movant, but this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

Generally, a court may not properly consider matters outside the pleadings when adjudicating a motion to dismiss. FED R. CIV. P. 12(b). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997). "Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true." *Id.* (citing *Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972); 5 CHARLES

ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327 & n. 13 (2d ed. 1990)).

## ARGUMENT AND AUTHORITIES

### PROPOSITION ONE
### PLAINTIFF CANNOT PREVAIL AGAINST SHERIFF REGALADO UNDER EXISTING LAW

Plaintiff seeks to use the federal district court as a vehicle to overturn existing state law. In addition to the impropriety of such an action discussed in subsequent propositions, the law as stated by the Oklahoma Court of Criminal Appeals and the United States Supreme Court precludes recovery by Plaintiff.  Sheriff Regalado is entitled to dismissal as a matter of law.

Navigating the unsettled post-*McGirt* legal landscape continues to present challenges to state, tribal, and federal governments, as well as to law enforcement and residents within the affected jurisdictions. The status today, however, is settled with respect to the jurisdictional test articulated by the United States Supreme Court and applied by the Oklahoma Court of Criminal Appeals.

Nearly five years ago, the United States Supreme Court held that Congress never disestablished the Nation Reservation; that the land within the Nation Reservation is "Indian country," as defined in 18 U.S.C. § 1151; and that the federal government therefore has exclusive jurisdiction to prosecute Indians for certain crimes committed within the Nation Reservation under the Major Crimes Act, 18 U.S.C. § 1153(a). *McGirt*, 591 U.S. at 913-934.  Relying on *McGirt*, the U.S. Supreme Court in  *Sharp v. Murphy*, 591 U.S. 977, 140 S. Ct. 2412, 207 L. Ed. 2d 1043 (2020) (mem.) summarily affirmed the United States Court of Appeals for the Tenth Circuit's 2017 decision that had reached the same conclusions regarding the continued existence of the Nation Reservation and the exclusivity of federal jurisdiction as to certain crimes committed within the

6

Nation Reservation by Indians. *Murphy*, 591 U.S. at 977; *see Murphy v. Royal*, 875 F.3d 896, 937-38 (10th Cir. 2017).

All of Tulsa County is located within the historical boundaries of the Muskogee (Creek) Nation Reservation and the Cherokee Nation Reservation. While the *McGirt* Court focused only on the Nation Reservation, the Oklahoma Court of Criminal Appeals subsequently applied the applicable *McGirt* analysis to conclude that Congress never explicitly erased or disestablished the boundaries of the Cherokee Nation Reservation. *Hogner v. State*, 2021 OK CR 4, 500 P.3d 629, 635 (Okla. Crim. App. 2021), overruled on other grounds by *Deo v. Parish*, 2023 OK CR 20, 541 P.3d 833 (Okla. Crim. App. 2023). As such, today all of Tulsa County is Indian country, split between the Nation Reservation and the Cherokee Nation Reservation. In fact, the eastern part of Oklahoma is now recognized as Indian country.[9] *Castro-Huerta*, 597 U.S. at 634.[10]

Post-*McGirt*, numerous jurisdictional challenges and questions have arisen in Indian country, leading litigants to turn to the courts for answers. A key jurisdictional question was posed to the United States Supreme Court in *Castro-Huerta*, in which the court was asked to determine whether the federal government has *exclusive* jurisdiction to prosecute crimes by non-Indians committed against Indians in Indian country, or whether federal and state governments have *concurrent* jurisdiction to prosecute those crimes. *Id.* at 632-633. In answering this question, the

---

[9]Applying the analysis from *McGirt*, the Oklahoma Court of Criminal Appeals has concluded that several other reservations in Oklahoma were not disestablished. *See, e.g.*, *State ex rel. Matloff v. Wallace*, 2021 OK CR 21, ¶15, 497 P. 3d 686, 689 (reaffirming recognition of the Cherokee, Choctaw, and Chickasaw Reservations); *Grayson* v. *State*, 2021 OK CR 8, ¶10, 485 P. 3d 250, 254 (Seminole Reservation); *State v. Brester*, 2023 OK CR 10, 531 P.3d 125 (Ottawa and Peoria Reservations).

[10]"Indian country is part of the State, not separate from the State. To be sure, under this Court's precedents, federal law may preempt that state jurisdiction in certain circumstances. But otherwise, as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country." *Castro-Huerta*, 597 U.S. at 636.

*Castro-Huerta* court articulated that a tribal jurisdictional analysis begins with the established understanding that pursuant to the United States Constitution, "States have the authority to prosecute crimes committed within their territory "except when preempted (in a manner consistent with the Constitution) by federal law or by principles of tribal self-government." *Id*. at 652-653.

In *Castro-Huerta*, as here, the underlying offenses fall under the General Crimes Act rather than the Major Crimes Act applicable to *McGirt*. *Castro-Huerta*, 597 U.S. at 633. The General Crimes Act "borrows the body of federal criminal law that applies in federal enclaves and extends it to Indian country." *Id*. at 640. The *Castro-Huerta* Court found that nothing in the plain language of the General Crimes Act preempts the State's authority to prosecute crimes in Indian country. *Id*. at 639-40. Thus, "both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id*. at 639 (footnote omitted). The question then turned to whether, "a separate principle of federal law that . . . precludes state interference with tribal self-government" applies. *Id*. at 639 n.2 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980)). Applying the *Bracker* balancing test, the *Castro-Huerta* Court determined that the principles of tribal self-government do not preempt state jurisdiction because a state prosecution of a crime under the General Crimes Act does not deprive the tribe of any of its prosecutorial authority. *Castro-Huerta*, 597 U.S. 629.

Applying the articulated analysis from *Castro-Huerta*, the Oklahoma Court of Criminal Appeals considered whether the state or its municipalities have jurisdiction to prosecution an Indian who is not a member of the tribe in which the violation of a general crime allegedly occurred. *City of Tulsa v. O'Brien*, 2024 OK CR 31. In *O'Brien*, an enrolled citizen of the federally recognized Osage Nation tribe was charged by the City of Tulsa with multiple misdemeanor traffic offenses occurring within the boundaries of the Muscogee (Creek) Nation. *Id*. at ¶¶ 1-3. The

accused initially lost a jurisdictional challenge when the municipal judge relied upon the Section 14 of The Curtis Act of 1898 to hold that the City of Tulsa maintained jurisdiction over violations of municipal ordinances. After the Tenth Circuit later opined that The Curtis Act did not survive statehood for Oklahoma, *Hooper v. City of Tulsa*, 71 F.4th 1270, 1288 (10th Cir. 2023), Mr. O'Brien successfully re-urged his motion to dismiss on jurisdictional grounds. *O'Brien*, ¶¶ 4-7. The City of Tulsa appealed the municipal order to the state's highest criminal court of appeals, chiefly relying upon *Castro-Huerta* and its stated analytical framework for determining questions of tribal jurisdiction.

The *O'Brien* Court, indeed, relied upon and conducted the same jurisdictional analysis provided by the United States Supreme Court in *Castro-Huerta* because the analysis does not turn on whether the criminal defendant is a non-Indian or a non-Member. After determining that state jurisdiction was not preempted as a result of *Bracker* balancing, the *O'Brien* Court found that Oklahoma has concurrent criminal jurisdiction in Indian country over non-Member Indian defendants accused of committing non-major crimes, 2024 OK CR 31, ¶ 35, and that the *Bracker* balance of interests does not preempt the exercise of state—and thus municipal—jurisdiction. *Id.*

Displeased with the outcome, Plaintiff filed this action to essentially argue Justice Gorsuch's dissent in *Castro-Huerta* and the short and lone dissent in *O'Brien*. However, as noted in Judge Musseman's in-depth concurring opinion in *O'Brien*, "[c]omments in the dissenting opinion . . . 'are just that: comments in a dissenting opinion.'" 24 OK CR 31 (Musseman, J., concurring at ¶ 3) (quoting *Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 177, n. 10, 101 S. Ct. 453, 66 L. Ed. 2d 368 (1980)). While Plaintiff can argue the limited holding of *Castro-Huerta*, as was also unsuccessfully attempted in *O'Brien*, the jurisdictional test identified and relied on by the *Castro-Huerta* Court—and utilized accordingly in *O'Brien*, does not change if the criminal

defendant is a non-Indian or a non-Member of the tribal territory where the alleged general crime occurred. Indeed, the *O'Brien* Court explicitly rejected each of the contentions Plaintiff raises in the Complaint, holding that: 1) the United States Supreme Court's framework in *Castro-Huerta* applies to a state's criminal jurisdiction over Indians, *Id*. ¶¶ 13-17; 2) neither Public Law 280 nor the 1906 Oklahoma Enabling Act preempts state jurisdiction over general crimes committed by Indians, *Id*. ¶ 20; 3) application of *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164 (1973) does not override the *Bracker* balancing test or any other component of the *Castro-Huerta* framework, *Id*. ¶¶ 27-35; and 4) as here, the framework urged by Mr. O'Brien "disregard[ed] the plain holding of *Castro-Huerta* and instead rel[ies] largely on Justice Gorsuch's dissent and a string of citations to U.S. Supreme Court precedent that ultimately undermine its own argument." *Id*. ¶ 5 (Musseman, J., concurring).

As such, under Oklahoma law, the state or municipal government's exercise of jurisdiction over a non-Member accused of committing non-major crimes does not unlawfully infringe upon tribal self-government. The Muscogee (Creek) Nation continues to have jurisdiction to prosecute the same offenses within its reservation territory against non-Indians, non-Members, and its own Members for general crimes that are codified in Creek statutes, while the state—and municipalities—share jurisdiction with the Nation over non-Indians and non-Members accused of violating general crimes within the historical boundaries of the Nation's Reservation. Plaintiff has failed to state a claim upon which relief can be granted against Sheriff Regalado. Dismissal is proper.

### PROPOSITION TWO
### PLAINTIFF LACKS STANDING

Plaintiff lacks proper standing to proceed. The doctrine of standing developed in case law to ensure that federal courts do not exceed their authority as it has been traditionally

understood. *Raines* v. *Byrd*, 521 U. S. 811, 820, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997). The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U. S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982); *Warth* v. *Seldin*, 422 U. S. 490, 498-499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). The United States Supreme Court has established the "irreducible constitutional minimum" of standing requires that a plaintiff: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc.* v. *Dallas*, 493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990). Here, Plaintiff cannot establish either an injury-in-fact or redressability.

   **A.  Plaintiff Has Not Suffered An Injury in Fact.**

   Injury in fact is the "[f]irst and foremost" of standing's three elements. *Steel Co. v., Citizens for Better Environment*, 523 U. S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). Injury in fact is a constitutional requirement and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines*, 521 U.S. at 820, n.3. To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U. S., at 560 (internal quotation marks omitted). To be concrete, an injury must be real harm to a legally protected interest, not abstract. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021). An injury is particularized only if it affects a party in a personal and individual way. *Id*. And a party who is not

11

threatened by – and, indeed, could never be subject to – state criminal prosecution lacks standing and is not an appropriate plaintiff to challenge any such pending prosecutions.

> A federal lawsuit to stop a prosecution in a state court is a serious matter. And persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases.

*Younger v., Harris*, 401 U.S. 37, 42, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

Here, Plaintiff does not allege an injury that is concrete, particularized, or actual or imminent, but instead offers a mere conclusory and inaccurate allegation:

> The County's policy, as stated and enforced by the District Attorney and the Sheriff, of pursuing prosecutions against Indians for conduct within the Creek Reservation is causing irreparable injury to the Nation by interfering with its sovereignty and undermining the authority of its own criminal justice system, including the authority of its Attorney General, Lighthorse police, and courts to prosecute under the Nation's own laws criminal offenses committed by Indians within its Reservation.

Complaint [Doc. 2, pp. 4, ¶ 15]. Indeed, the Muscogee (Creek) Nation is not adversely impacted— let alone suffered an injury in fact—as a result of Defendant Kunzweiler or Sheriff Regalado following established law:

> . . . [the] prosecution of non-member Indians of the Muscogee (Creek) tribe for misdemeanor traffic offenses occurring on public streets and roads in Tulsa does not affect the tribe's authority to regulate its own citizens for violations of Creek tribal law. In fact, such a prosecution would not involve prosecuting any citizen of the Muscogee (Creek) tribe. Further, **the city of Tulsa's jurisdiction would be concurrent only and would not displace, or diminish, the tribe's prosecutorial authority to try Indians for violations of local tribal law**. **Tulsa's prosecution of non-member Indians would bolster the tribe's strong interest in public safety for its citizens in this part of the Creek reservation**. To the extent that Tulsa's exercise of concurrent jurisdiction over non-Creek Indians for misdemeanor traffic offenses committed on the Creek reservation would somehow pose a problem, Congress can seek to alter it.

*O'Brien*, 24 OK CR 31, ¶ 32 (emphasis added). Indeed, nothing in *Castro-Huerta* or *O'Brien* diminishes Plaintiff's jurisdiction to police and prosecute crimes—other than Major Crimes—

within the Nation.

The State Prosecutions at-issue are against non-Member criminal defendants, not the Nation. Only the individuals can claim specific injury. Like Messrs. McGirt and Castro-Huerta, the individual defendants subject to the State Prosecutions sought relief through proper channels— district court filings, with the option to appeal to the Oklahoma Court of Criminal Appeals, and ultimately, the United State Supreme Court. As in *McGirt* and *Castro-Huerta*, Plaintiff may participate as amicus curiae, as it and many others whose injuries are abstract and not specific have done so in the past. The State of Oklahoma is prosecuting the individual defendants, and the state courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Furthermore, the State Prosecutions—the likes of which have existed for over a century— do not impact Plaintiff's authority to prosecute the same defendants. The United States Supreme Court recently reaffirmed that an individual may be prosecuted by separate sovereigns for the same conduct. *Denezpi v. United States*, 596 U.S. 591 (2022); *see also United States v. Lanza*, 260 U.S. 377, 382 (1922) (holding that "[e]ach government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.").

Without an injury in fact, Plaintiff's Complaint should be dismissed for a lack of standing and, thus, a failure to state a claim upon which relief can be granted Plaintiff against Sheriff Regalado.

**B.  Plaintiff Cannot Demonstrate Redressability**

Redressability is an "'irreducible'" component of standing, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), which requires "a likelihood that the

requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). Here, this component is fatally absent.

To establish redressability, one "must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). Said differently, redressability is absent when, as here, the Court's decision would have no meaningful effect on a complainant's alleged injury. Even if Plaintiff claimed that State Prosecutions caused actual injury, redress would not be available here. The most extreme—albeit inappropriate—relief would be to enjoin Defendant Kunzweiler from prosecuting certain crimes against a limited class of individuals, and order Sheriff Regalado to in-process all Indian detainees as tribal detainees. Even then, redress could not be achieved and the State Prosecutions that remain active would continue.

The Governor of Oklahoma has a constitutional duty to "cause the laws of the State to be faithfully executed[.]" OKLA. CONST. art. 6, § 8. A corresponding statute authorizes the Governor "to employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced, and the counsel so employed by him may, under the direction of the Governor, . . . may prosecute offenses against the law of the state[.]" OKLA. STAT. tit. 74, § 6. In addition, the Oklahoma Attorney General ("OAG") can initiate or appear in criminal prosecutions on behalf of the state. *Id*. at § 18(A)(3). The OAG may also "appear for the state and prosecute and defend all" criminal proceedings in the Oklahoma Court of Criminal Appeals in which the state is interested as a party. *Id*. at § 18b(A)(1). Given the Governor's and OAG's authority, an injunction would not hinder the State's ability to continue the prosecutions in Tulsa County District Court. And, finally, Plaintiff's requested injunction could not affect the state district courts or the Oklahoma Court of Criminal Appeals' ability to proceed with adjudications.

14

Oklahoma "District Court[s] shall have unlimited original jurisdiction of all justiciable matters[.]" OKLA. CONST. art. 7, § 7(a). And the Oklahoma Court of Criminal Appeals "shall have exclusive appellate jurisdiction . . . in all criminal cases appealed from the district . . . courts[.]" OKLA. STAT. tit. 20, § 40. The Oklahoma Court of Criminal Appeals "is supreme in all criminal appeals from state courts of this State," *Inverarity v. Zumwalt*, 1953 OK CR 148, ¶ 18, 262 P.2d 725, 730, and is duty bound to ensure Oklahoma has "a uniform system of criminal jurisprudence[.]" *State v. Davis*, 1913 OK CR 80, ¶ 8, 130 P. 962, 964.

In sum, a favorable decision for Plaintiff against a single district attorney and county sheriff would not redress any purported injury. Dismissal for a lack of standing is proper.

**PROPOSITION THREE**
**THE COURT SHOULD DISMISS UNDER THE *YOUNGER* ABSTENTION DOCTRINE**

**A.      Introduction to *Younger*.**

The Court should dismiss this action based on *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), and its progeny. *See also*, *D.L., et al. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228-29 (10th Cir. 2004) (stating that the *Younger* abstention presents a question of whether a federal court has jurisdiction to proceed with a case).

Under the *Younger* abstention doctrine, federal courts should not "interfere with state court proceedings by granting equitable relief - such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings" when a state forum provides an adequate avenue for relief. *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). The "Younger abstention is non-discretionary;" the district court must abstain once the conditions are met, "absent extraordinary circumstances." *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999). Although federal courts have a steep obligation to exercise the jurisdiction granted them, "they must on rare occasions abstain from exercising their

15

jurisdiction in order to 'avoid undue interference with states' conduct of their own affairs.'" *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (quoting *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.3d 709, 711 (10th Cir. 1989)). This is one such occasion.

In *Younger*, a state criminal defendant filed a federal action that alleged that the statute underlying his state prosecution violated the Constitution; he requested that its enforcement be enjoined. He thereby sought to reframe the issues in federal court and to convert what would ordinarily be a defense to a criminal prosecution into an affirmative claim for relief. *See Special Souvenirs, Inc. v. Town of Wayne*, 56 F. Supp. 2d 1062, 1071 (E.D. Wis. 1999). The *Younger* Court concluded that absent extraordinary circumstances, the federal court should abstain from hearing the case based on principles of equity, comity and federalism. *Younger*, 401 U.S. at 43-50.

The United States Supreme Court's discussion on the notion of "comity" in 1971, rings loud and true today:

> [A] proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.* at 44.

*Younger* has since been expanded from its original criminal proceeding application to apply to cases involving civil enforcement proceedings in state court, *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975); to cases involving the integrity of administration of the state's judicial system, *see Juidice v. Vail*, 430 U.S. 327, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977) (applying *Younger* to allow abstention by federal district courts in § 1983 actions where the state proceeding implicates a state interest); in cases involving two private parties, *see Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987); and, to certain pending

16

administrative proceedings, *see Ohio Civil Rights Comm'n*, 477 U.S. 619, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986).

In applying the *Younger* abstention doctrine, the Tenth Circuit Court of Appeals provides that federal courts must abstain from exercising jurisdiction when three (3) elements have been satisfied:

> First, there must be ongoing state criminal, civil, or administrative proceedings. Second, the state court must offer an adequate forum to hear the federal plaintiffs claims from the federal lawsuit. Third, the state proceeding must involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Taylor v. Jacquez*, 126 F.3d 1294, 1297 (10th Cir. 1997). If the three requirements are met, and no exceptions to *Younger* applies, a federal court must abstain from hearing the case. *See Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001).

### B.    Threshold Consideration to the *Younger* Analysis.

As a threshold consideration to the above requirements, *Younger* applies when the relief the plaintiff seeks in federal court would interfere with the ongoing state judicial proceeding. *Columbia Basement Apartment Assoc. v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001); *see also Marks v. Stinson*, 19 F.3d 873, 882 (3d Cir. 1994) (providing that "[a] federal court will only consider *Younger* abstention when the requested equitable relief would constitute federal interference in state judicial or quasi-judicial proceedings."); *Am. Fed'n of State, County and Municipal Employees v. Tristano*, 898 F.2d 1302 (7th Cir. 1990) (noting that common thread in cases implicating *Younger* abstention is the impact on and interference with the state proceedings.

The federal court interferes with state court proceedings "if plaintiffs seek relief in federal courts which will impair the ability of the state courts to adjudicate anything that is currently before them or where federal relief would render the state court's orders or judgments nugatory."

*Rappaport v. Norlar, Inc.*, 1994 U.S. Dist. LEXIS 5754, Civ.A.No.93-4756, 1994 WL 167959, at *9 (E.D. Pa. April 29, 1994) (internal quotations and citations omitted).[11] If these conditions are met, abstention is proper unless the plaintiff meets the heavy burden of showing "bad faith, harassment, or some extraordinary circumstance that would make abstention appropriate." *Middlesex County Ethics Comm.*, 457 U.S. 423 at 435, 73 L. Ed. 2d 116, 102 S. Ct. 2515; *see also Trackwell v. Kansas*, 2001 U.S. Dist. LEXIS 8301, 2001 WL 709366, at *2 (D. Kan. May 10, 2001).

Here, Plaintiffs seeks injunctive relief from the federal court to interfere with five (5) state court matters. *See* Complaint [Doc. 2, pp. 7-8, ¶¶ 22-27; Prayer for Relief, p.10 ¶¶ A-C]; and Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 4]. Indeed, the equitable relief requested here would constitute federal interference in state judicial proceedings. If the federal court does *not* abstain, the equitable relief sought by Plaintiffs would render the state court's orders or judgments nugatory:

> [I]nterference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference also results in duplicative legal proceedings, and can readily be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.

*Huffman v. Pursue, Ltd*., 420 U.S. 592, 604, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975). The threshold condition before examining the three (3) elements in the *Younger* abstention doctrine favors Defendants.

---

[11]Unpublished opinions in this brief are cited for their persuasive value only. 10th Cir. R. 32.1.

### C.      The First *Younger* Element.

The first element in the *Younger* analysis, set forth by the Tenth Circuit in *Taylor*, 126 F.3d at 1297, is the existence of an ongoing state criminal, civil, or administrative proceeding. The State Prosecutions began prior to Plaintiff's filing of its complaint. *See* Section II, *supra*. The first of three elements is satisfied. *Taylor*, 126 F.3d at 1297.

### D.      The Second *Younger* Element.

Regarding the second element, that the state court offers an adequate forum to hear the federal claims from the federal lawsuit, it should be deemed beyond dispute that the Oklahoma state judiciary provides an adequate forum to assert constitutional claims. *See, e.g.*, *Allen v. McCurry*, 449 U.S. 90, 105, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980) (citing *Stone v. Powell*, 428 U.S. 465, 493-94 n.35, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (1976), for its "emphatic reaffirmation . . . of the constitutional obligation of the state courts to uphold federal law, and its expression of confidence in their ability to do so")). *See also*, *Weitzel v. Division of Occupational & Prof'l Licensing*, 240 F.3d 871, 876 (10th Cir. 2001). The second element is satisfied.

### E.      The Third *Younger* Element.

The third element of the *Younger* abstention analysis examines whether the state proceeding involves important state interests. *Taylor*, 126 F.3d at 1297. The U.S. Supreme Court "has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49, 107 S. Ct. 353, 93 L. Ed. 2d 216 (1986) (citing *Younger*, 401 U.S. at 44-45). And, "[w]ith respect to the third condition, the State has an important interest in the administration of its judicial system but even a greater interest in the enforcement of its criminal laws. *See Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 12-

13, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (citing *Juidice v. Vail*, 430 U.S. 327, 335, 97 S. Ct. 1211,

51 L. Ed. 2d 376 (1977). The third and final element is satisfied. *Younger* and its progeny demand

dismissal of Plaintiff's Complaint.

      **F.    There are No Applicable Exceptions**.

      Injunctive intervention in state criminal proceedings is permissible only if (1) irreparable

injury is "both great and immediate," (2) the state law is "flagrantly and patently violative of

express constitutional prohibitions, or (3) Plaintiff could show "bad faith, harassment, or . . . other

unusual circumstances that would call for equitable relief." *Mitchum v. Foster*, 407 U.S. 225, 230-

31 (1972) (internal citations omitted). Regarding the third factor, the plaintiff bears a "heavy

burden" to establish bad faith or harassment, and the Tenth Circuit looks to three factors:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of
> success; (2) whether it was motivated by defendant's suspect class or in retaliation
> for the defendant's exercise of constitutional rights; and (3) whether it was
> conducted in such a way as to constitute harassment and an abuse of prosecutorial
> discretion, typically through the unjustified and oppressive use of multiple
> prosecutions.

*Weitzel*, 240 F.3d at 877; *see also Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) ("[I]t is

the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than

mere allegations of bad faith or harassment.").

      Any allegation of irreparable injury fails as a matter of fact and law. The State's prosecution

of non-Member criminal defendants for conduct occurring in Tulsa County, Oklahoma does not

impact Plaintiff's authority and jurisdiction to prosecute the same criminal occurrences; thus, no

injury. Moreover, the State Prosecutions have been pending since as early as two years prior to the

filing of this lawsuit, thus there is no imminency. *See State v. Bohanan*, CM-2022-108 (Tulsa Co.

Dist. Ct. Jan. 10, 2022).  Plaintiff fails to allege the State Prosecutions are motivated by a suspect

class or in retaliation for an exercise of constitutional rights. Of course, Plaintiff could not sincerely

contend that the prosecution of conduct such as obstructing an officer, driving under the influence in Oklahoma, and theft is motivated by anything other than concern for public safety and county and state affairs. Plaintiff likewise failed to show—or even attempt to show—the existence of bad faith, harassment, or any other unusual circumstance warranting equitable relief. Any such effort would be futile. The Oklahoma Court of Criminal Appeals' decision in *O'Brien*, and most recently in *Stitt v. City of Tulsa*, 2025 OK CR 5, the U.S. Supreme Court's decision and analysis in *Castro-Huerta*, and the state district court rulings in the State Prosecutions endorse the state's prosecutorial jurisdiction; thus, no frivolity or abuse of prosecutorial discretion. In sum, Plaintiff cannot fit its allegations into an exception to the non-discretionary bar on federal court intervention in state criminal proceedings. *Younger* abstention requires dismissal.

### G.    *Younger* Abstention Applies to Future Prosecutions.

Plaintiff lacks standing to assert claims regarding future prosecutions not yet initiated, which are subject to its request for injunctive relief. Although *Younger* abstention may only be mandatory where there is an "ongoing criminal prosecution," there "plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975); *see also Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975) (holding that Younger abstention could not be avoided on the ground that no criminal prosecution was pending against appellees on the date the federal complaint was filed where appellees "had a substantial stake in the state proceedings").

> Where a federal plaintiff has "a substantial stake in the state proceedings" or has interests that are "intertwined" with the interests of a party to the state proceedings, abstention—sometimes referred to as derivative abstention—may be appropriate.

*Ellis v. Morzelewski*, 2:21-CV-639-TC, 2022 WL 3645850, at *7 (D. Utah Aug. 24, 2022); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1046-47 (9th Cir. 2019) (holding that parties with "a

sufficiently close relationship or sufficiently intertwined interests" may be "treated similarly for purposes of *Younger* abstention.") (collecting cases).

As argued above, Plaintiff lacks standing to assert claims regarding future prosecutions not yet initiated, which are subject to its request for injunctive relief. However, to the extent the Court considers any such generalized claims, derivative abstention is appropriate due to Plaintiff's intertwined interests. Plaintiff not only references the State Prosecutions as support for this lawsuit, Compaint [Doc. 2, ¶¶ 22-23], but also alleges how each criminal defendant has challenged the State's jurisdiction in the same manner as Plaintiff does here. *Id*. at ¶ 25. Plaintiff then details how its generalized claims are no different from those being litigated in the State Prosecutions. *Id*. at ¶¶ 26-29. And, remarkably, Plaintiff even alleges that "the District Court in and for Tulsa County, Oklahoma, accepted the County's arguments, denied the Indian defendant's motion to dismiss, and permitted the prosecution to move forward." Complaint [Doc. 2, ¶ 27]. In other words, Plaintiff explicitly acknowledges that other courts have adjudicated the precise issues that it improperly brings to this Court. *Younger* abstention applies to all prosecutions covered by Plaintiff's Complaint, not just the State Prosecutions. Yet, Plaintiff paternalistically seeks to hover over the State Prosecution defendants who have already demonstrated the ability to raise their own jurisdictional challenges in state court.

### PROPOSITION FOUR
### PLAINTIFF'S COMPLAINT FAILS TO IDENTIFY
### A VIOLATION OF FEDERAL LAW BY SHERIFF REGALADO

Other than identifying him as a party, Plaintiff only references Sheriff Regalado twice in its complaint, neither of which allegation purports to be a violation of a federal law this Plaintiff has standing to seek redress here, and for which there is no injury alleged. Indeed, the Complaint states in successive paragraphs:

28.  The Tulsa County Sheriff has additionally adopted a policy of booking and classifying inmates and asserting criminal jurisdiction over non-member Indians in light of *O'Brien*. In a memorandum that the Sheriff's Department provided to the Nation on January 24, 2025, the Sheriff stated that "tribal members will be charged by tribal courts only if they are a member of the tribe in which the criminal offense took place.... Any other tribal citizens will not be booked or charged into tribal courts but rather STATE court and booked into [the David L. Moss Criminal Justice Center] as any other citizen."

29.  The David L. Moss Criminal Justice Center is operated by the Sheriff.

Complaint [Doc. 2, pp. 8-9]. So, basically, Sheriff Regalado is accused by Plaintiff of following Oklahoma law, as articulated by the Oklahoma Court of Criminal Appeals in *O'Brien*.

The act at-issue by Sheriff Regalado is to simply identify, for administrative processing reasons, whether an arrestee is being booked into the county jail by a municipality for the violation of state law, or brought to the jail by either the Nation or Cherokee Nation for the violation of state or tribal law. Whether, where, or what criminal charge, if any, is subsequently filed is up to the complete discretion of state or tribal prosecutors, not Sheriff Regalado. *See Carpenter v. State*, 1996 OK CR 56, ¶ 23, 929 P.2d 988, 995. *See also State ex rel. Stout v. Craytor*, 1996 OK CR 79, P12, 753 P.2d 1365, 1368 (noting that the District Attorney has the discretion to decide whether to prosecute and of what charge to bring in state court). Sheriff Regalado and the Tulsa County Sheriff's Office cannot file criminal charges against any person, in any court, and do not determine whether a person is being held by the state or a tribe. If charges are filed, Sheriff Regalado and the jail then follow the direction of the court—state or tribal—with respect to further detention.[12] The

---

[12] With respect to the State Prosecutions, there is no evidence Sheriff Regalado or the Tulsa County Sheriff's Office were involved in the arrest of any of the defendants. In fact, the Oklahoma State Court Network links provided by Plaintiff in its Complaint indicates that four of the five were arrested by the Tulsa Police Department, while the docket for the fifth is silent in this regard. Section II, *supra*.

inclusion of Sheriff Regalado as a defendant in this matter is pointless. Plaintiff has not stated a claim upon which relief can be granted against Sheriff Regalado.

## PROPOSITION FIVE
### THE *COLORADO RIVER* ABSTENTION DEMANDS DISMISSAL

Sheriff Regalado incorporates by reference the proposition, argument, and authorities set forth in Defendant Kunzweiler's motion to dismiss and brief in support regarding the invocation of the *Colorado River* Abstention Doctrine.

## CONCLUSION

Plaintiff's Complaint and request for relief is based upon the already failed legal arguments from the dissent in *Castro-Huerta* and the short and lone dissent in *O'Brien*. "Comments in the dissenting opinion . . . 'are just that: comments in a dissenting opinion." *Fritz*, 449 U.S. at 177, n. 10. Furthermore, Plaintiff does not have standing to bring this action. There is no injury in fact to the Nation. State jurisdiction in concurrent in violations of general crimes. The Nation has not lost any ability to charge and prosecute its Members, Non-Members, or non-Indians for violating Creek law in the Nation's Reservation, and it can prosecute the defendants in the State Prosecutions if the offenses are alleged to have occurred in the Nation's Reservation. The *Younger* abstention doctrine should also be followed here. Under this doctrine, federal courts should not interfere with state court proceedings by granting equitable relief - such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings when a state forum provides an adequate avenue for relief. The *Colorado River* abstention doctrine further applies and should be followed to dismiss Plaintiff's Complaint. The legal doctrines of standing, *Younger*, and *Colorado River* aside, Plaintiff's issue with the Sheriff is a memorandum within in his office that discusses how to in-process a person being admitted into the county jail based upon whether the arrestee is a Member of the tribal territory where the incident occurred. Sheriff

Regalado has not input or authority to decide whether an arrestee will be charged with any crime by the State of Oklahoma or by one of the tribes (Cherokee or Muscogee (Creek)). Once a person is charged, Sheriff Regalado takes directions from the courts. Sheriff Regalado simply does not belong as a party to this lawsuit. Plaintiff has failed to state a claim upon which relief can be granted against Sheriff Regalado. Dismissal is proper.

**Filed**: **April 7, 2025**

**HALL, ESTILL, HARDWICK, GABLE,**
**GOLDEN & NELSON, P.C.**

*s/ Keith A. Wilkes*
Keith A. Wilkes, OBA 16750
521 East Second Street, Suite 1200
Tulsa, Oklahoma 74120
T: 918.584.0400
F: 918.594.0505
kwilkes@hallestill.com

**ATTORNEYS FOR SHERIFF REGALADO**

25

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025, I electronically transmitted the foregoing Motion to Dismiss to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing and to the registered party participants of the ECF system.


*s/ Keith A. Wilkes*

Keith A. Wilkes