IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

MUSCOGEE (CREEK) NATION,          )
a federally recognized Indian tribe,   )
                                                     )
                    *Plaintiff*,                    )
                                                     )
v.                                                   )          Case No. 25-cv-00075-GKF-JFJ
                                                     )
TULSA COUNTY, OKLAHOMA;         )
STEVE KUNZWEILER, in his official  )
capacity as District Attorney for the  )
Fourteenth Prosecutorial District of  )
Oklahoma; and VIC REGALADO, in his )
official capacity                              )
as Tulsa County Sheriff,                  )
                                                     )
                    *Defendants*.                  )

**DEFENDANT STEVE KUNZWEILER'S RESPONSE TO THE MUSCOGEE (CREEK) NATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND OPENING BRIEF IN SUPPORT**

## **TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................. 1

**ARGUMENT** ...................................................................................................... 6

  **I. LEGAL STANDARD** ................................................................................. 6

  **II. PLAINTIFF FAILS TO SATISFY ITS BURDEN, AND THE COURT SHOULD DENY ITS REQUEST FOR A PRELIMINARY INJUNCTION**........................................ 9

    **a. Under the first prong, Plaintiff fails to show a likelihood that it will succeed on the merits**.................................................................................................... 9

      **i. Plaintiff's reliance on *McGirt* to presume the preemption of state jurisdiction over the prosecution of "non-major crimes" is misplaced and contrary to the express holding of *Castro-Huerta*** ............................................................... 10

      **ii. Applying the correct standard, as set forth in *Castro-Huerta* and its reliance on *Bracker*, there is no basis for federal preemption here** ................................. 12

        **1. Plaintiff has failed to demonstrate that Congress has preempted state criminal jurisdiction to prosecute non-major crimes committed in Indian country** ........... 13

        **2. Plaintiff has failed to demonstrate how the exercise of jurisdiction by the State would infringe on tribal self-government** ................................................. 15

    **b. The Court need not reach the second or third prongs of the preliminary injunction standard, but even if it does, Plaintiff still fails to meet its burden**............................... 19

      **i. Plaintiff fails to show that it will suffer irreparable harm if a preliminary injunction is not issued** ..................................................................... 19

      **ii. Plaintiff fails to show that the balance of equities tips in its favor and a preliminary injunction is in the public interest**........................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Aposhian v. Barr*,
   958 F.3d 969 (10th Cir. 2020) ................................................................. 22

*Arizona v. United States*,
   567 U.S. 387 (2012) ............................................................................... 13

*Black Emergency Response Team v. Drummond*,
   737 F. Supp. 3d 1136 (W.D. Okla. 2024) ............................................... 22

*California v. Cabazon Band of Mission Indians*,
   480 U.S. 202 (1987) ............................................................................... 10

*City of Tulsa v. O'Brien*,
   2024 OK CR 31, 2024 WL 5001684 .................................................. passim

*City of Tulsa v. Stitt*,
   2025 OK CR 5 ................................................................................ 3, 5, 10

*Crowe & Dunlevy, P.C. v. Stidham*,
   640 F.3d 1140 (10th Cir. 2011) .............................................................. 16

*Dodd v. United States*,
   545 U.S. 353 (2005) ............................................................................... 11

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
   356 F.3d 1256 (10th Cir. 2004) ............................................................ 7, 8

*Duro v. Reina*,
   495 U.S. 676 (1990) ................................................................... 17, 18, 23

*Fish v. Kobach*,
   840 F.3d 710 (10th Cir. 2016) ................................................................. 8

*Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*,
   916 F.3d 792 (10th Cir. 2019) ................................................................. 8

*Heideman v. South Salt Lake City*,
   348 F.3d 1182 (10th Cir. 2003) .............................................................. 19

*Henson v. Santander Consumer USA Inc.*,
   582 U.S. 79 (2017) ................................................................................. 11

*Kansas v. Garcia*,
   589 U.S. 191 (2020) ............................................................................... 22

*Kelly v. Robinson*,
  479 U.S. 36, 49 (1986) ............................................................................................. 22

*LaRock v. Wisconsin Dep't of Revenue*,
  621 N.W.2d 907 (Wisc. 2001) ................................................................................. 17

*McGirt v. Oklahoma*,
  591 U.S. 894 (2020) .......................................................................................... passim

*MFE Enterprises, Inc. v. Alphanetics*,
  24-CV-304-JFJ, 2024 WL 5201216 (N.D. Okla. Dec. 23, 2024). ............................. 9

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*,
  09-CV-285-TCK-TLW, 2009 WL 10695371, at *3 (N.D. Okla. Nov. 19, 2009) .............. 19, 20

*New Mexico v. Mescalero Apache Tribe*,
  462 U.S. 324 (1983) ................................................................................................. 10

*Nova Health Sys. v. Edmondson*,
  373 F. Supp. 2d 1234 (N.D. Okla. 2005), *aff'd*, 460 F.3d 1295 (10th Cir. 2006) .................... 19

*Oklahoma v. Biden*,
  577 F. Supp.3d 1245 (W.D. Okla. 2021) ............................................................... 7, 19

*Oklahoma v. Bohanan*,
  No. CM-2022-108, District Court of Tulsa County .................................................... 3

*Oklahoma v. Castro-Huerta*,
  597 U.S. 629 (2022) .......................................................................................... passim

*Oklahoma v. Hess*,
  No. CM-2024-2951, District Court of Tulsa County ................................................... 3

*Oklahoma v. Mason*,
  No. CM-2024-4510, District Court of Tulsa County ................................................... 3

*Oklahoma v. Morris*,
  No. CM-2024-4494, District Court of Tulsa County ................................................... 3

*Oklahoma v. Neafus*,
  No. CM-2024-1222, District Court of Tulsa County ................................................... 3

*ONEOK Hydrocarbon, L.P. v. U.S. Dep''t of Transp.*,
  12-CV-660-JHP-FHM, 2012 WL 7853812 (N.D. Okla. Dec. 7, 2012), *report and recommendation adopted, ONEOK Hydrocarbon, L.P. v. U.S. Dep''t of Transp.*, 12-CV-660-JHP-FHM, 2013 WL 1412823 (N.D. Okla. Apr. 8, 2013) ....................... 7

*Republican Party of New Mexico v. King*,
  741 F.3d 1089 (10th Cir. 2013) .............................................................................. 1, 7

*RoDa Drilling Co. v. Siegal*,
  552 F.3d 1203 (10th Cir. 2009) ................................................................. 19

*Sampson v. Murray*,
  415 U.S. 61, 86 (1974) ............................................................................. 6

*Schrier v. Univ. of Co.*,
  427 F.3d 1253 (10th Cir. 2005) ................................................................. 8

*State v. R.M.H.*,
  617 N.W.2d 55 (Minn. 2000) ............................................................. 16, 21

*State v. Shale*,
  345 P.3d 776, 779 (Wash. 2015) ......................................................... 17, 21

*Stephens v. Jones*,
  494 Fed. Appx. 906 (10th Cir. 2012) ......................................................... 7

*Thlopthlocco Tribal Town v. Stidham*,
  762 F.3d 1226 (10th Cir. 2014) ............................................................... 17

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................................. 3

*United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.*,
  883 F.2d 886 (10th Cir. 1989) ................................................................... 7

*United States v. Cooley*,
  593 U.S. 345 (2021) ............................................................................... 18

*United States v. Lara*,
  541 U.S. 193 (2004) ............................................................................... 23

*Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*,
  790 F.3d 1000 (10th Cir. 2015) ............................................................... 20

*Vietti v. Welsh & McGough, PLLC*,
  21-CV-58-JFH-SH, 2022 WL 1288314 (N.D. Okla. Apr. 30, 2022) ......................... 6

*Wacondo v. Concha*,
  873 P.2d 276 (N.M. App. 1994) ............................................................... 21

*Warner v. Gross*,
  776 F.3d 721 (10th Cir. 2015) ................................................................... 7

*Washington v. Confederated Tribes of Colville Indian Reservation*,
  447 U.S. 134 (1980) ........................................................................... 5, 17

*White Mountain Apache Tribe v. Bracker*,
  448 U.S. 136 (1980) ....................................................................... passim

*Williams v. Platt*,
  CIV-03-281-C, 2006 WL 3097184 (W.D. Okla. Oct. 30, 2006).................................. 6

*Worcester v. Georgia*,
  31 U.S. 515 (1832).................................................................................................. 23

*Wyandotte Nation v. Sebelius*,
  443 F.3d 1247 (10th Cir. 2006)............................................................................. 19

*Wyeth v. Levine*,
  555 U.S. 555 (2009)............................................................................................... 13

**Statutes**

25 U.S.C. § 1301.................................................................................................... 17

**Rules**

Fed. R. Civ. P. 65(b)................................................................................................ 6

Defendant Steve Kunzweiler, in his capacity as District Attorney ("Defendant"), files this Response to the Muscogee (Creek) Nation's ("Plaintiff" or "Nation") Motion for Temporary Restraining Order and Preliminary Injunction and Opening Brief in Support ("Motion") [Doc. No. 4]. For the reasons set forth herein, Plaintiff's Motion should be denied.

## INTRODUCTION

Plaintiff's request that the Court temporarily restrain and preliminarily enjoin Defendant should be denied. As the Court knows, a temporary restraining order and/or preliminary injunction is an extraordinary remedy, and Plaintiff cannot establish a likelihood of success on the merits, demonstrate irreparable harm, or show that the balance of equities favors an injunction and/or that an injunction serves the public interest. *See Republican Party of New Mexico v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013) (setting forth the four elements).

Under the law announced by the U.S. Supreme Court in *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636-638 (2022) ("*Castro-Huerta*"), a state "has jurisdiction over all of its territory, including Indian country." States, therefore, have jurisdiction to prosecute an individual accused of committing a crime within the state's Indian country unless preempted by federal law or where the exercise of jurisdiction would infringe on tribal self-governance. *Contra* Doc. No. 4 at 1 (where Plaintiff distorts the present analytical framework, wrongly contending "Oklahoma and its political subdivisions may exercise criminal jurisdiction over Indians within the Reservation only with the assent of Congress."). Neither the General Crimes Act nor any other federal law preempts state jurisdiction over non-major crimes, and both the federal government and the State of Oklahoma "have concurrent jurisdiction to prosecute crimes committed in Indian country" under the General Crimes Act. *Id*. at 639, 649. As interpreted by the Oklahoma Court of Criminal Appeals ("OCCA") in *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684 ("*O'Brien*"), which applied the law as set forth in *Castro-Huerta*, the State's exercise of criminal jurisdiction over non-member

Indians for non-major crimes committed in Indian country is likewise not foreclosed by principles of tribal self-government.

With this in mind, it becomes clear that the filing of this lawsuit is nothing more than an invitation for the Court to shirk, if not outright ignore, *Castro-Huerta* and constitutes an impermissible collateral attack on the OCCA's decision in *O'Brien*. Nearly two years have passed since the prosecutions cited in the Complaint were first filed. And Plaintiff filed this lawsuit only weeks after the OCCA issued its opinion in *O'Brien*. That's no coincidence. Plaintiff even flaunts its improper collateral attack, arguing, in part, "*O'Brien* premises its analysis on *Castro-Huerta*, and that reliance is entirely misplaced." Doc. No. 4 at 2. Notably, this attack comes on the heels of the *O'Brien* court having denied rehearing, explaining that "[a]ll questions duly submitted, *including the issues raised in . . . the Muscogee (Creek) Nation's amicus brief*, were reviewed by the Court prior to rendering the decision in this case." *City of Tulsa v. O'Brien*, Order Denying Pet. for Rehearing, No. S-2023-715 (Okla. Ct. Crim. App. Feb. 5, 2025) (emphasis added).

In its Motion, Plaintiff's request for relief is as remarkable as it is legally unsupported: Plaintiff seeks to enjoin Defendant from "asserting criminal jurisdiction over Indians within the boundaries of the Muscogee (Creek) Reservation" ("Creek Indian country"), purportedly based upon the U.S. Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. 894 (2020) ("*McGirt*"). [Doc. No. 4 at 1]. But that's old, and largely inapplicable, news. As the Court knows, the *McGirt* decision's holding was narrow, limited to cases involving the prosecution of "tribal members for major crimes." *Id*. at 934. Unlike the dispute in *McGirt*, the five cases (pending in the District Court of Tulsa County, Oklahoma) Plaintiff cites as the basis for its request for extraordinary relief involve State prosecution of non-member Indians for *non-major* crimes allegedly committed in Indian country (*i.e.*, crimes committed on or within the Creek's Indian country by members of

other recognized tribes). Doc. No. 2, ¶ 23 (citing *Oklahoma v. Bohanan*, No. CM-2022-108 (member of the Choctaw Nation); *Oklahoma v. Hess*, No. CM-2024-2951 (member of the Choctaw Nation); *Oklahoma v. Mason*, No. CM-2024-4510 (member of the Navajo Nation); *Oklahoma v. Neafus*, No. CM-2024-1222 (member of the Sac & Fox Nation of Missouri); *Oklahoma v. Morris*, No. CM-2024-4494 (member of the Choctaw Nation)). The issue before the Court is thus the *same one* the OCCA just faced—and decided—in *O'Brien* and *City of Tulsa v. Stitt*, 2025 OK CR 5, namely: whether the State of Oklahoma's jurisdiction over all of its territory, which includes Indian country, includes criminal jurisdiction over non-member Indians who commit non-major crimes in Indian country.[1] Moreover, the State prosecutions at issue here fall under the General Crimes Act. The Supreme Court reviewed the General Crimes Act closely in *Castro-Huerta* and determined that it does not preempt State jurisdiction. Plaintiff's suggestion that this Court should hold otherwise is thus improper.

A temporary restraining order and preliminary injunction should not issue. *First*, despite its proclamation otherwise, Plaintiff fails to show that it has a likelihood of success on the merits. Throughout its Motion, Plaintiff invites the Court both to adopt an incorrect legal standard and to misapply Supreme Court precedent. By way of example, Plaintiff asserts that *McGirt* and a "long line of precedent"[2] establish that States do not have criminal jurisdiction in Indian country unless Congress has expressly granted it. Such an assertion shrugs off a bedrock principle of Supreme Court jurisprudence: that the most recent decision becomes the governing rule for how an issue is to be handled. To restate it again: in *Castro-Huerta* the Supreme Court announced that "[t]he

---

[1] Any broader framing of the issue would require the Court to impermissibly engage in hypotheticals or address issues not before it. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes.").

[2] Doc. No. 4 at 7.

default is that States have criminal jurisdiction in Indian country unless jurisdiction is preempted." *Castro-Huerta*, 597 U.S. at 629. Nevertheless, Plaintiff attempts to distract the Court from that which *Castro-Huerta* plainly requires, choosing to build its analytical foundation on *McGirt*, itself a case expressly limited to whether the State has authority to prosecute Indians who commit major rrimes in Indian country. *McGirt*, 591 U.S. at 898, 934 ("Mr. McGirt's appeal rests on the federal Major Crimes Act."). Considering this improper lawsuit challenges the State's jurisdiction to prosecute general crimes in Indian country, *Castro-Huerta* could not more clearly apply (especially relative to *McGirt*—a case having no bearing on general crimes).

As explained by the Court in *Castro-Huerta*, when the law is read and applied correctly, it is clear that states retain jurisdiction over all of their territory, including criminal jurisdiction in Indian country, *unless* the state's jurisdiction (1) is preempted by federal law or (2) unlawfully infringes on tribal self-government. *See* 597 U.S. at 638. This standard, known as the "*Bracker* test," stems from the Supreme Court's opinion in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-43 (1980) ("*Bracker*").

In its Motion, Plaintiff reruns pre-*Castro-Huerta* analysis, urging the Court to conclude that the State is without jurisdiction over a non-member Indian's criminal conduct in Indian country unless Congress has signed a permission slip otherwise. But that's not the law. Preemption, not permission, is the exception to the general rule that a State is "entitled to the sovereignty and jurisdiction over all the territory within her limits[,]" including Indian country. *Castro-Huerta*, 597 U.S. at 636. Furthermore, Plaintiff fails to—and cannot—articulate how the State's exercise of jurisdiction would infringe on tribal self-government—and, indeed, does not even cite or discuss *Bracker*.

4

Because Plaintiff cannot show that it has a likelihood of success on the merits, the Court need not consider the remaining factors of the preliminary injunction analysis. If, however, the Court chooses to proceed, Plaintiff also fails on the other prongs. For instance, Plaintiff fails to show that it will suffer irreparable harm if a preliminary injunction is not issued. Sure, Plaintiff warns of potential disruption to tribal sovereignty and prosecutorial jurisdiction in Indian country. But Plaintiff totally fails to show how the State's concurrent prosecution of non-member Indians for crimes committed within the historical boundaries of Plaintiff's Indian country infringes on the Nation's sovereignty or tribal self-government. The warning is therefore akin to shouting "fire" before there's even a hint of smoke. Further, the Supreme Court has consistently declined to find an infringement on tribal self-government when the conduct of non-member Indians, who are not constituents of the governing tribe and have no role in its political processes, are at issue. *See Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134 (1980) (*"Colville"*). The Court articulated a clear rule: "For most practical purposes," non-member Indians "stand on the same footing as non-Indians resident on the reservation." *Id*. Plaintiff's argument is even more significantly weakened by other examples where courts have upheld state jurisdiction over crimes committed by non-member Indians. Besides, the most significant disruption here would stem from enjoining a single District Attorney while allowing others throughout Indian country to maintain prosecutorial authority consistent with *Castro-Huerta*, *O'Brien*, and *Stitt*.

Finally, Plaintiff also fails to articulate how the balance of equities and the public interest breaks in its favor. The State of Oklahoma has a strong interest in enforcing its laws and keeping the public safe, regardless of a defendant's race or political status. The applicable framework handed down by the Supreme Court in *Castro-Huerta* supports the State's authority to prosecute

both non-member Indians and non-Indian offenders. Precedent also supports the State's primary role in criminal law enforcement. Plaintiff fails to show that a preliminary injunction serves the public interest. In fact, the balance of equities favors Oklahoma's continued exercise of jurisdiction over non-member Indians in Indian country.

Under *Castro-Huerta*, states have criminal jurisdiction in Indian country unless the state's jurisdiction is preempted by federal law or unlawfully infringes on tribal self-governance. Here, Plaintiff proves neither. Because Plaintiff cannot satisfy any prong of the standard for a preliminary injunction, Plaintiff's attempt to forestall State prosecutions, overturn recent OCCA decisions, and disregard *Castro-Huerta* fails. For all these reasons, Plaintiff's request for a temporary restraining order or preliminary injunction should be denied.

## **ARGUMENT**

### I.    **LEGAL STANDARD**

Plaintiff seeks both a "noticed" temporary restraining order and a preliminary injunction. However, Rule 65(b) contemplates only a time-limited temporary restraining order issued without notice."[A] temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions." *See Sampson v. Murray*, 415 U.S. 61, 86 (1974); *see also Vietti v. Welsh & McGough, PLLC*, 21-CV-58-JFH-SH, 2022 WL 1288314, at *2 (N.D. Okla. Apr. 30, 2022) ("The primary difference between a TRO and a preliminary injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited duration."). Therefore, the request for a temporary restraining order must be denied, as it is inconsistent with the Federal Rules, mooted by the provision of notice and an opportunity to respond to Defendants, and superseded by the preliminary injunction motion. *See, e.g., Williams v. Platt*, CIV-03-281-C, 2006 WL 3097184, at *1 (W.D. Okla. Oct. 30, 2006) (adopting report and recommendation of magistrate judge) ("The

Defendants obtained notice of the requests either through service or electronic case filing. Once the Defendants obtained notice and an opportunity to respond, the requests for a temporary restraining order became moot. As a result, the Court should treat the requests for a temporary restraining order as superseded by the applications for a preliminary injunction."); *Stephens v. Jones*, 494 Fed. Appx. 906, 909 (10th Cir. 2012) (citing with approval magistrate's finding that a request for a temporary restraining order was mooted by defendants' response to it).

A preliminary injunction is "the exception rather than the rule." *United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888 (10th Cir. 1989). Since it is "an extraordinary remedy, the right to relief must be clear and unequivocal." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) (internal quotation marks and citation omitted). "To obtain a preliminary injunction, the movant bears the burden of establishing four factors: '(1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest.'" *Oklahoma v. Biden*, 577 F. Supp.3d 1245, 1251 (W.D. Okla. 2021) (quoting *Republican Party of N.M.*, 741 F.3d at 1092).[3] "[W]here a movant fails to establish a likelihood of success on the merits, it is unnecessary to address the remaining requirements for a preliminary injunction." *Id.*; *see also Warner v. Gross*, 776 F.3d 721, 736 (10th Cir. 2015).

---

[3] Even though the request for a temporary restraining order is improper, the proper legal analysis is unchanged. "Temporary restraining orders and preliminary injunctions are subject to the same standards. [T]herefore references to preliminary injunctions apply also to temporary restraining orders." *ONEOK Hydrocarbon, L.P. v. U.S. Dep''t of Transp.*, 12-CV-660-JHP-FHM, 2012 WL 7853812, at *1 (N.D. Okla. Dec. 7, 2012), *report and recommendation adopted, ONEOK Hydrocarbon, L.P. v. U.S. Dep''t of Transp.*, 12-CV-660-JHP-FHM, 2013 WL 1412823 (N.D. Okla. Apr. 8, 2013).

Because certain types of preliminary injunctions "don't merely preserve the parties' relative positions pending trial," courts treat them as "disfavored" and impose on plaintiff "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019). A "disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Id*. To get a disfavored injunction, Plaintiff must make a "strong showing" that each of these prongs tilt in its favor. *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016).

Although the relief Plaintiff seeks (a general injunction against the defendants from "any further assertion of criminal jurisdiction over Indians within the Creek Reservation") is not well-defined, it would clearly be considered a disfavored injunction.

*First*, the injunction would mandate action, rather than merely prohibiting it. An injunction is considered mandatory if it "affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Dominion Video*, 356 F.3d at 1261. An injunction requiring Defendant to halt or dismiss such prosecutions would compel affirmative action, such as filings and interactions with state courts.

*Second*, the requested relief would change the status quo. According to the Tenth Circuit, the status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005). As Plaintiff concedes by citing five ongoing criminal prosecutions of non-member Indians, the last uncontested status prior to this action was that Defendant is prosecuting non-member

8

Indians for non-major crimes in Indian country, as authorized under *Castro-Huerta* and Oklahoma law. A preliminary injunction would, therefore, change the status quo.

*Third*, granting the injunction Plaintiff seeks would provide all the relief Plaintiff could expect from a trial win, namely: disrupting the ongoing criminal proceedings and barring a District Attorney from carrying out his duties. Because Plaintiff requests a disfavored preliminary injunction, Plaintiff "must make a heightened showing of the four factors to obtain the injunction." *MFE Enterprises, Inc. v. Alphanetics*, 24-CV-304-JFJ, 2024 WL 5201216, at *4 (N.D. Okla. Dec. 23, 2024). Plaintiff has not established an entitlement to injunctive relief under each of the four factors, much less met its burden to make a heightened showing.

## II.    PLAINTIFF FAILS TO SATISFY ITS BURDEN, AND THE COURT SHOULD DENY ITS REQUEST FOR A PRELIMINARY INJUNCTION.

### a.    Under the first prong, Plaintiff fails to show a likelihood that it will succeed on the merits.

Plaintiff has not demonstrated a likelihood of success on the merits and is incorrect in asserting that states lack jurisdiction unless authorized by Congress. Throughout its Motion [Doc. No. 4], Plaintiff urges the Court to adopt an incorrect legal standard. Although Plaintiff purports to rely on *McGirt*, it ignores the specific context and express limits of its holding. Instead, Plaintiff invites the Court to presume a blanket absence of state jurisdiction over all Indian criminal conduct, rather than applying the correct analysis set forth by the Supreme Court in *Castro-Huerta* and its reliance on *Bracker*.

Just weeks before Plaintiff filed this lawsuit, the OCCA in *O'Brien* applied the correct jurisdictional framework to the issue central to this case and held that the State has jurisdiction to prosecute non-member Indians who commit non-major crimes in Indian country. The OCCA has

since been even clearer: "Oklahoma has concurrent jurisdiction in Indian country over non-member Indian defendants accused of committing non-major crimes." *Stitt*, 2025 OK CR 5, ¶ 8.

This case, therefore, represents an inappropriate collateral attack on the OCCA's decisions and is, in essence, a veiled attempt to disregard *Castro-Huerta*, if only in part.

> **i.     Plaintiff's reliance on *McGirt* to presume the preemption of state jurisdiction over the prosecution of "non-major crimes" is misplaced and contrary to the express holding of *Castro-Huerta*.**

Plaintiff's hope that cherry-picked lines from *McGirt* (an opinion explicitly limited to consideration of the Major Crimes Act) will induce the Court to adopt a novel analytical framework pursuant to which States would presumptively lack jurisdiction in Indian country is misplaced. Precedent—especially *Castro-Huerta* and authorities cited therein—simply does not support Plaintiff's position. Generally, "a State may validly assert authority over the activities of non-members on a reservation, and … in exceptional circumstances a State may assert jurisdiction over the on-reservation activities of tribal members." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 331–32 (1983). The Court has rejected "an inflexible per se rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 214–15 (1987).

Plaintiff, quoting from a paragraph in *McGirt* that begins, "Mr. McGirt's appeal rests on the federal Major Crimes Act," argues that "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country' absent a 'clear expression of the intention of Congress.'" 591 U.S. at 898 [Doc. No. 4 at 7]. From this, Plaintiff extrapolates the adoption of a new "inflexible per se rule" that Oklahoma lacks criminal jurisdiction over all Indians for all crimes committed in Indian country unless Congress expressly grants such authority. [Doc. No. 4 at 7-10]. But *McGirt*, which explicitly limited its consideration to jurisdiction over major crimes,

doesn't serve Plaintiff's end: "Congress allowed only the federal government, not the States, to try tribal members for *major crimes*. All our decision today does is vindicate that replacement promise." *McGirt*, 591 U.S. at 934 (emphasis added). Simply put, *McGirt* did not address crimes governed by the General Crimes Act, like those at issue here. *See id*. at 898.

In contrast, the *Castro-Huerta* case subjected the General Crimes Act to the preemption analysis and reaffirmed the legal standard for analyzing state criminal jurisdiction in Indian country, rooted in principles of state sovereignty "dating back to the 1800s[.]" *Castro-Huerta*, 597 U.S. at 637. Under this bedrock principle, "States have jurisdiction to prosecute crimes committed in Indian country *unless preempted.*" *Castro-Huerta*, 597 U.S. at 637 (emphasis added).

> To begin with, the Constitution allows a State to exercise jurisdiction in Indian country. Indian country is part of the State, not separate from the State. To be sure, under this Court's precedents, federal law may preempt that state jurisdiction in certain circumstances. But otherwise, as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country.

*Id*. at 636 (emphasis added). Rephrased, the default rule is that States have criminal jurisdiction in Indian country unless that jurisdiction has been preempted by an act of Congress or unlawful infringement on tribal self-government. *Id*. Attempts to alter the default rule through a patchwork of dissents,[4] legislative history,[5] and novel theories, must fail. No court may … "replace the actual text with speculation as to Congress' intent." *Castro-Huerta*, 597 U.S. at 642; *see also Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (The Court "presume[s] more modestly" ... that [the] legislature says ... what it means and means ... what it says.") (quoting *Dodd v. United States*, 545 U.S. 353, 357 (2005).)

Plaintiff does not and cannot demonstrate preemption under either part of the *Bracker* test. Instead, Plaintiff misapplies an inapplicable framework. After dismissing *Castro-Huerta*, Plaintiff

---

[4] *See, e.g.,* Mot. at 10 ("As the dissent put it . . . .").
[5] *See, e.g.,* Mot. at 12 (quoting conference reports).

turns to selective quotes from *McGirt* in an attempt to persuade this Court that states cannot exercise jurisdiction in Indian country without express Congressional permission. The foundation of Plaintiff's argument reflects its interpretation of "what the law should be," not "what the law is." *Castro-Huerta,* 597 U.S. at 656. The Court in *Castro-Huerta* made it clear: "States do not need a permission slip from Congress to exercise their sovereign authority. The default is that States have criminal jurisdiction in Indian country unless that jurisdiction is preempted." *Id.*

Plaintiff's intent to challenge the framework and holding in *Castro-Huerta* is apparent. Indeed, rather than follow the Supreme Court's opinion and longstanding precedent,[6] Plaintiff invites this Court to adopt the dissent's view of the preemption test. *See id.* at 668 (Gorsuch, J., dissenting) (arguing that, in the view of the dissent, "the preemption rule" applicable in matters of Indian tribal sovereignty should be "exactly the opposite of the normal rule"). The Court's decision stands in direct contrast Plaintiff's argument:

> [U]nder the Constitution and this Court's precedents, the default is that States may exercise criminal jurisdiction within their territory. See Amdt. 10. States do not need a permission slip from Congress to exercise their sovereign authority. In other words, the default is that States have criminal jurisdiction in Indian country unless that jurisdiction is preempted. In the dissent's view, by contrast, the default is that States do not have criminal jurisdiction in Indian country unless Congress specifically provides it. The dissent's view is inconsistent with the Constitution's structure, the States' inherent sovereignty, and the Court's precedents.

*Id*. at 653 (emphasis added). It is axiomatic that this Court must apply the law as interpreted by the Supreme Court, not as Plaintiff wishes it to be.

        **ii.**        **Applying the correct standard, as set forth in *Castro-Huerta* and its reliance on *Bracker*, there is no basis for federal preemption here.**

---

[6] Notably, the parties at least agree that "*Castro-Huerta* . . . does not disturb the long-settled precedents of the Supreme Court directly addressing state jurisdiction over Indians." Mot. 12-13. The key difference is that, contrary to Plaintiff, Defendant accepts and applies the long-settled precedent relied on by the *Castro-Huerta* majority.

As stated by the Supreme Court in *Castro-Huerta*, "[t]his Court has long held that Indian country is part of a State, not separate from it." 597 U.S. at 631. Thus, as a matter of state sovereignty, "States have jurisdiction to prosecute crimes committed in Indian country unless preempted." *Id*. at 637. To determine whether state jurisdiction is preempted, the Court still applies the *Bracker* test, which provides that "a State's jurisdiction in Indian country may be preempted (i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government." *Id*. at 638.

1.    **Plaintiff has failed to demonstrate that Congress has preempted state criminal jurisdiction to prosecute non-major crimes committed in Indian country.**

The first question is whether the state's exercise of jurisdiction over non-member Indians who commit non-major crimes in Indian country is preempted "by federal law under ordinary principles of federal preemption." *Castro-Huerta*, 597 U.S. at 638. There is a strong presumption against preemption of state law, so "unless that was the clear and manifest purpose of Congress," courts should not find preemption of state police powers. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *see also Arizona v. United States*, 567 U.S. 387, 400 (2012) ("In preemption analysis, courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'").

*First*, Congress has not preempted the State's jurisdiction to prosecute Indians who commit non-major crimes in Indian country. Of particular significance, the Court in *Castro-Huerta* specifically found that the General Crimes Act does not preempt state authority to prosecute crimes for conduct occurring in Indian country and "both the Federal Government and the State have concurrent jurisdiction [under the General Crimes Act] to prosecute crimes committed in Indian country." 597 U.S. at 639–40 (emphasis added). Additionally, the Court found that "Public Law

13

280 contains no language that preempts States' civil or criminal jurisdiction." *Id*. at 647–48. The Supreme Court has thusly spoken on the issue.

Notable, too, is the fact that the OCCA rejected arguments of Plaintiff (as amicus) in *O'Brien*, which sought to limit the holding of *Castro-Huerta* in the same way Plaintiff asks this Court to limit it here.

> O'Brien and amicus, the Muscogee (Creek) Nation tribe, both contend that *Castro-Huerta* does not apply here because that decision was limited to deciding whether the State had concurrent jurisdiction with the federal government to prosecute a non-Indian for a reservation crime against an Indian victim. To the contrary, the Supreme Courts discussion in *Castro-Huerta* about the ways in which a state's criminal jurisdiction over Indians may be preempted was not limited to criminal cases involving non-Indian defendants and Indian victims. The same is true of the Court's interpretation in *Castro-Huerta* of the plain language of the General Crimes Act, which cannot logically be read to preempt state jurisdiction over Indian defendants, while not preempting state jurisdiction over Indian victims.

2024 OK CR 31, ¶ 19, 2024 WL 5001684. The OCCA, therefore, found that under *Castro-Huerta*, no federal law preempted state prosecutorial authority over non-major (general) crimes committed in Indian country. *Id*. ¶ 30. Thus, the first part of the *Bracker* test is clearly not met.

Plaintiff does not suggest otherwise. It does not—and cannot—argue that the General Crimes Act, Public Law 280, or any other specific provision of federal lawpreempts state criminal jurisdiction in Indian country. Instead, Plaintiff's lone argument for preemption is that "the Constitution vests criminal authority over Indians in Indian country exclusively in the federal government [and] the Tenth Amendment reserves no residuum of that authority to the states." Doc. No. 4 at 16. Plaintiff's theory is that "State criminal jurisdiction over all Indians—members and non-members—is indeed preempted by the Constitution's delegation of exclusive authority to Congress." *Id.* at 17. As already explained, Plaintiff's preemption argument is merely a product of its fractured foundation. It claims that a state only has criminal jurisdiction in Indian country if

Congress provides a permission slip. This, of course, flies in the face of the default—and controlling—rule set out in *Castro-Huerta*.

Here, Plaintiff has not—and, at this time, cannot—provide another basis to show that federal law preempts the State's exercise of criminal jurisdiction over non-member Indians in Indian Country. Accordingly, the analysis must move to the second prong, known as the *Bracker* balancing test, which looks at whether "the exercise of state jurisdiction" over non-member Indians "would unlawfully infringe on tribal self-government." *Castro-Huerta*, 597 U.S. at 638.

> **2.    Plaintiff has failed to demonstrate how the exercise of jurisdiction by the State would infringe on tribal self-government.**

Turning to the second prong of the anlaysis under *Bracker,* preemption may also occur when the exercise of state jurisdiction unlawfully infringes on tribal self-government. However, Plaintiff makes no merits-based argument based on the *Bracker* balancing test to show how State jurisdiction would infringe on tribal self-government in this case.

As support for its Motion, Plaintiff cites five prosecutions [Doc. No. 2, Compl. ¶ 23], each of which involve non-major crimes committed by non-members within the historical boundaries of Creek Indian country. Plaintiff does not—and cannot—point to a single ongoing prosecution of one of *__its__* members for conduct that occurred within the Nation's jurisdictional boundaries. And consistent with the analysis in *Castro-Huerta*, the State's concurrent authority to prosecute non-major crimes committed by non-members of the Nation, whether within the Nation's Indian country or otherwise, does not infringe on the Nation's sovereignty or its internal self-government. An argument to the contrary should not be taken seriously, considering non-member Indians have no voice in the Nation's government, the forum, or the laws that may impact their lives. Moreover, the State's exercise of concurrent jurisdiction does "not displace, or diminish, the tribe's

prosecutorial authority to try Indians for violations of local tribal law." *O'Brien*, 2024 OK CR 31, ¶ 32. Therefore, it is unsurprising that Plaintiff has made no attempt to advance such an argument.

Instead of applying the Supreme Court's instruction, Plaintiff repeats its flawed jurisdictional argument and again invites the Court to overturn *Castro-Huerta*. Plaintiff argues that the decision applies only to conduct by non-Indians in Indian country, not to the conduct of non-member Indians.[7] [Doc. No. 4 at 13-17]. In essence, Plaintiff claims—without any actual support— that the *Castro-Huerta* default rule applies only to conduct by non-Indians because the Court did not explicitly address the defendant's membership status. Defendant concedes that *Castro-Huerta* made no distinction between member and non-member Indians. But that fact serves only to reinforce the Court's conclusion: that the General Crimes Act does not preempt state criminal jurisdiction in Indian country. The Court's articulation of the default rule concerning state jurisdiction in Indian country is not limited by membership status. As a matter of state sovereignty, state jurisdiction is the default under the Constitution, irrespective of an individual's Indian membership status.

That said, the underlying defendant's membership status *is* a consideration when applying the *Bracker* balancing test—*i.e.*, whether tribal self-government is infringed by the state's exercise of jurisdiction. The Tenth Circuit has previously recognized that separate Indian tribes are independent entities with their own jurisdiction to regulate their own citizens. *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1152 (10th Cir. 2011) ("While the Creek Nation has jurisdiction to regulate its own citizens, the Thlopthlocco is an independent tribal entity that elects its own government pursuant to its own Constitution and is not itself a citizen of the Creek

---

[7] As another state supreme court has noted, the Supreme Court "has not consistently utilized the same nomenclature" nor "clearly differentiated between nonmember Indians, non-Indians, and Indians" in many of its holdings.  *State v. R.M.H.*, 617 N.W.2d 55, 61 (Minn. 2000).

Nation."). And as the Supreme Court has held on multiple occasions, "[f]or most practical purposes," non-member Indians "stand on the same footing as non-Indians resident on the reservation." *Colville*, 447 U.S. at 161. In the seminal *Colville* decision, the Supreme Court upheld the state's authority to impose taxes on on-reservation purchases by non-member Indians. *Id.* at 138. In addressing the argument related to tribal self-government, the Court noted that the "imposition of [the] tax on these purchasers [would not] contravene the principle of tribal self-government, for the simple reason that non-members are not constituents of the governing Tribe." *Id.* at 161. Thus, when a Supreme Court decision "refers to 'non-Indians,' the logic of the opinion applies to non-members of a tribe, including other independent Indian tribes." *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1234 (10th Cir. 2014).

For purposes of criminal jurisdiction, the Supreme Court has likewise held that since non-member Indians "share relevant jurisdictional characteristics of non-Indians" (*i.e.*, non-member Indians cannot "vote, hold office, or serve on a jury" of the reservation tribe), they also "share the same jurisdictional status." *Duro v. Reina*, 495 U.S. 676, 688, 693, 696 (1990) ("*Duro*"). Following *Duro*, Congress enacted the so-called "*Duro* fix" by defining tribal "powers of self-government" to include the power "to exercise criminal jurisdiction over all Indians," including non-member Indians. *See* 25 U.S.C. § 1301. But that statutory amendment only redefined and expanded the scope of tribal jurisdiction; it did nothing to curtail or preempt the concurrent exercise of state jurisdiction. *See, e.g., State v. Shale*, 345 P.3d 776, 779 (Wash. 2015) ("Nothing in the act itself addressed whether this *post-Duro* tribal jurisdiction is exclusive of any state jurisdiction."); *LaRock v. Wisconsin Dep't of Revenue*, 621 N.W.2d 907, 914 (Wisc. 2001) (rejecting argument that the *Duro* fix overturned the inherent jurisdiction of states over non-member Indians within Indian country and holding that the "distinction between non-member Indians on the lands of

another tribe and tribal members on their own lands—as stressed in *Colville* and reasserted in *Duro*—remains valid"). Even after the *Duro* fix, the Supreme Court has continued to recognize the "limited character" of tribal sovereignty and to cite *Duro* for the principles on which it relied, including concerns regarding the application of full tribal jurisdiction to those "who do not belong to the tribe and consequently had no say in creating the laws that would be applied to them." *United States v. Cooley*, 593 U.S. 345, 352–53 (2021).

The OCCA recognized this important distinction in *O'Brien*, holding that State and municipal "prosecution of non-member Indians of the Muscogee (Creek) tribe for … offenses occurring on public streets and roads in Tulsa does not affect the tribe's authority to regulate its own citizens for violations of Creek tribal law. In fact, such a prosecution would not involve prosecuting any citizen of the Muscogee (Creek) tribe." 2024 OK CR 31, ¶ 32. Indeed, "prosecution of non-member Indians would bolster the tribe's strong interest in public safety for its citizens in this part of the Creek reservation." *Id*. Accordingly, the OCCA found that State jurisdiction was not preempted under the *Bracker* balancing test because the state's exercise of jurisdiction "would not unlawfully infringe upon tribal self-government." *Id*. ¶ 35.

In short, Defendant's exercise of State jurisdiction does not unlawfully infringe on tribal self-government. When the State prosecutes a non-member Indian who commits a non-major crime in Indian country, there is minimal, if any, impact on the Nation's right to self-govern. The rationale is straightforward: the prosecution of non-member Indians does not affect the Nation's authority to regulate its own citizens under tribal law, and non-members are not a part of any of the Nation's political bodies, forums, or processes. Applying the correct legal standard as mandated by the Supreme Court in *Castro-Huerta*, it is clear that: (1) State jurisdiction is not preempted by federal law and that (2) the State's exercise of jurisdiction over non-member Indians does not

unlawfully interfere with the Nation's self-government. Therefore, Plaintiff is unlikely to succeed on the merits, and the Court should deny its request for a preliminary injunction.

>**b.**    **The Court need not reach the second or third prongs of the preliminary injunction standard, but even if it does, Plaintiff still fails to meet its burden.**

Because Plaintiff fails to show a likelihood of success on the merits, the Court can deny Plaintiff's Motion [Doc. No. 4] without further inquiry. Indeed, "where a movant fails to establish a likelihood of success on the merits, it is unnecessary to address the remaining requirements for a preliminary injunction." *Oklahoma v. Biden*, 577 F.Supp.3d at 1251. Even if the Court chooses to explore the other prongs, Plaintiff still fails to satisfy its burden for a preliminary injunction.

>**i.**    **Plaintiff fails to show that it will suffer irreparable harm if a preliminary injunction is not issued.**

As to the second prong, a plaintiff satisfies the irreparable harm requirement by demonstrating "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 09-CV-285-TCK-TLW, 2009 WL 10695371, at *3 (N.D. Okla. Nov. 19, 2009) (*quoting RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)). "To constitute irreparable harm warranting the issuance of an injunction, the plaintiff must make a prima facie showing of an injury which is certain, great, actual and not theoretical. 'Irreparable harm is not harm that is merely serious or substantial.'" *Nova Health Sys. v. Edmondson*, 373 F. Supp. 2d 1234, 1240 (N.D. Okla. 2005), *aff'd*, 460 F.3d 1295 (10th Cir. 2006) (quoting *Heideman v. South Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003)).

Plaintiff makes no attempt to identify certain, great, actual, and non-theoretical harm. Instead, it asserts that Defendant's claimed infringement on tribal sovereignty constitutes *per se* irreparable harm, citing *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006). In that case, the Tenth Circuit held that an invasion of tribal sovereignty occasioned by a state

enforcing state law on Indian land "can" constitute irreparable injury. However, as this Court has previously held, the law requires more, even of an Indian tribe such as the Nation, namely that the tribe "offer additional details regarding precisely how [a defendant's] actions have violated [its] sovereignty." *Muscogee (Creek) Nation*, 2009 WL 10695371, at *4.

Rather than provide any details about how the ongoing prosecutions of non-member Indians by Defendant violate its sovereignty, Plaintiff simply relies on the Tenth Circuit's opinion in *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000 (10th Cir. 2015), for the proposition that prosecuting any Indians for conduct occurring within the Creek Reservation is "itself an infringement on tribal sovereignty." [Doc. No. 4 at 20-21]. However, *Ute Indian Tribe* is inapposite. That case involved the prosecution of a member of the Ute Indian Tribe for conduct that occurred on the Ute reservation land that had previously been recognized in litigation between the parties as Indian country. 790 F.3d at 1004-05. In contrast, the prosecutions referenced in this matter concern non-member Indians, the prosecution of which has now been repeatedly legitimized by State district courts and the OCCA.

The Nation argues that it has "enacted its own criminal and traffic laws" and that enforcement of these "core governmental functions" is impaired when "the County asserts authority to enforce its own criminal laws against those same Indians, subjecting them to a criminal justice system other than the Nation's own and purporting to deny the Nation's own inherent jurisdiction over those offenses." [Doc. No. 4 at 22]. The point is meritless. Defendant has been exercising concurrent jurisdiction to prosecute non-member Indians in Indian country for more than half a century. Plus, the Nation has not identified any specific, non-theoretical harm to its ability to enforce its own tribal laws. As the OCCA noted in *O'Brien*, the State's concurrent jurisdiction "would not displace, or diminish, the tribe's prosecutorial authority to try Indians for

violations of local tribal law[.]" 2024 OK CR 31, ¶ 32. In fact, the "prosecution of non-member Indians would bolster the tribe's strong interest in public safety for its citizens in this part of the Creek reservation." *Id*. Notably, other states are doing just fine:

- *State v. Shale*, 345 P.3d 776, 776 (Wash. 2015): The Washington Supreme Court upheld the state's right to prosecute an Indian enrolled with a tribe committing a crime on another tribe's reservation, finding it would not interfere with tribal sovereignty. The court cited *Colville* to support the state's exercise of jurisdiction;

- *State v. R.M.H.*, 617 N.W.2d 55, 57 (Minn. 2000): The Minnesota Supreme Court ruled that the state has jurisdiction to enforce its speeding and driver's license laws against an Indian committing these offenses on a state highway within a reservation of a tribe of which the Indian is not a member. Although Minnesota's Public Law 280 criminal jurisdiction did not apply, the court determined that state jurisdiction was not preempted under *Bracker* balancing. It noted that Indian sovereignty is weaker over non-members, including non-member Indians, citing *Colville* and *Duro*. Subsequent cases confirmed that this ruling remains valid;

- *Wacondo v. Concha*, 873 P.2d 276 (N.M. App. 1994): The New Mexico Court of Appeals upheld state court jurisdiction over a civil suit brought by a member Indian against a non-member Indian for crimes committed on the plaintiff tribe's reservation. The court referenced Felix Cohen's 1942 treatise, stating that an Indian has the same right to sue in state courts as any other citizen in cases not affecting federal or tribal relations. It rejected the argument that New Mexico's lack of participation in Public Law 280 preempted state jurisdiction and found that concurrent state jurisdiction could benefit tribal courts by fostering cooperation between state and tribal judges.

Moreover, since *Castro-Huerta*, states have been able to successfully prosecute and interpret the laws related to non-Indians and non-members in Indian country. Of course, any authority Plaintiff has to prosecute the same criminal conduct is unaffected by the State's prosecution of the crimes. Plaintiff simply has not shown how it will be irreparably harmed if a preliminary injunction is not granted.

> **ii.    Plaintiff fails to show that the balance of equities tips in its favor and a preliminary injunction is in the public interest.**

The third and fourth preliminary injunction standards—the balancing of the equities and the public interest—merge  when the government is the party opposing the preliminary injunction. *Black Emergency Response Team v. Drummond*, 737 F. Supp. 3d 1136, 1157 (W.D. Okla. 2024) (*citing Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020)). In balancing the harms of an injunction prohibiting Defendant from exercising criminal jurisdiction over non-member Indians for conduct occurring in Indian country, Plaintiff contends that this final factor weighs in its favor because "[a]ny law enforcement concerns the County may invoke will surely not be as portentous as it may assert," while on the "Nation's side of the ledger [is] irreparable harm to the Nation's sovereignty and self-government .…" Doc. No. 4 at 23.  This could not be further from the truth.

"From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 211 (2020). As the Supreme Court has recognized, "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court . …" *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). Far from trivial, the State of Oklahoma has the utmost interest in ensuring the safety of all its citizens, regardless of race or political status, by holding offenders accountable and deterring criminal activity. As a sovereign entity, the State has a duty to protect its residents, enforce its laws, and uphold justice within its territorial boundaries. The Supreme Court specifically recognized this sovereign duty in *Castro-Huerta*, finding that "the State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims." 597 U.S. at 651. "The State also has a strong interest in ensuring that criminal offenders—especially violent offenders—are appropriately punished and do not harm others in the State." *Id.*

On the other hand, the Nation's interests in self-government are not harmed by the denial of a preliminary injunction. The alleged harm to the Nation is puzzling, considering that Defendant's prosecution of crimes occurring within the historical boundaries of the Nation's Indian country is limited to non-member Indians. Furthermore, while the Nation has the authority under *Duro* to prosecute non-member Indians, the Nation's jurisdiction does not foreclose the State's. As such, the Nation has no greater (and likely less) interest than the State in prosecuting non-major crimes. The State's exercise of concurrent jurisdiction over non-member Indians does not interfere with the Nation's right to prosecute the same individual for the same offense, as both entities derive their powers from separate sovereigns. Therefore, a second prosecution would not violate the Double Jeopardy Clause. *United States v. Lara*, 541 U.S. 193, 197-98 (2004). Plaintiff has failed to show that the balance of equities and public interest weighs in favor of a preliminary injunction.[8] In fact, the balance of equities weighs against Plaintiff and in favor of the State's continued ability to exercise jurisdiction over non-member Indians in Indian country.

For these reasons, Plaintiff's request that the Court temporarily restrain and preliminarily enjoin Defendant should be denied.

---

[8] This is clearly the case even without mentioning that a conclusion asserting the State's lack of jurisdiction over non-member Indians would improperly treat tribes as fungible. Tribes have represented themselves as "distinct political communities," which is to say they are distinct from each other. *Worcester v. Georgia*, 31 U.S. 515, 557 (1832). They "are not mere fungible groups of homogenous persons among whom any Indian would feel at home[.]" *Duro*, 495 U.S. at 695.

Date: April 8, 2025                          Respectfully submitted,

                                             *s/Phillip G. Whaley*
                                             Phillip G. Whaley, OBA #13371
                                             Grant M. Lucky, OBA #17398
                                             Patrick R. Pearce, Jr., OBA #18802
                                             RYAN WHALEY
                                             400 North Walnut Avenue
                                             Oklahoma City, OK  73104
                                             (405) 239-6040
                                             (405) 239-6766 FAX
                                             pwhaley@ryanwhaley.com
                                             glucky@ryanwhaley.com
                                             rpearce@ryanwhaley.com

                                             Trevor S. Pemberton, OBA #22271
                                             PEMBERTON LAW GROUP PLLC
                                             600 North Robinson Avenue, Suite 323
                                             Oklahoma City, OK 73102
                                             P: (405) 501-5054
                                             trevor@pembertonlawgroup.com

                                             ***Attorneys for Defendant***
                                             ***Steve Kunzweiler***

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing.

                                             *s/Phillip G. Whaley*
                                             Phillip G. Whaley