**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

MUSCOGEE (CREEK) NATION,
a federally recognized Indian tribe,

    *Plaintiff*,

 v.

STEVE KUNZWEILER, in his official
capacity as District Attorney for the
Fourteenth Prosecutorial District of
Oklahoma; and
VIC REGALADO, in his official
capacity as Tulsa County Sheriff,

    *Defendants*.

Case No. 25-cv-75-GKF-JFJ

**MUSCOGEE (CREEK) NATION'S COMBINED RESPONSE**
**TO DEFENDANTS' MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.........................................................................iii

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................2

I.  The Nation Has Standing. ..................................................................2

    A.  Legal Standard ..........................................................................2

    B.  The Nation Has Alleged an Injury Specific to the Nation. ......................2

    C.  That the Defendants Have Limited Their Claims of Jurisdiction to Non-Member Indians Does Not Undermine the Nation's Standing. ...................5

    D.  The Nation's Injury Is Redressable by a Favorable Ruling from This Court. ...................................................................................6

II.  The Anti-Injunction Act and *Younger* Abstention Do Not Apply. ...................8

    A.  The Anti-Injunction Act ..............................................................8

    B.  The *Younger* Abstention Doctrine .................................................9

    C.  The District Attorney's Ongoing Prosecutions Are Not an Adequate Forum for the Nation To Litigate the Claims It Has Brought Before This Court. ..............9

    D.  A State's Claimed Interest in Prosecuting Indians in Indian Country Is Foreclosed as a Cognizable Interest Under the *Younger* Abstention Analysis...............................................................................13

    E.  *Younger* Does Not Apply Because the Harm Alleged to Federally Protected Rights Is Irreparable.................................................16

III.  *Colorado River* Abstention Does Not Apply. ....................................18

    A.  The *Colorado River* Doctrine .....................................................18

    B.  No Parallel State Proceeding Exists To Support *Colorado River* Abstention.............................................................................19

    C.  The Ongoing Prosecutions Are Not Adequate Vehicles To Resolve the Dispute Between the Defendants and the Nation. ..............................21

i

     D.     The Federal Nature of the Issues Weighs Heavily Against *Colorado River*
Abstention. ............................................................................................................22

     E.     Defendants' Forum Convenience and Piecemeal Litigation
Arguments Fail..................................................................................................22

IV.     Sheriff Regalado Is Not Entitled to Dismissal as a Matter of Law. ...................................23

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Ankenbrandt v. Richards*,
   504 U.S. 689 (1992) .......................................................................................... 9, 18

*Arostegui-Maldonado v. Garland*,
   75 F.4th 1132 (10th Cir. 2023) ............................................................................. 15

*BNSF Railway Co. v. City of Moore*,
   536 F. Supp. 3d 1225 (W.D. Okla. 2021) ............................................................. 21

*Brown ex rel. Brown v. Day*,
   555 F.3d 882 (10th Cir. 2009) ............................................................................... 9

*Cheyenne-Arapaho Tribes of Oklahoma v. Oklahoma*,
   618 F.2d 665 (10th Cir. 1980) ............................................................................... 4

*City of Tulsa v. O'Brien*,
   Case Number: S-2023-715, 2024 WL 5001684 (Okl. Crim. App. Dec. 5, 2024) ........... 6, 24, 25

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976) ..................................................................................... passim

*Cressman v. Thompson*,
   719 F.3d 1139 (10th Cir. 2013) ............................................................................. 2

*Crown Point I, LLC v. Intermountain Rural Electric Association*,
   319 F.3d 1211 (10th Cir. 2003) ........................................................................... 10

*D.L. v. Unified School District No. 497*,
   392 F.3d 1223 (10th Cir. 2004) .................................................................10, 11, 12

*Dayan-Varnum v. Dayan*,
   Case No. 23-CV-00052-SEH-MTS, 2025 WL 854905 (N.D. Okla. Mar. 19, 2025) ............... 21

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975) ........................................................................................... 12

*Dutcher v. Matheson*,
   840 F.3d 1183 (10th Cir. 2016) ........................................................................... 24

*Estate of Crowell ex rel. Boen v. Board of County Commissioners*,
   237 P.3d 134 (Okla. 2010) .................................................................................. 25

*Federal Home Loan Bank Board v. Empie*,
    778 F.2d 1447 (10th Cir. 1985) ......................................................................... 11

*Federal Trade Commission v. Elite IT Partners, Inc.*,
    91 F.4th 1042 (10th Cir. 2024) ......................................................................... 15

*Fisher v. District Court*,
    424 U.S. 382 (1976) ........................................................................................... 5

*Fox v. Maulding*,
    16 F.3d 1079 (10th Cir. 1994) ................................................................... passim

*Global Impact Ministries v. Mecklenburg County*,
    No. 3:20-CV-00232-GCM, 2021 WL 982333 (W.D.N.C. Mar. 16, 2021) .............. 12

*Great American Insurance Co. v. Gross*,
    468 F.3d 199 (4th Cir. 2006) ............................................................................. 20

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ........................................................................................... 14

*Hewitt v. Parker*,
    No. 08-CV-227-TCK-TLW, 2012 WL 380335 (N.D. Okla. Feb. 6, 2012) ............. 24

*Hicks v. Miranda*,
    422 U.S. 332 (1975) ........................................................................................... 12

*Hooper v. City of Tulsa*,
    71 F.4th 1270 (10th Cir. 2023) ......................................................................... 18

*Hudson v. Harpe*,
    No. 23-6181, 2024 WL 262695 (10th Cir. 2024) .............................................. 15

*Imperial County, California v. Munoz*,
    449 U.S. 54 (1980) ............................................................................................. 8

*Initiative and Referendum Institute v. Walker*,
    450 F.3d 1082 (10th Cir. 2006) ............................................................. 2, 4, 5, 6

*JPMorgan Chase Bank, N.A. v. Fletcher*,
    No. 06-CV-624-GKF-SAJ, 2008 WL 151894 (N.D. Okla. Jan. 14, 2008) ......... 21, 22

*Kitchen v. Herbert*,
    755 F.3d 1193 (10th Cir. 2014) ......................................................................... 7

*Larson v. Valente*,
    456 U.S. 228 (1982) ........................................................................................... 7

iv

*Lee-Brinkman v. Birdsong*,
  No. CIV-23-99-RAW-GLJ, 2023 WL 3919757 (E.D. Okla. May 5, 2023) ........................... 20

*Matsumoto v. Labrador*,
  122 F.4th 787 (9th Cir. 2024) ........................................................................................ 7

*McGirt v. Oklahoma*,
  591 U.S. 894 (2020) ......................................................................................... passim

*Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*,
  425 U.S. 463 (1976) ..................................................................................................... 3, 4

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
  460 U.S. 1 (1983) ......................................................................................... 19, 21, 22

*Oklahoma v. Castro-Huerta*,
  597 U.S. 629 (2022) ......................................................................................... 4, 14, 15, 24

*Organized Village of Kake v. Egan*,
  369 U.S. 60 (1962) ........................................................................................................ 14

*Petrella v. Brownback*,
  697 F.3d 1285 (10th Cir. 2012) ...................................................................................... 2

*Phoenix Energy Marketing Inc. v. Chase Oil Corp.*,
  Case No. 16-CV-1681-CVE-TLW, 2017 WL 2347188 (N.D. Okla. May 30, 2017) ......... 20, 22

*Pinnacle Performance & Repair, Inc. v. City of Owasso*,
  No. 19-CV-183-TCK-JFJ, 2020 WL 1905681 (N.D. Okla. Apr. 17, 2020) ......................... 12

*Prairie Band of Potawatomi Indians v. Pierce*,
  253 F.3d 1234 (10th Cir. 2001) ................................................................................ 3, 4, 16, 18

*Pueblo of Pojoaque v. Biedscheid*,
  689 F. Supp. 3d 1033 (D.N.M. 2023) ............................................................................. 8

*Quapaw Tribe of Oklahoma v. Blue Tee Corp.*,
  653 F. Supp. 2d 1166 (N.D. Okla. 2009) ........................................................................ 3

*Requena v. Roberts*,
  893 F.3d 1195 (10th Cir. 2018) ...................................................................................... 21

*Robinson v. Stovall*,
  646 F.2d 1087 (5th Cir. 1981) ........................................................................................ 12

*Roe # 2 v. Ogden*,
  253 F.3d 1225 (10th Cir. 2001) ................................................................................ 9, 18

*Santana v. City of Tulsa*,
    359 F.3d 1241 (10th Cir. 2004) .......................................................................... 21

*Schlagel v. Discount Tire Company of Colorado, Inc.*,
    No. 23-CV-02909-NYW-CYC, 2025 WL 316549 (D. Colo. Jan. 28, 2025) ...........................20

*Seifert v. Unified Government of Wyandotte County/Kansas City*,
    779 F.3d 1141 (10th Cir. 2015)...........................................................................21

*Seneca-Cayuga Tribe of Oklahoma v. Oklahoma ex rel. Thompson*,
    874 F.2d 709 (10th Cir. 1989) ................................................................... passim

*Smith v. Albany County School District No. 1 Board of Trustees*,
    121 F.4th 1374 (10th Cir. 2024)................................................................ 2, 4, 5, 6

*Sprint Communications, Inc. v. Jacobs*,
    571 U.S. 69 (2013)........................................................................................ 9

*State v. Bohanan*,
    CM-2022-108 (Tulsa Cnty. Dist. Ct. Jan. 10, 2022) ...............................................17

*Strain v. Regalado*,
    977 F.3d 984 (10th Cir. 2020) ......................................................................... 15

*Tony Alamo Christian Ministries v. Selig*,
    664 F.3d 1245 (8th Cir. 2012) ........................................................................12

*Trimble v. FedEx Office and Print Services, Inc.*,
    Case No. 22-CV-000433-GKF-JFJ, 2023 WL 5695834 (N.D. Okla. July 28, 2023) .............. 16

*Tucker v. Reeve*,
    601 F. App'x 760 (10th Cir. 2015).................................................................... 14

*United States v. City of Las Cruces*,
    289 F.3d 1170 (10th Cir. 2002) .................................................................. 19, 21

*United States v. Doe*,
    865 F.3d 1295 (10th Cir. 2017) ....................................................................... 15

*United States v. Draine*,
    26 F.4th 1178 (10th Cir. 2022) ......................................................................... 8

*United States v. Lara*,
    541 U.S. 193 (2004)................................................................................... 4, 5

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence*,
    22 F.4th 892 (10th Cir. 2022) .................................................................... 10, 19

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*,
   790 F.3d 1000 (10th Cir. 2015) ......................................................................... passim

*Walck v. Edmondson*,
   472 F.3d 1227 (10th Cir. 2007) ........................................................................... 16, 17

*Ware v. Kunzweiler*,
   No. 22-CV-0076-JFH-CDL, 2022 WL 1037484 (N.D. Okla. Apr. 6, 2022) ........................... 16

*Winn v. Cook*,
   945 F.3d 1253 (10th Cir. 2019) ............................................................................ 9, 16

*Wirtz v. Regalado*,
   Case No. 18-CV-0599-GKF-FHM, 2020 WL 1016445 (N.D. Okla. Mar. 2, 2020) ................ 25

*Wyandotte Nation v. Sebelius*,
   443 F.3d 1247 (10th Cir. 2006) .................................................................................. 4

*Younger v. Harris*,
   401 U.S. 37 (1971) ........................................................................................... passim

**Statutes**

25 U.S.C. § 1301(2) ............................................................................................... 4, 5

28 U.S.C. § 2283 (Anti-Injunction Act) ....................................................................... 8

Okla. Stat. Ann. tit. 19, § 215.4 .................................................................................. 7

**Other Authorities**

17A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4222 ................ 8

## INTRODUCTION

The Tenth Circuit has not minced words: "[U]nless Congress provides an exception to the rule … states possess no authority to prosecute Indians for offenses in Indian country." *Ute Indian Tribe of the Uintah and Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1004 (10th Cir. 2015) (quotation marks omitted). In *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the Supreme Court reaffirmed this rule and held that "Oklahoma cannot come close" to establishing that Congress has provided such an exception with respect to the Muscogee (Creek) Reservation. *Id.* at 929.

Yet the District Attorney and Sheriff ("Defendants") are exercising criminal jurisdiction over Indians for conduct arising within that very Reservation.

The issues surrounding their doing so are federal to their core; are grounded in the Constitution, federal treaties, statutes, and caselaw; and implicate the sovereignty of the United States and the Muscogee (Creek) Nation ("Nation"). Despite this, and despite the dispositive clarity of *Ute Indian Tribe* and *McGirt*, the Defendants contend that this Court has no business inquiring into any of it and must abdicate its constitutional charge in favor of state courts presiding ultra vires over individual criminal defendants, where the District Attorney will face none of those sovereigns as an adversary, in proceedings by which none of them will be bound.

The Defendants propose three bases on which to insulate their conduct from review in this Court: (1) Article III standing; (2) *Younger* abstention; and (3) *Colorado River* abstention. None has merit. Each fundamentally misconstrues the controlling precedents of the Supreme Court and the Tenth Circuit that confirm the justiciability of the Nation's action.[1]

---

[1] The standing, *Younger*, and *Colorado River* arguments raised by the District Attorney and Sheriff are substantively parallel. The Nation accordingly responds to them jointly here to avoid redundant briefing. The Sheriff also raises several distinct arguments, which the Nation addresses in the final section of this brief. Pursuant to a joint stipulation filed by the Nation and Tulsa County, Dkt. 52, the Court has dismissed the County from this action, Dkt. 53.

## ARGUMENT

## I.    The Nation Has Standing.

### A.    Legal Standard

"The standing inquiry, at the motion to dismiss stage, asks only whether the plaintiff has sufficiently alleged a cognizable injury, fairly traceable to the challenged conduct that is likely to be redressed by a favorable judicial decision." *Petrella v. Brownback*, 697 F.3d 1285, 1295 (10th Cir. 2012). Courts "must accept as true all material allegations in the complaint, and must construe the complaint in favor of the complaining party." *Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013) (citation omitted). "Standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal[.]" *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (brackets, quotation marks, and citation omitted). Thus, courts "assume … that the plaintiff will prevail on his merits argument—that is, that the defendant has violated the law." *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1378 (10th Cir. 2024) (citation omitted).

### B.    The Nation Has Alleged an Injury Specific to the Nation.

Defendants assert that the Nation has not alleged a cognizable injury because their actions do not affect the Nation "in a personal and individual way," and therefore "[o]nly the individual[] [criminal defendants] can claim specific injury." Def. Steve Kunzweiler's Mot. To Dismiss Pls.' Compl. and Br. in Supp. (Dkt. 40) at 8–9; Mot. To Dismiss and Br. in Supp. by Def. Vic Regalado (Dkt. 38) at 11, 13 (same). This argument is meritless. The Nation has alleged that the Defendants' actions are "causing irreparable injury to the Nation by interfering with its sovereignty and undermining the authority of its own criminal justice system," Compl. (Dkt. 2) ¶ 15, and "Indian tribes, like states and other governmental entities, have standing to sue to

2

protect sovereign … interests," *Quapaw Tribe of Okla. v. Blue Tee Corp.*, 653 F. Supp. 2d 1166, 1179 (N.D. Okla. 2009).[2]

The Tenth Circuit is clear that an Indian nation's sovereign interests include freedom from the unauthorized prosecution of Indians within the nation's Indian country, where, absent congressional assent, "only the federal government or an Indian tribe may prosecute Indians[.]" *Ute Indian Tribe*, 790 F.3d at 1003. Unauthorized prosecutions by state actors "'create[s] the prospect of significant interference with [tribal] self-government' that this [Circuit] has found sufficient to constitute 'irreparable injury.'" *Id.* at 1006 (first brackets in original) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250–51 (10th Cir. 2001)).[3]

Such injury is independent of the harm to individual Indian defendants and establishes standing in the tribe itself. In *Prairie Band*, the Tenth Circuit recognized that a state's claim of authority to issue motor vehicle citations to individual Indians within a tribe's Indian country was an "infringement on tribal self-government" and held that the "[p]rotection of that right is the foundation of federal Indian law; accordingly, we conclude that the tribe has standing." 253 F.3d at 1242. In *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463 (1976), where a state sought to tax individual Indians within a tribe's reservation, the Supreme Court explained that

---

[2] Counsel for the District Attorney pressed these same arguments in cases brought by the United States and the Nation to enjoin other prosecutors from exercising criminal jurisdiction over Indians, including non-member Indians, within the Creek Reservation. In granting a Motion to Intervene by other Tribal Nations, Judge Eagan rejected each of the arguments and affirmed that "the Nations have standing to intervene as plaintiffs." Op. and Order at 3–7, *United States v. Iski*, Case No. 24-CV-0493-CVE (E.D. Okla. Apr. 9, 2025) ("Iski Op."); Op. and Order at 3–7, *United States v. Ballard*, Case No. 24-CV-0626-CVE-SH (N.D. Okla. Apr. 9, 2025) ("Ballard Op.").
[3] *Prairie Band* so held even though the case did not involve pending state proceedings, *see* 253 F.3d at 1238 (challenged citations had been "dismissed" or "resolved"), such that the tribe's injury turned on the "threat" and "prospect" of future citations, *id*. at 1250 (citation omitted); *see also Quapaw Tribe*, 653 F. Supp. 2d at 1180 (*Prairie Band* held that a "tribe had standing to sue Kansas to *prevent* … infringement on tribe's right to self-government" (emphasis added)).

> the Tribe, Qua Tribe, has a discrete claim of injury … so as to confer standing upon it apart from the monetary injury asserted by the individual Indian plaintiffs. Since the substantive interest which Congress has sought to protect is tribal self-government, such a conclusion is quite consistent with other doctrines of standing.

*Id*. at 468 n.7. So too here. The Defendants' actions threaten not only the rights of individuals but the Nation's right of self-government, and the Nation has standing to protect that right.[4]

The Defendants additionally argue that state prosecution of Indians does not impair the Nation's self-government because "an individual may be prosecuted by separate sovereigns for the same conduct." Dkt. 40 at 9; Dkt. 38 at 13 (same). But the separate sovereigns doctrine assumes that both sovereigns have lawful jurisdiction, an assumption this Court cannot indulge when adjudicating a motion to dismiss for lack of standing, where a defendant's conduct is assumed illegal. *See Smith*, 121 F.4th at 1378; *Initiative and Referendum Inst.*, 450 F.3d at 1093. In any event, the argument fails. The Supreme Court considered the issue in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), and concluded that the prosecution of the defendant there

> would not deprive the tribe of any of its prosecutorial authority. *That is because* … Indian tribes [generally] lack criminal jurisdiction to prosecute crimes committed by non-Indians …. [and] a state prosecution of a non-Indian does not involve the exercise of state power over any Indian or over any tribe.

*Id.* at 650 (emphasis added). Here, the converse is true on both counts. The Nation's "powers of self-government" include "'criminal jurisdiction over *all* Indians,' including nonmembers," within its boundaries, *United States v. Lara*, 541 U.S. 193, 198 (2004) (quoting 25 U.S.C. § 1301(2)), and the Defendants claim criminal jurisdiction over those same Indians. In *Ute Indian Tribe*, the state's assertion of concurrent criminal jurisdiction over an individual with

---

[4] The District Attorney suggests that it is telling that the relevant cases "have not involved Indian tribes as parties[.]" Dkt. 40 at 9. *But see, e.g.*, *Ute Indian Tribe*, 790 F.3d 1000; *Prairie Band*, 253 F.3d 1234; *Wyandotte Nation v. Sebelius*, 443 F.3d 1247 (10th Cir. 2006); *Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665 (10th Cir.1980).

respect to whom the tribe (as here) exercised jurisdiction pursuant to its right of self-government was "itself an infringement on tribal sovereignty," 790 F.3d at 1005; *see also, e.g.*, *Fisher v. Dist. Ct.*, 424 U.S. 382, 387–88 (1976) ("State-court jurisdiction plainly would interfere with the powers of self-government" by subjecting Indians in Indian country "to a forum other than the one they have established for themselves.").

### C. That the Defendants Have Limited Their Claims of Jurisdiction to Non-Member Indians Does Not Undermine the Nation's Standing.

Defendants assert that their actions pose no threat to the Nation's rights of self-government because the "prosecutions concern non-member Indians[.]" Dkt. 40 at 10. Thus, their conduct "doesn't infringe on Plaintiff's sovereignty[.]" *Id.*; *see also* Dkt. 38 at 10 (same).

This argument is foreclosed on a motion to dismiss for lack of standing, where the correctness of the Nation's arguments regarding the illegality of state prosecution of non-member Indians and its corresponding unlawful infringement on the Nation's tribal self-government is assumed. *See Initiative and Referendum Inst.*, 450 F.3d at 1093; *Smith*, 121 F.4th at 1378.

Moreover, the argument contradicts federal law, which does not distinguish for purposes of tribal powers of self-government between member and non-member Indians. Congress has proclaimed, and the Supreme Court has confirmed, that tribes' "'powers of self-government' … include 'the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over *all* Indians,' including nonmembers." *Lara*, 541 U.S. at 198 (quoting 25 U.S.C. § 1301(2)). Non-member Indians accordingly fall within the ambit of tribal self-government for criminal jurisdictional purposes on an equal basis with member Indians. They therefore fall within the general rule that "within Indian country, generally only the federal government or an Indian tribe may prosecute *Indians* for criminal offenses," such that a state's assertion of jurisdiction contrary to that rule is "itself an infringement on tribal sovereignty[.]" *Ute Indian*

5

*Tribe*, 790 F.3d at 1003, 1005 (emphasis added). Indeed, the defendant in *McGirt* was "an enrolled member of the Seminole Nation … [whose] crimes took place on the Creek Reservation." 591 U.S. at 898. Far from concluding, as the Defendants would have it, that the Nation had no sovereign interests at stake in such a prosecution, the Court explained that "Mr. McGirt's personal interests wind up implicating the Tribe's" interests in its own (and the federal government's) jurisdiction over "Indians" within its Reservation, and thus the case

> winds up as a contest between State and Tribe…. [and] the stakes are not insignificant. If Mr. McGirt and the Tribe are right [that the Creek Reservation is Indian country], the State has no right to prosecute *Indians* for crimes committed [there]. Responsibility to try these matters would fall instead to the federal government and Tribe.

*Id*. at 899 (emphasis added).

The Nation's rights of self-government, then, are equally implicated whether a state prosecutes a member or a non-member Indian for conduct within the Creek Reservation. *McGirt*, after all, applies the same rule (presumptively forbidding state criminal jurisdiction over Indians in Indian country) to a non-member Indian that *Ute Indian Tribe* applies to a member Indian.[5]

**D.     The Nation's Injury Is Redressable by a Favorable Ruling from This Court.**

The Defendants contend that the Nation also lacks standing because its injury is not redressable by this Court. Even were this Court to issue an injunction, they claim, "the Ongoing Prosecutions could continue[.]" *Id.* at 10. For this, the Defendants suggest that the Governor or

---

[5] While again, the merits are not at issue in a standing challenge, *see Initiative and Referendum Inst.*, 450 F.3d at 1093; *Smith*, 121 F.4th at 1378, the Nation notes that its brief in support of its motion for a preliminary injunction sets forth in detail how state criminal jurisdiction over non-member Indians in Indian country violates federal law no less than over member Indians, and how the Oklahoma Court of Criminal Appeals' contrary reasoning in *City of Tulsa v. O'Brien*, Case Number: S-2023-715, 2024 WL 5001684 (Okl. Crim. App. Dec. 5, 2024), is pervaded by fundamental errors, including those for which that Court has already been forcefully admonished and thrice reversed by the United States Supreme Court. *See* Mot. of Muscogee (Creek) Nation for TRO and Prelim. Inj. and Opening Br. in Supp. (Dkt. 4) at 7–20.

the Attorney General has the authority to engage in prosecutions, and therefore, "[g]iven the Governor's and OAG's authority, an injunction would not hinder the State's ability to continue the prosecutions at issue." *Id*. at 11; *see also* Dkt. 38 at 14 (asserting same). The argument fundamentally misunderstands the legal concept of redressability.

The District Attorney exercises state criminal authority within the Fourteenth Prosecutorial District. *See* Okla. Stat. Ann. tit. 19, § 215.4. The asserted injury here includes the District Attorney acting under color of that authority to unlawfully prosecute Indians within the Creek Reservation, both presently and going forward, in violation of the Nation's rights of sovereignty and self-government. "Plaintiffs suing public officials can satisfy the causation and redressability requirements of standing by demonstrating" that the defendant "possess[es] authority to enforce the complained-of" law. *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014) (quotation marks and citation omitted). That is indisputably the case here.

That the Governor and Attorney General may also possess prosecutorial authority within the Fourteenth District does nothing to undermine that conclusion. The Defendants cite no authority for the proposition that harm caused by government conduct is non-redressable merely because another government entity might inflict similar harm. *See* Dkt. 40 at 10–11; Dkt. 38 at 14–15. And the law is decidedly to the contrary. *See, e.g.*, *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (rejecting argument that "to establish redressability, appellees must show … that there is no other means by which the State can [proceed with the challenged conduct]. We decline to impose that burden upon litigants."); *Matsumoto v. Labrador*, 122 F.4th 787, 801–02 (9th Cir. 2024) (where state law "specifically grants enforcement powers to multiple government authorities, an injunction against the exercise of those powers by any one of those authorities

7

suffices to establish redressability. That proposition is supported by decades of Supreme Court precedent…. [A] plaintiff need not sue every defendant that may cause her harm.").[6]

*    *    *

In sum, the Nation has established its standing, and the Defendants have given this Court no credible basis to conclude otherwise.

## II.    The Anti-Injunction Act and *Younger* Abstention Do Not Apply.

### A.    The Anti-Injunction Act

The District Attorney invokes the Anti-Injunction Act, 28 U.S.C. § 2283, but simply quotes its text and various judicial decisions concerning the Act's underlying policy goals, without offering any substantive arguments regarding its applicability to this case. *See* Dkt. 40 at 12 (citation omitted). The argument is therefore waived. *See United States v. Draine*, 26 F.4th 1178, 1187 n.5 (10th Cir. 2022) (stating that claimant "merely quotes" the text of a provision in an opening brief but does not develop an argument under it, "so it is waived").

In any event, the Nation is not a party or privy to any state proceeding, and the Act does not apply to "strangers to the state court proceedings" who will not be "bound" by them, *Imperial Cnty. v. Munoz*, 449 U.S. 54, 59 (1980) (citation omitted); *see also* 17A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4222 n.27 (3d ed. Apr. 2025 Update) (same). *Pueblo of Pojoaque v. Biedscheid*, 689 F. Supp. 3d 1033 (D.N.M. 2023), *see* Dkt. 40 at 12, is not to the contrary because the tribe was a party to the state action. *See* 689 F.

---

[6] In granting the motion of other tribal nations to intervene in separate but similar actions, Judge Eagan rejected this same argument, holding that "[t]he Nations' injuries are fairly traceable to defendant's challenged conduct" and "a favorable judicial decision enjoining defendant … would redress the Nations' injury at least to some extent, which is all the law requires." Iski Op. 6 (quotation marks omitted); Ballard Op. 6 (quotation marks omitted).

Supp. 3d at 1049. Nor do the District Attorney's other cases involve non-parties to the State proceedings.

### B.    The *Younger* Abstention Doctrine

Under *Younger v. Harris*, 401 U.S. 37 (1971), a federal court must abstain from exercising jurisdiction in "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). *Younger* abstention "is the exception, not the rule." *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (citation omitted). "It should be rarely … invoked, because the federal courts have a virtually unflagging obligation … to exercise the jurisdiction given them." *Roe # 2 v. Ogden*, 253 F.3d 1225, 1232 (10th Cir. 2001) (ellipses in original) (quotation marks omitted).

As relevant here, *Younger* turns on three mandatory requirements: (1) an "ongoing" state criminal proceeding that the federal plaintiff seeks to enjoin; that (2) is an "adequate forum" for the federal plaintiff to adjudicate the issues raised in its complaint; and (3) involves "important state interests," *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (citation omitted). "Each of these conditions must be satisfied before *Younger* abstention is warranted." *Seneca-Cayuga Tribe of Okla. v. Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989); *see also Brown ex rel. Brown v. Day*, 555 F.3d 882, 894 n.10 (10th Cir. 2009) (where one factor not met, "we need not consider" the others). As demonstrated below, the Defendants fail to satisfy the second and third mandatory criteria, thereby twice dooming their argument.

### C.    The District Attorney's Ongoing Prosecutions Are Not an Adequate Forum for the Nation To Litigate the Claims It Has Brought Before This Court.

Under the second *Younger* requirement—whether the ongoing state proceedings provide an adequate forum for the Nation to litigate its federal claims—the Defendants devote their entire argument to explaining the competence of state courts to adjudicate federal questions. *See* Dkt.

9

40 at 14–16 (noting "state courts' ability to address federal issues," the "obligation of the state courts to uphold federal law," and that "Oklahoma state courts are capable" of addressing the federal issues raised in the Nation's complaint and therefore "provide adequate forums" under the second *Younger* requirement (citation omitted)). *See* Dkt. 38 at 19 (same).

The Defendants' focus is misplaced. No one questions that "state courts, as courts of general jurisdiction," can adjudicate federal issues, *Ute Indian Tribe of the Uintah and Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 899 (10th Cir. 2022). But if the mere competence of state courts to do so satisfied the "adequate forum" requirement for *Younger* abstention, the requirement would be met in every case, rendering it a pointless inquiry. Instead, the test is whether a state court provides an adequate forum for *the federal plaintiff* to pursue its claims. *See, e.g.*, *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1229 (10th Cir. 2004) ("*Younger* abstention is inappropriate when *a federal plaintiff* cannot pursue its federal contentions in the ongoing state proceeding." (emphasis added)); *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) ("[W]e find that *plaintiff* does not have an adequate opportunity to raise its federal claims in state court'" (emphasis added)).

Defendants make no claim that the Nation could litigate its federal claims in the ongoing state court prosecutions. Nor can they. The Nation is not a party to those prosecutions, nor is it in privity with any party. It is instead a genuine stranger to those proceedings and *Younger* does not bar federal court jurisdiction "over the claim of a genuine stranger to an ongoing state proceeding," *D.L.*, 392 F.3d at 1230.

This principle dooms the Defendants' *Younger* argument. Nor can they salvage it by asserting "how intertwined Plaintiff's interests are" with those of the defendants in the ongoing prosecutions, Dkt. 40 at 20. They contend that "each criminal defendant has challenged the

10

State's jurisdiction" by invoking *McGirt* and that, therefore, the Nation's claims "are no different from" those of the criminal defendants. *Id.*; Dkt. 38 at 22 (same). But, as addressed in the standing discussion above, *supra* p. 2–5, the Nation's claims are indeed distinct, and the argument is accordingly foreclosed by controlling Tenth Circuit precedent. In *D.L.*, the Court made clear that *Younger* does not bar a federal action by a non-party to the state proceedings simply because the federal action may involve legal questions "identical to those raised in state court[.]" 392 F.3d at 1230. "So long as the stranger has its own distinct claim to pursue, it may even be aligned with the state-court litigant" against the same state policy. *Id*.

For these propositions, the Court cited *Federal Home Loan Bank Board v. Empie*, 778 F.2d 1447 (10th Cir. 1985). There, under highly analogous facts, a federal agency sought declaratory and injunctive relief that Oklahoma had no authority to regulate private entities regulated by the agency under federal law. *Id*. at 1448. Oklahoma invoked *Younger* because the private entities were defendants in ongoing state proceedings and were challenging the same state assertion of regulatory authority as the federal agency plaintiff. *Id*. at 1449. The Court rejected the argument because the federal agency's interests

> are much broader than those of Victor Federal or the other private parties. It is concerned with the stability and smooth operation of a nationwide network of savings institutions; Victor Federal, for example, is concerned only with the success of its campaign to advertise longer hours and drive-in teller windows.

*Id*. at 1452.

This reasoning in *D.L.* and *Federal Home Loan* applies directly here. The Nation unquestionably has a "distinct claim to pursue," *D.L.*, 392 F.3d at 1230, one arising under the array of federal laws and policies that prohibit interference with "the Nation's sovereignty" and "federally protected rights of self-government," Dkt. 2 ¶ 7. These sovereign concerns are "much broader than those of … private parties," *Fed. Home Loan*, 778 F.2d at 1452, including any

11

private criminal defendant asserting individual rights. *See, e.g.*, Dkt. 2 ¶ 15 ("The County's [prosecutions are] causing irreparable injury to the Nation by interfering with its sovereignty and undermining the authority of its own criminal justice system, including the authority of its Attorney General, Lighthorse police, and courts to prosecute under the Nation's own laws criminal offenses committed by Indians within its Reservation."). Defendants thus fail the second requirement for *Younger* abstention, and accordingly—regardless of the underlying merits of the Nation's claims—no warrant exists for the Court to abstain under *Younger* because the State courts cannot provide an adequate forum for the Nation to adjudicate those merits.[7]

---

[7] *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), *see* Dkt. 40 at 19; Dkt. 38 at 21, addresses the inapposite circumstance in which the interests of *federal plaintiffs* are so intertwined that if *Younger* bars the claim of one because it is a state defendant, it may bar the others. *See* 422 U.S. at 928 (considering whether "all three plaintiffs should … be thrown into the same hopper for *Younger* purposes"). Here there is no federal plaintiff that is also a state defendant. Should Defendants invoke *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th Cir. 2012), or *Global Impact Ministries v. Mecklenburg County*, No. 3:20-CV-00232-GCM, 2021 WL 982333 (W.D.N.C. Mar. 16, 2021), they are likewise inapposite as they also address relations between federal co-plaintiffs where at least one was a state defendant. And *Hicks v. Miranda*, 422 U.S. 332 (1975), *see* Dkt. 40 at 19; Dkt. 38 at 21, involved the equally inapposite circumstance of the federal plaintiffs having been made defendants in the state proceedings "the day following" service of their complaint, 422 U.S. at 349. *Hicks* simply holds that *Younger* applies "where state criminal proceedings are begun *against the federal plaintiffs* after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court[.]" *Id.* (emphasis added). Because the federal plaintiffs had not shown they "could not seek the return of their property in the state proceedings…, *Younger* … could not be avoided on the ground that no criminal prosecution was pending against appellees *on the date the federal complaint was filed*." *Id.* (emphasis added); *see also Pinnacle Performance & Repair, Inc. v. City of Owasso*, No. 19-CV-183-TCK-JFJ, 2020 WL 1905681, at *5 (N.D. Okla. Apr. 17, 2020) (abstaining under *Younger* and stating that "[i]n *Hicks*, as in this case, no state proceedings were pending against the defendants at the time they filed suit in federal court, but state court proceedings were subsequently filed *against the federal court plaintiffs*" (emphasis added)). *D.L.* indeed cites with approval the Fifth Circuit's interpretation of "intertwine[ment]" under *Hicks*. *See* 392 F.3d at 1230–31 (citing *Robinson v. Stovall*, 646 F.2d 1087, 1092 (5th Cir. 1981) ("[T]he *Hicks* holding

**D.**  **A State's Claimed Interest in Prosecuting Indians in Indian Country Is Foreclosed as a Cognizable Interest Under the *Younger* Abstention Analysis.**

The Defendants contend that the third requirement for *Younger* abstention is met because "Oklahoma's important interest in enforcing its criminal laws through proceedings in its state courts remains axiomatic." Dkt. 40 at 16 (citation omitted); Dkt. 38 at 19–20 (asserting general state interests in criminal law enforcement). Utah made similar arguments in *Ute Indian Tribe*— *see* State of Utah's Answer Brief at 21, *Ute Indian Tribe* (No. 14-4034), 2014 WL 4180069, at *13 ("[A] state's important interest in enforcing its criminal laws through proceedings in its state courts remains axiomatic." (quotation marks omitted))—and the Court rejected it because

> where, as here, states seek to enforce state law against Indians in Indian country "[t]he presumption and the reality … are that federal law, federal policy, and federal authority are paramount" and the state's interests are insufficient "to warrant *Younger* abstention."

*Ute Indian Tribe*, 790 F.3d at 1008–09 (quoting *Seneca-Cayuga*, 874 F.2d at 713–14). Nothing about this reasoning excludes the prosecution of non-member Indians. Again, *McGirt* underscores the federal nature of the issue in a non-member Indian case, explaining that given that the Creek Reservation remains Indian country, "the State has no right to prosecute Indians for crimes committed [there].… Responsibility to try these matters would fall instead to the federal government and Tribe." 591 U.S. at 899. And the passage in *Seneca-Cayuga* quoted by *Ute Indian Tribe* likewise makes no exception for non-member Indians: "[F]ederal law, federal

---

rested on the fact that the owners (the federal plaintiffs) could vindicate their rights by seeking the return of their seized property in the pending state prosecutions of their employees. When this crucial element availability of intervention in the state proceedings is absent, the courts have not hesitated to reject an 'intertwining' theory[.]") (citation omitted)). Here, the Nation is not a defendant in any state proceeding. It has no means to vindicate its federal rights in those proceedings, and Defendants' caselaw accordingly cannot salvage their argument.

13

policy, and federal authority are paramount in *the conduct of Indian affairs in Indian Country*." 874 F.2d at 713 (emphasis added); *see also Haaland v. Brackeen*, 599 U.S. 255, 275 (2023) (citing as an example of Congress's plenary and exclusive power over Indian affairs a "law allowing tribes to prosecute nonmember Indians who committed crimes on tribal land").[8]

The question, then, is not whether Oklahoma has important interests in enforcing criminal laws as a general matter. Indeed, the Tenth Circuit recognized that "Oklahoma has an important interest in prosecuting criminal cases without interference from federal courts" just a month before *Ute Indian Tribe* in a decision (joined by then-Judge Gorsuch, who authored *Ute Indian Tribe*) that did not involve Indian country issues. *Tucker v. Reeve*, 601 F. App'x 760 (10th Cir. 2015). Rather, the question here, as in *Ute Indian Tribe*, turns on the state's interest in enforcing its criminal laws "*against Indians* in Indian country"—which states "have no legal entitlement to do in the first place." *Ute Indian Tribe*, 790 F.3d at 1007, 1008 (emphasis added).

The District Attorney contends that the decision's *Younger* analysis has been rendered "inapplicable, if not obsolete" by *Castro-Huerta*, Dkt. 40 at 19, even though that case involved only a non-Indian defendant.[9] In making this argument, the District Attorney presses this Court to act beyond its authority and hold that a Supreme Court decision that does not reach an issue nevertheless upends Tenth Circuit precedent on that issue. Even a Circuit panel cannot do that.

---

[8] The District Attorney notes that *Seneca-Cayuga* states that the reasoning does not apply when a state suit involves "non-reservation Indians, as here." Dkt. 40 at 19 (quotation marks omitted). But in referring to "non-reservation Indians," *Seneca-Cayuga* is not referencing non-member Indians. It is referring to the situation in *Organized Village of Kake v. Egan*, 369 U.S. 60 (1962)—*see* 874 F.2d at 713 (citing *Egan*)—which involved state regulation of Indian conduct taking place "not on any reservation" and "outside of Indian country," 369 U.S. at 75.

[9] The District Attorney elsewhere agrees that *Castro-Huerta* "does not disturb the long-settled precedents of the Supreme Court directly addressing state jurisdiction over Indians," Def. Steve Kunzweiler's Resp. to the Muscogee (Creek) Nation's Mot. for TRO and Prelim. Inj. and Opening Br. in Supp. (Dkt. 41) at 12 n.6 (citation omitted). In the District Attorney's telling, then, *Castro-Huerta* both upheld and overturned long-settled jurisdictional principles.

14

For a panel to depart from prior Circuit precedent based on a subsequent Supreme Court decision, the decision "must clearly overrule our precedent[.]" *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1142 (10th Cir. 2023) *(*quotation marks omitted). Accordingly, Tenth Circuit precedents "remain good law unless the Supreme Court has *indisputably and pellucidly abrogated* them." *Fed. Trade Comm'n v. Elite IT Partners, Inc.*, 91 F.4th 1042, 1051 (10th Cir. 2024) (emphasis added) (quotation marks omitted); *see also, e.g.*, *Strain v. Regalado*, 977 F.3d 984, 993 (10th Cir. 2020) (stating that Supreme Court decision did not "pronounce its application" to a specific issue, "so we cannot overrule our precedent on this issue.").

This principle applies with greatest force where a Supreme Court decision reflects "the … Court's careful efforts to cabin the narrow … question before it," thus "clarifying what the case before it was *not* about[.]" *United States v. Doe*, 865 F.3d 1295, 1299 (10th Cir. 2017). That is precisely the case with *Castro-Huerta.* Not only does the decision not "indisputably and pellucidly abrogate[]" *Ute Indian Tribe* or any other precedents addressing state criminal jurisdiction over Indians, it expressly and repeatedly disavows any intent to even reach the issue. *See, e.g.*, 597 U.S. at 648 (referring to state criminal jurisdiction over non-Indians in Indian country as "the narrow jurisdictional issue in this case"); *id*. at 639 n.2 (describing state jurisdiction "over crimes committed by Indians in Indian country" as "a question not before us"); *id.* at 650 n.6 ("We express *no view* on state jurisdiction over a criminal case of that kind." (emphasis added)); *id.* at 655 n.9 ("To reiterate, we do not take a position on that question."); *Hudson v. Harpe*, No. 23-6181, 2024 WL 262695, at *1 (10th Cir. 2024) (stating, on denial of Indian criminal defendant's application for certificate of appealability, that "[b]ecause Mr. Hudson is a member of the Muscogee (Creek) Nation—and therefore, an Indian—*Castro-Huerta* does not apply to this case" and that "[n]o reasonable jurist would conclude" otherwise).

15

*Ute Indian Tribe* and *Seneca-Cayuga* accordingly remain good law in the Tenth Circuit and are binding on this Court. *See Trimble v. FedEx Off. and Print Servs., Inc.*, Case No. 22-CV-000433-GKF-JFJ, 2023 WL 5695834, at *3 (N.D. Okla. July 28, 2023) (Frizzell, J.) ("This court is bound to follow Tenth Circuit authority.").

E.    *Younger* **Does Not Apply Because the Harm Alleged to Federally Protected Rights Is Irreparable.**

The Tenth Circuit is clear that "*Younger* … is inapplicable" if the federal plaintiff can show that an "irreparable injury" will result from the state proceeding, *Walck v. Edmondson*, 472 F.3d 1227, 1233 (10th Cir. 2007) (citation omitted), and that the injury "cannot be eliminated by … [the federal plaintiff's] defense against a single criminal prosecution," *id.* (quoting *Younger*, 401 U.S. at 46).

That standard is met here. First, absent congressional assent, state prosecution of an Indian in Indian country "'create[s] the prospect of significant interference with [tribal] self-government' that this court has found sufficient to constitute 'irreparable injury.'" *Ute Indian Tribe*, 790 F.3d at 1006 (brackets in original) (quoting *Prairie Band*, 253 F.3d at 1250–51). That is the very injury the Nation has alleged. To be sure, the Nation has not yet proved that to the Court's satisfaction on the merits— *see* Op. and Order (Dkt. 54) at 4 ("[T]he Nation has not yet explained how state-court jurisdiction over non-member Indians plainly interferes with its powers of tribal self-government.")—but the Nation need not have done so yet under the *Younger* analysis. *See Winn*, 945 F.3d at 1259 (*Younger* irreparable harm exception focuses on the nature of "the alleged violation"); *Ware v. Kunzweiler*, No. 22-CV-0076-JFH-CDL, 2022 WL 1037484, at *3 (N.D. Okla. Apr. 6, 2022) ("allege[d] irreparable injury"). *Younger* abstention would foreclose the Court from ever reaching the merits of the Nation's allegations of irreparable

16

harm, risking (if the Nation is correct) application of the doctrine where the Tenth Circuit has held that "*Younger* … is inapplicable," *Walck*, 472 F.3d at 1233 (citation omitted).

Second, the Nation cannot eliminate that threat through its defense of a state criminal prosecution, as it will not be a defendant in any of them. Thus, even were the Court to find all three *Younger* requirements met, *Younger* abstention is foreclosed. *See Walck*, 472 F.3d at 1233 (where threat of irreparable injury that cannot be eliminated by federal plaintiff's defense to single criminal prosecution is established, courts "need not decide … whether the three conditions for mandatory abstention exist[.]").

The Defendants further assert that "the Ongoing Prosecutions had been pending since as early as two years prior to the filing of this lawsuit; thus, no imminency." Dkt. 40 at 18 (citing *State v. Bohanan*, CM-2022-108 (Tulsa Cnty. Dist. Ct. Jan. 10, 2022)); Dkt. 38 at 20 (same). The argument again fails. Defendant Bohanan had two separate state charges pending when, on December 6, 2024, he moved to dismiss those charges under *McGirt*, *see* https://bit.ly/4cJ0OTQ; https://bit.ly/4lL2bpf, prior to which the Nation had no notice or other means of identifying this prosecution as implicating an Indian defendant. On December 26, 2024, the District Court dismissed the charges in one case, finding that "[t]he District Court is … without jurisdiction against Defendant." *See* https://bit.ly/42ZBFkA. In the second case, the District Attorney responded to the defendant's motion to dismiss for lack of jurisdiction on January 27, 2025, and the District Court denied the motion on January 31, 2025. *See* https://bit.ly/4lL2bpf. Two weeks later, the Nation filed suit.

The Defendants' "no imminency" argument likewise fails as a matter of law, and indeed they cite no law to support it. S*ee* Dkt. 40 at 18; Dkt. 38 at 20*.* The prosecutions of Indians for conduct arising within the Creek Reservation are *pending now.* The question of imminence is

therefore irrelevant. As for future prosecutions, the "threat" and "prospect," *Prairie Band*, 253 F.3d at 1250 (citation omitted), of infringement of the Nation's sovereignty likewise exists *now*—as it did in *Prairie Band* despite the absence of any pending state proceeding—because the Defendants have claimed jurisdiction over Indians within the Creek Reservation, have manifested their willingness to exercise it, and have to date foregone every opportunity to disavow their intent to exercise it going forward. *See Hooper v. City of Tulsa*, 71 F.4th 1270, 1277 (10th Cir. 2023) (reasonable fear of future unlawful prosecution constituted "imminent injury"). Again, *Younger* abstention does not turn on the Plaintiff having prevailed on the merits of these issues because, by definition, it forecloses a court from ever reaching those merits.

*    *    *

In sum, Defendants' arguments for *Younger* abstention—which "is the exception, not the rule," *Ankenbrandt*, 504 U.S. at 705, and "should be rarely … invoked," *Roe # 2*, 253 F.3d at 1232 (ellipsis in original) (quotation marks omitted)—founder for numerous reasons that, separately or together, confirm this Court's constitutional obligation to retain jurisdiction here.

## III.    *Colorado River* Abstention Does Not Apply.

Defendants incorrectly contend that the Court should abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Dkt. 40 at 20–22; Dkt. 38 at 24 (adopting District Attorney's *Colorado River* arguments).

### A.    The *Colorado River* Doctrine

The *Colorado River* doctrine applies to "situations involving the contemporaneous exercise of concurrent jurisdictions … by state and federal courts" and, upon a showing of "exceptional circumstances" by the party invoking the doctrine, "permits a federal court to

18

dismiss or stay a federal action in deference to pending parallel state court proceedings[.]" *Fox v. Maulding*, 16 F.3d 1079, 1080, 1081 (10th Cir. 1994) (ellipsis in original) (citations omitted).

Under *Colorado River*, this Court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction …; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice … to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983) (quotation marks omitted). Moreover, "the presence of federal-law issues *must always be a major consideration weighing against surrender*," *id.* at 26 (emphasis added), and a court's *Colorado River* analysis in general must be

> *heavily weighted in favor of the exercise of jurisdiction*. Indeed, since "[o]nly the clearest of justifications will warrant dismissal," *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247, *any doubt should be resolved in favor of exercising federal jurisdiction*.

*Fox*, 16 F.3d at 1082 (emphases added) (quotation marks and citations omitted). Finally, a court "cannot … abstain under *Colorado River* … if the state court has no jurisdiction to decide the claims" before it. *Lawrence*, 22 F.4th at 908 n.17 (emphasis added) (brackets and quotation marks omitted).[10]

**B.    No Parallel State Proceeding Exists To Support *Colorado River* Abstention.**

For abstention under *Colorado River* to be even a possibility, the Defendants must first identify a parallel state court proceeding with which the Nation's suit overlaps. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) (a parallel proceeding "is a threshold

---

[10] Because this Court "cannot" abstain if the state courts lack jurisdiction, *Lawrence*, 22 F.4th at 908 n.17, and since their jurisdiction is the very question at issue in the Nation's action, to abstain under *Colorado River* would require this Court to *assume* state jurisdiction in the face of controlling precedent to the contrary—*see Ute Indian Tribe*, 790 F.3d at 1004; *McGirt*, 591 U.S. at 928–29—and thereby risk a grave violation of its jurisdictional obligations under federal law.

condition for engaging in the *Colorado River* analysis"); *Fox*, 16 F.3d at 1081 (court must find parallel proceeding "[b]efore examining" *Colorado River*'s factors). The Defendants cannot establish this threshold requirement. "Suits are parallel if [1] substantially the same parties litigate [2] substantially the same issues in different forums." *Fox*, 16 F.3d at 1081 (citation omitted). The *entirety* of the Defendants' argument that this case involves "substantially the same parties" as appear in the ongoing state prosecutions is this single, unsupported sentence: "Or at the least, Kunzweiler is a party in each, and the criminal defendants in the Ongoing Prosecutions are explicitly referenced and leveraged by Plaintiff in this litigation." Dkt. 40 at 21.

But the Nation is a stranger to those proceedings. The Defendants make no effort to explain the vague concept that a federal plaintiff that "reference[s] and leverage[s]" a state criminal defendant in its complaint thereby becomes the equivalent of a party to the state prosecution. *See Colo. River*, 424 U.S. at 819 ("[o]nly the clearest of justifications will warrant" abstention).[11]

---

[11] *See Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, No. 16-CV-0681-CVE-TLW, 2017 WL 2347188, at *9 (N.D. Okla. May 30, 2017) ("substantially same parties" requirement not met where one federal party "is not a party" in the state suit); *Schlagel v. Discount Tire Co. of Colo., Inc.*, No. 23-CV-02909-NYW-CYC, 2025 WL 316549, at *4 (D. Colo. Jan. 28, 2025) (same where federal plaintiff "is not a party" in state suit); *Nautilus Ins. Co. v. Otero Cnty. Hosp. Ass'n*, No. 2:11-CV-00178 BRB/LAM, 2011 WL 12574962, at *5 (D.N.M. Nov. 4, 2011) (same); *Lee-Brinkman v. Birdsong*, No. CIV-23-99-RAW-GLJ, 2023 WL 3919757, at *3 (E.D. Okla. May 5, 2023) ("substantially same parties" requirement met because state case included "all the parties in this Federal case" with additional state defendants), *report and recommendation adopted*, No. CIV-23-099-RAW-GLJ, 2023 WL 5615451 (E.D. Okla. Aug. 30, 2023); *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 208 (4th Cir. 2006) (stating that in *Colorado River*, "at least the federal plaintiff was a party to the state action," and that because federal plaintiff "is not a party" in the state proceedings, "to abstain … would deprive [federal plaintiff] of the opportunity to litigate its claims").

The argument is also waived. *See Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*, 779 F.3d 1141, 1156 (10th Cir. 2015) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (brackets in original) (citation omitted)); *Dayan-Varnum v. Dayan*, Case No. 23-CV-00052-SEH-MTS, 2025 WL 854905, at *2 (N.D. Okla. Mar. 19, 2025) (same).

The Defendants "seek[] abstention and thus ha[ve] the burden of establishing that *Colorado River* is applicable[.]" *BNSF Ry. Co. v. City of Moore*, 536 F. Supp. 3d 1225, 1235 (W.D. Okla. 2021). Their failure to establish the "threshold" and dispositive parallel proceedings requirement therefore dooms their argument without consideration of any other factors. *Fox*, 16 F.3d at 1081; *City of Las Cruces*, 289 F.3d at 1182.

### C.    The Ongoing Prosecutions Are Not Adequate Vehicles To Resolve the Dispute Between the Defendants and the Nation.

The Tenth Circuit has made clear that application of "the *Colorado River* doctrine would be '*a serious abuse of discretion*' unless 'the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue *between the parties*[.]'" *Fox*, 16 F.3d at 1081 (emphases added) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28); *JPMorgan Chase Bank v. Fletcher*, No. 06-CV-624-GKF-SAJ, 2008 WL 151894, at *3 (N.D. Okla. Jan. 14, 2008) (Frizzell, J.) (same). The Defendants nowhere acknowledge this dispositive requirement.

The Nation is neither a party nor in privity with a party to the state court proceedings, so no judgment in those cases can bind the Nation. *See*, *e.g.*, *Requena v. Roberts*, 893 F.3d 1195, 1209 n.7 (10th Cir. 2018) (issue preclusion requires that "the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication"); *Santana v. City of Tulsa*, 359 F.3d 1241, 1246 n.3 (10th Cir. 2004) (same for res judicata). Thus, even if the Defendants prevail in those proceedings, that would not resolve this case. The Nation would

21

retain a viable federal claim against the Defendants. *See Phoenix Energy*, 2017 WL 2347188, at

*9 (declining to dismiss under *Colorado River* because defendant was "not a party to the [State]

suit" and thus "resolution of the state case might not dispose of" the controversy between the

parties). Under these circumstances, the Defendants' suggestion that this Court abstain from

deciding a federal claim that cannot be resolved elsewhere is nothing less than an invitation to

commit "a serious abuse of discretion," *Fox*, 16 F.3d at 1081 (citation omitted); *JPMorgan*

*Chase Bank*, 2008 WL 151894, at *3 (citation omitted) (same).

> **D.    The Federal Nature of the Issues Weighs Heavily Against *Colorado River***
> **Abstention.**

The Defendants also tellingly fail to acknowledge, much less address, yet another central

consideration in the *Colorado River* analysis—the source of law. As the Supreme Court has

explained, "the presence of federal-law issues must always be a *major consideration weighing*

*against surrender*" of jurisdiction. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26 (emphasis

added). As noted, whether states possess jurisdiction over Indians in Indian country, and

questions of tribal sovereignty and self-government, are quintessential questions "of federal law

in an area in which federal interests predominate," *Seneca-Cayuga Tribe*, 874 F.2d at 714; *id*. at

713 ("[F]ederal law, federal policy, and federal authority are paramount in the conduct of Indian

affairs in Indian Country."); *Ute Indian Tribe*, 790 F.3d at 1007 (same). The source-of-law

consideration accordingly weighs heavily against abstention.

> **E.    Defendants' Forum Convenience and Piecemeal Litigation Arguments Fail.**

Defendants argue that "appeals from this litigation will be addressed by the Tenth Circuit,

in Colorado, whereas appeals from the State court proceedings will be … addressed by the

OCCA, in Oklahoma. The travel and expense associated with the former is an unnecessary

burden." Dkt. 40 at 21. Since the Tenth Circuit uses electronic filing, this argument invokes the

burdens of single trip to Denver for oral argument. By now a pattern may be apparent to this Court. Each of the Defendants' standing and abstention arguments rests on the refusal to acknowledge, let alone to properly account for, the Nation's right of self-government and its role in this case. With respect to the Defendants, the value of the Nation being able to speak with its own voice in defending its federally protected right to self-government—one so forcefully recognized by the Supreme Court and the Tenth Circuit—outweighs the price of a plane ticket.

The Defendants further argue that this federal action is inconvenient because it "requires substantial briefing and expenditure of additional taxpayer dollars[.]" Dkt. 40 at 21–22. But the inconvenience of having to litigate a matter *at all* is no basis for abstention. *Colo. River*, 424 U.S. at 817 (generally "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court"); *Fox*, 16 F.3d at 1082 (same). Solicitude for the public fisc would be better served by not briefing standing and abstention arguments so clearly foreclosed by federal law.

Finally, the Defendants state that avoiding "piecemeal litigation … is the paramount *Colorado River* consideration." Dkt. 40 at 22. But the Defendants' preferred solution of litigating the issues presented here through multiple criminal prosecutions epitomizes piecemeal litigation. And the feature all the state court proceedings share is the absence of the Nation, which will not be bound by the outcomes. To abstain here would be to surrender jurisdiction in deference to a slate of state cases that embody not only a piecemeal approach to resolving the core jurisdictional issue facing this Court, but an unquestionably ineffectual one.

## IV.    Sheriff Regalado Is Not Entitled to Dismissal as a Matter of Law.

Sheriff Regalado argues that he "is entitled to dismissal as a matter of law" because "the law as stated by the Oklahoma Court of Criminal Appeals and the United States Supreme Court

precludes recovery by" the Nation. Dkt. 38 at 6; *see also id.* at 7–10 (discussing *Castro-Huerta* and *O'Brien*). The Nation has comprehensively addressed the merits of its entitlement to injunctive relief in its Motion for a Temporary Restraining Order and Preliminary Injunction and its Reply to that Motion, including discussing in detail how neither *Castro-Huerta* nor *O'Brien* undermines the Nation's entitlement to relief. *See* Dkt. 4 at 7–20; Nation's Combined Reply Br. in Supp. of Its Mot. for TRO and Prelim. Inj. (Dkt. 51) at 2–11. The Sheriff's briefing does not address any of the Nation's arguments on those issues. To avoid burdening the Court with duplicative submissions, the Nation incorporates that briefing by reference here.

Nor can the Sheriff disclaim responsibility for his actions by asserting that he is simply "following Oklahoma law, as articulated by … *O'Brien*," Dkt. 38 at 23. The Nation's claim is that by exercising criminal jurisdiction over Indians within the Creek Reservation after *McGirt*, the Defendants are violating *federal* law. Accordingly, the Sheriff can take no refuge in decisions of the Oklahoma Court of Criminal Appeals. *See Hewitt v. Parker*, No. 08-CV-227-TCK-TLW, 2012 WL 380335, at *4 (N.D. Okla. Feb. 6, 2012) ("this Court owes no deference to the OCCA's adjudication of" questions of federal law); *Dutcher*, 840 F.3d at 1195 ("[I]t is beyond cavil that we are not bound by a state court interpretation of federal law." (citation omitted)).

And as to federal law, the Sheriff contends that the Nation's Complaint fails to allege any conduct that "purports to be a violation of federal law" attributable to him. Dkt. 38 at 22. That is simply not so. *See* Dkt. 2 ¶¶ 28–36; *see also* Dkt. 51 at 14–16 (responding to same arguments). The Sheriff further contends that he bears no actionable responsibility for his conduct with respect to Indians because "[w]hether, where, or what criminal charge, if any, is subsequently filed is up to the complete discretion of state or tribal prosecutors [sic], not Sheriff Regalado." Dkt. 38 at 23; *see also id.* ("Sheriff Regalado and the Tulsa County Sheriff's Office … do not

24

determine whether a person is being held by the state or a tribe."). However, the Nation filed suit to stop *any* unlawful assertion of criminal jurisdiction by the Defendants, not just the filing of charges. *See, e.g.*, Dkt. 2 ¶¶ 28–36. The Sheriff is a peace officer with powers of criminal investigation, enforcement, and arrest authority under Oklahoma law, which the Nation set forth in detail in its Reply, Dkt. 51 at 14–15, and which it incorporates here by reference.

Moreover, "Sheriff Regalado is the final policymaker for the jail [and] he is responsible for creating and enforcing the [jail's] policies and procedures[.]" *Wirtz v. Regalado*, Case No. 18-CV-0599-GKF-FHM, 2020 WL 1016445, at *13 (N.D. Okla. Mar. 2, 2020); *Est. of Crowell ex rel. Boen v. Bd. of Cnty. Comm'rs*, 237 P.3d 134, 142 (Okla. 2010) (same). As discussed in the Nation's Motion, under color of that authority, the Sheriff has implemented a policy of booking, detaining, and incarcerating non-member Indians for conduct arising within the Creek Reservation. He has informed those under his authority—and informed the Nation as well—that, in light of *O'Brien*, non-member Indians "will not be booked or charged into tribal courts but rather STATE court and booked into [the Tulsa County Jail] as any other citizen" and that, within the Creek Reservation, "[t]he *only tribal arrests* that will take place will be Creek Citizens …. All others will be booked into [the Tulsa County Jail] and charged in Tulsa Co. District Court." Decl. of Att'y Gen. Geraldine Wisner (Dkt. 5) ¶ 5, Ex. 2. (emphasis added). The Nation seeks to enjoin such assertions of jurisdiction.[12]

## CONCLUSION

The Nation respectfully requests that the Defendants' Motions to Dismiss be denied.

---

[12] To be clear, the Nation does not seek to prevent the Sheriff from exercising law enforcement authority with respect to Indian suspects within the Reservation. *See* Dkt. 4 at 23. However, he must do so under the parties' Cross-Deputization Agreement, which does not authorize the Sheriff to book Indian defendants into the county jail for violations of state law. *See* Dkt. 5 ¶ 2, Ex. 1, § 8(D).

Dated: April 28, 2025

Geraldine Wisner, OBA No. 20128
Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com

O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

Respectfully submitted,

*/s/ Riyaz A. Kanji*
Riyaz A. Kanji
David A. Giampetroni
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

Philip H. Tinker
Stephanie R. Rush, OBA No. 34017
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Avenue, Suite 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com
vrush@kanjikatzen.com

*Counsel for Muscogee (Creek) Nation*

26

**CERTIFICATE OF SERVICE**

I certify that on April 28, 2025, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji