IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUSCOGEE (CREEK) NATION, a federally recognized Indian tribe, <br><br> *Plaintiff*, <br><br> v. <br><br> STEVE KUNZWEILER, in his official capacity as District Attorney for the Fourteenth Prosecutorial District of Oklahoma; and VIC REGALADO, in his official capacity as Tulsa County Sheriff, <br><br> *Defendants*. | Case No. 25-cv-00075-GKF-JFJ |

**DEFENDANT STEVE KUNZWEILER'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND BRIEF IN SUPPORT**

This federal lawsuit filed by the Muscogee (Creek) Nation ("Plaintiff" or "Nation")—which seeks to jeopardize public safety in Tulsa and beyond and directly interfere with ongoing state prosecutions—is clearly barred by the *Younger* and *Colorado River* abstention doctrines. Defendant Steve Kunzweiler ("Defendant" or "Kunzweiler") concedes that the Nation is not a party to the ongoing state criminal proceedings. But that is only the beginning of the analysis. "The rule in *Younger v. Harris* is designed 'to permit state courts to try state cases free from interference by federal courts[.]' . . . Plainly, the same comity considerations apply where the interference is sought by some . . . not parties to the state case." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).

Before going further, Defendant will address a red herring underlying Plaintiff's Response Brief (Doc. 57). Plaintiff attempts to obscure the clear legal issue—whether the State, not the Nation, has authority to prosecute nonmember Indians for non-major crimes committed in Indian country within State boundaries—by focusing on an irrelevant argument: the claim that the Nation would not be bound by state court decisions. *See, e.g.,* Doc. 57 at 21 (strangely invoking legal

1

concepts of issue preclusion and res judicata and insisting that "no judgment in [the state criminal proceedings] can bind the Nation."). The contention misses the mark. This case does not concern the Nation's prosecutorial authority, which has not been—and cannot be—affected by any state court ruling. The legal issue centers solely on State authority, and Kunzweiler, whose actions Plaintiff seeks to enjoin, is unquestionably bound by those decisions. Plaintiff is simply attempting to use improper means to overturn unfavorable state court rulings by improperly re-litigating them in a federal forum it hopes is more sympathetic. *City of Tulsa v. O'Brien*, Order Denying Petition for Rehearing, No. S-2023-715 (Okla. Ct. Crim. App. Feb. 5, 2025) ("All questions duly submitted, including the issues raised in [O'Brien's] motion to dismiss the appeal, his response brief, and *the Muscogee (Creek) Nation's amicus brief*, were reviewed by the Court prior to rendering the decision in this case" that the State's jurisdiction over all its territory includes the authority to prosecute nonmember Indians who commit non-major crimes in Indian country.") (emphasis added).

To that end, Plaintiff asks this Court to:

- Effectively rewrite well-established abstention doctrines that clearly apply to this matter;

- Accept inherently contradictory positions: that the State's prosecutions of nonmember Indians harm the Nation (to establish standing), while simultaneously claiming the suit is somehow unrelated to those very prosecutions (to avoid abstention);

- Authorize burdensome and irrelevant discovery, including depositions and evidentiary hearings involving State and Tribal officials, despite the purely legal nature of the question presented—thereby inviting similar actions across six related federal lawsuits (stemming from four cases involving six complaints by original and intervening parties). Plaintiff, in essence, asks this Court to pull top law enforcement officials in Tulsa from active criminal prosecutions to testify in this civil case, undermining the integrity of the criminal justice system, the very concern addressed by *Younger* abstention, and putting public safety at risk;

- Disregard that the Oklahoma Court of Criminal Appeals directly addressed the issue in *O'Brien* and *Stitt*—and overlook the fact that an appeal to the U.S. Supreme Court is

imminent in at least *Stitt*, with a petition due within 90 days of April 7, 2025, following the denial of rehearing by the OCCA.

The Nation's response brief serves only to distract from this central truth: the injunction it seeks would disrupt numerous active State criminal proceedings. And there can be no doubt that, had State courts ruled as it wished, the Nation would be defending those courts and their authority, not collaterally attacking them here. In the end, Plaintiff's arguments here mirror those raised by criminal defendants—and even Plaintiff—in State court proceedings, tying it too closely to those prosecutions to escape abstention simply because it is not a named party in them. Indeed, Plaintiff's claims are wholly dependent on the prosecutions.

This Court should abstain and reject Plaintiff's oppressive effort to force discovery and evidentiary hearings that are unrelated to the controlling legal issue and designed solely to interfere with State prosecutions through duplicative federal litigation.

## I.     *Younger* **mandates dismissal.**

That abstention is generally the exception that proves the rule is insignificant because abstention *is mandatory* (*i.e.*, non-discretionary) when, as here: "(1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (cleaned up); *see also Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) ("When *Younger*'s three requirements are met, abstention is mandatory.").

Plaintiff does not dispute the first element of mandatory abstention. Doc. 57 at 9 (recognizing and acknowledging Defendant's "ongoing state proceedings"). Plaintiff baldly asserts that the second element is not met simply because the Plaintiff is not a party to those

3

proceedings, nor is it in privity. But the standard is whether the state forum provides an adequate opportunity to raise the federal claims—not whether the plaintiff is a named party or even in direct privity. Finally, the Nation contends, with immaterial nuance, that prosecutions for violations of Oklahoma law do not implicate important state interests. Respectfully, that's untenable. If enforcing state criminal law and ensuring public safety within state borders isn't an important state interest, nothing is. Neither law nor logic support the Nation's position.

Importantly, a federal court need not "decide whether the parties present an Article III case or controversy before abstaining under *Younger v. Harris*." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). *Younger* abstention is "jurisdictional." *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 100 n.3 (1998).

### A. The state courts provide an adequate forum to hear the claims raised in the Complaint.

In urging this Court to retain jurisdiction and block state criminal prosecutions, Plaintiff argues it is not—and cannot become—a party to such proceedings. Doc. 57 at 9-12. But—as the very basis of this lawsuit makes clear—nor is it a "genuine stranger" as the Nation would have this Court believe. *Younger* abstention does not require it to be a party, only that the state forum provides an adequate opportunity to raise the federal claims. That is certainly the case here.

Federal courts routinely apply *Younger* abstention to non-parties when their interests are closely tied to those of individuals involved in ongoing state proceedings. As the Supreme Court stated in *Doran v. Salem Inn, Inc.*, *Younger* considerations may extend to "legally distinct parties" where their interests are "so closely related" that interference with one would disrupt the others. 422 U.S. 922, 928 (1975). Likewise, in *Hicks v. Miranda*, the Court confirmed that abstention is proper where interests are "intertwined" and where the federal action seeks to disrupt a state prosecution. 422 U.S. at 348–49. These comity principles apply even when the federal plaintiff is

4

not a party to the state proceeding but asserts rights derived from those who are. *See D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1231 (10th Cir. 2004); *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 83–84 (2d Cir. 2003); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 635–36 (6th Cir. 2005).

The analysis and decision in *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th Cir. 2012), are enlightening. There, the Arkansas Department of Human Services took custody of numerous children living on the property of a religious organization ("TACM") following findings of abuse. Although TACM itself was not a party to the state dependency and parental rights proceedings, it filed a federal lawsuit alleging violations of its and its members' constitutional rights. TACM argued that it had no way to participate in state court and no access to federal court if *Younger* applied—claiming it was in a "no man's land." *Id.* at 1251. The appellate court rejected that argument, emphasizing that *Younger* abstention applied because TACM's injuries were "sufficiently related to, or inextricably intertwined with," those of its members, who were parties to the state cases. *Id.* at 1253 (holding that relief based on the injuries of individual members were "plainly barred by Younger"). As to TACM's claims of independent injury, the court found those injuries were "generally aligned with those of its members" and, therefore, "in one degree or another, derivative of the injuries of its members." *Id.* Accordingly, the court held that *Younger* barred the federal action, even though TACM could not become a party to the state court proceedings and had asserted facial constitutional claims.

Similar to the present case, in *Glob. Impact Ministries v. Mecklenburg Cnty.*, 2021 WL 982333 (W.D.N.C. Mar. 16, 2021), several organizations filed an action against a city and county in North Carolina seeking, among other things, an injunction against the enforcement of a local ordinance banning certain protest gatherings as unconstitutional after several of its members had

been cited and arrested pursuant to it. According to the court, these "ongoing state criminal proceedings relating to the arrests or citations of" members of the organization plainly implicated *Younger*. *Id*. at *3. The organizations "share a close relationship and alignment with the" individual members and the state court proceedings. *Id*. at *4. And those "proceedings implicate important state interests and provide an adequate opportunity for the parties in the state proceeding to raise constitutional challenges." *Id*. at *3

Plaintiff's position mirrors that of the organizations in *TACM* and *Glob. Impact Ministries*, which were closely aligned with state parties. Plaintiff shares a close relationship and alignment with the criminal defendants. The Nation claims its own injury—purportedly to its "sovereignty and . . . the authority of its own criminal justice system." Doc. 57 at 2-3. But this injury is entirely speculative and unsupported; the Nation cites no instance of the State interfering with its ability to prosecute nonmember Indian within its Indian country. Even if such an injury existed, it would arise solely from and be *completely contingent on the ongoing prosecutions* of individual Indian defendants, making the Nation and the criminal defendants inextricably tied. In short, Plaintiff's claims depend entirely on the rights and circumstances of others. Without those prosecutions, it would have no case. This claim, in other words, relies entirely on the asserted rights and circumstances of those defendants.

As in *TACM*, Plaintiff is not a party to the state proceedings, but its claims are so intertwined with those of the defendants that any federal relief would directly interfere with the ongoing state cases. The key question is whether Plaintiff's claims are "closely intertwined" with those in state court. *D.L.*, 392 F.3d at 1231. Here, they are inextricably intertwined.

Finally, the Nation's own conduct undercuts its position. In extensive amicus briefing before the OCCA, *City of Tulsa v. O'Brien*, Brief of Amicus Curiae Muscogee (Creek) Nation, No.

6

S-2023-715 (Ct. Crim. App. Aug. 13, 2024),[1] the Nation raised all the arguments presented here without ever suggesting that the state courts were an improper venue or incapable of deciding the issues. Those courts ruled, and the Nation now turns to federal court in hopes of a different result. Litigation initiated for the express purpose of undermining—much less interfering with—ongoing state proceedings is the exact type of interference *Younger* forbids. *See Younger*, 401 U.S. at 44.

In sum, the state prosecutions the Nation urges this Court to disrupt could not more clearly provide an adequate forum to address the claims raised in the Complaint. As in *TACM*, "but for" the ongoing prosecution of individual Indians and their purported jurisdictional defenses, the Nation's allegations—and thus, its claims—do not exist.

### B. The state court prosecutions implicate important state interests.

With immaterial nuance, the Nation contends that no important state interests are implicated. After conceding the state has a general interest in enforcing its laws, the Nation posits that the "question . . . turns on the state's interest in enforcing its criminal laws 'against Indians in Indian country." Doc. 57 at 14 (cleaned up).

The actual question under *Younger* is simply whether "the proceedings implicate important state interests." *Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Here then we must ask whether state prosecutions of nonmember Indians accused of violating Oklahoma's criminal laws within its borders—and in some cases, against its citizens—implicate important state interests. Plaintiff skips to a merits argument (something it shuns elsewhere in its brief) to conclude that the state cannot have an interest because it has "no legal entitlement . . . in the first place." Doc. 57 at 14 (citation omitted). Clear law and basic logic belie the Nation's analysis.

---

[1] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=Appellate&number=S-2023-715.

There is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *Id.* Indeed, in our federal system, "[t]he States possess primary authority for defining and enforcing the criminal law." *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993). Each state has a "sovereign interest in being in control of, and able to apply, its laws throughout its territory." *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 476 (2d Cir. 2013). Simply put, States have "a strong sovereign interest" in "protecting *all* crime victims," and punishing *all* criminal offenders within their borders. *Castro-Huerta*, 597 U.S. at 651 (emphasis added). This Court has already said as much, finding the State has an "interest[] in enforcing laws with respect to non-member Indians." Doc. 54 at 4. Of course, it would be a logical impossibility to have an interest in protecting crime victims while lacking the power to prosecute offenders. Yet, Plaintiff asks this Court to strip a district attorney of that very authority.

Moreover, considering the Supreme Court's reaffirmation of the validity of State prosecutions in *Castro-Huerta*, *Ute*—an inapposite Tenth Circuit decision—cannot be deployed as a justification for categorical exclusivity. *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1006 (10th Cir. 2015); *see also Arizona v. U.S.*, 567 U.S. 387, 400 (2012) ("[C]ourts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'"). This is especially so in cases like this one which, unlike *Ute*, do not involve member Indians on a reservation. *Ute Indian Tribe*, 790 F.3d at 1006. Rest assured, Defendant does not ask this Court to overturn *Ute*. This Court has already noted the clear distinction between *Ute*—where "a Utah county prosecuted a Ute tribal member for alleged traffic offenses on tribal lands"—and the nonmember context. *See* Doc. 54 at 3-4.

8

A simple hypothetical applying Plaintiff's logic illuminates its absurdity. Suppose a member of the Navajo Nation (*i.e.*, a non-Oklahoma tribe) assaults an Oklahoma public official (*e.g.*, the Governor or Attorney General) in Tulsa, Oklahoma. In Plaintiff's world, such an incident would not implicate important state interests, and Oklahoma would be unable to prosecute the Navajo Nation member or protect its own officials. Surely not.

### C. No exception to *Younger* applies.

Plaintiff argues that even if the *Younger* elements are met, prosecutions of nonmember Indians would cause it irreparable injury sufficient to override abstention. Doc. 57 at 16-18. First, "irreparable injury is insufficient unless it is 'both great and immediate.'" *Younger*, 401 U.S. at 46. Plaintiff does not claim that its purported injury is great or immediate. Second, the Nation relies heavily on *Ute* and *Prairie Band* for this tenuous position. *Id*. But this Court already rejected that argument, finding, "in contrast to *Prairie Band, Ute,* and *Fisher*, the Nation has not yet identified certain, great, actual, and non-theoretical harm." Doc. 54 at 4.

The irreparable injury exception is meant to protect the rights of criminal defendants when their individual rights cannot be safeguarded during ongoing prosecutions. It does not apply to federal plaintiffs whose *Younger*-barred claims are intertwined with or derivative, directly or indirectly, of the state defendant. The Nation's attempt to stretch the exception beyond its limits fails.

### II. The Court should abstain under *Colorado River*.

The heart of *Colorado River* abstention embodies a policy of "wise judicial administration," promoting the "conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). And, as emphasized in *Arizona v. San Carlos Apache Tribe of Arizona*, even where permissible, federal

adjudication is "neither practical nor wise" if it risks "duplicative litigation," generates "tension and controversy between the federal and state forums," or fosters "confusion" over underlying rights. 463 U.S. at 568.

To avoid abstention under *Colorado River*, Plaintiff must contort the law and its application. Despite its explicit dependence on ongoing State criminal prosecutions, Plaintiff contends there are no parallel state proceedings. It again highlights that it isn't a party to the state proceedings—something Defendant concedes. Rather than applying the law, Plaintiff says—without more—that it is a "stranger" to the state proceedings. Doc. 57 at 20. In hopes that the Court too will avoid application of the law, Plaintiff then oddly contends that Defendant "waived" the argument that there are parallel proceedings. *Id*. at 21. It didn't. Each element of *Colorado River* is met, and the Court should abstain for this reason as well.

First, "[s]uits are parallel if *substantially* the same parties litigate *substantially* the same issues in different forums." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (emphasis added). The word "substantially" immediately preceding "the same parties" has meaning. "[E]xact identity of parties and issues is not required." *Pueblo of Pojoaque v. Biedscheid*, 689 F. Supp. 3d 1033 (D.N.M. 2023), *appeal dismissed*, *Pueblo of Pojoaque v. Biedscheid*, 23-2149, 2024 WL 4256791 (10th Cir. May 13, 2024) (examining *Fox v. Maulding*). To be sure, "substantially the same parties" is nowhere limited to just sameness or privity. As argued above, Plaintiff's claims are inextricably intertwined with and derivative of the criminal defendants and their defenses. *See supra* Part I.A. And the state criminal proceedings are an adequate vehicle, just as they were in *McGirt* and *Castro-Huerta*.

Second, although the issues must only be *substantially* the same, the issues in the State prosecutions and this lawsuit are *precisely* the same—whether the State's jurisdiction over all of

its territory includes jurisdiction to prosecute nonmember Indians who commit non-major crimes in Indian country.

Third, Plaintiff's analysis regarding the existence of federal law is incomplete, at best. Doc. 57 at 22. For instance, the opening quote in Section III.D. of the Nation's Response strips material language from the sentence quoted, namely: that "the presence of state-law issues may weigh in favor of [the federal court's] surrender[]" under *Colorado River*. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983). It is indisputable that the State's ability to enforce its criminal code against nonmember Indians who commit crimes in Oklahoma implicates state-law *issues*, just as it invokes state-law *interests* at play in the *Younger* analysis. *See supra* Part I.B.

Here, the core issue—whether the State's jurisdiction over all its territory includes jurisdiction to prosecute nonmember Indians who commit non-major crimes in Indian country—is already being addressed in state courts and has been decided at both trial and appellate levels. And the Supreme Court is sure to have an opportunity to address the OCCA's analysis and decision, very soon. Plaintiff simply disagrees with the results. But dissatisfaction with the state court outcomes does not justify federal intervention. Judicial economy and respect for parallel proceedings strongly favors abstention.

### III. Plaintiff lacks standing.

#### A. Plaintiff has not shown an injury.

Plaintiff's argument that it has shown an injury is replete with citation to inapposite—or at the least, distinguishable—authority. *See, e.g. Ute Indian Tribe of the Uintah & Ouray Rsrv. V. Lawrence*, 22 F.4th 892 (10th Cir. 2022); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234; and *Fisher v. Dist. Ct.*, 424 U.S. 382 (1976). This Court dealt with each of these cases, finding:

> Here, in contrast to *Prairie Band, Ute,* and *Fisher*, the Nation *has not yet identified* certain, great, actual, and *non-theoretical harm*. It does not contend that defendants have denied the Nation of its jurisdiction to enforce its own criminal and traffic laws against nonmember Indians. The defendants are not attempting to prosecute members of the Nation. And the Nation has not yet explained how state-court jurisdiction over nonmember Indians plainly interferes with its powers of tribal self-government.

Doc. 54 at 4. (emphasis added).

The Nation has done no more here—there is no injury. And where there is no injury, there can be no redress. In sum, Plaintiff lacks standing.

### B. A favorable ruling would not provide redress.

Even if Plaintiff could show an injury—and it cannot—redressability is lacking. The Nation is hopeful it might persuade the Court that an injury really does not have to be redressed. However, the authority doesn't say that. For instance, in *Larson v. Valente*, the Supreme Court emphasized that a discrete injury would "indeed be *completely* redressed by a favorable decision[,]" thus establishing redressability (emphasis added). 456 U.S. 228, 243 (1982). *See also Bronson v. Swensen*, 500 F.3d 1099, 1112 (10th Cir. 2007) (where redressability was not established because, in part, "a declaratory judgment [would not] avoid the future possibility (albeit remote) of a criminal prosecution."). The Plaintiff's purported injury would not be completely redressed, or really redressed at all, if relief were granted. State court judges (which are likely necessary parties) could continue issuing decisions. And other State officials such as the Governor (perhaps another necessary party) could continue to prosecute cases.

The Court should abstain from interfering with ongoing criminal prosecutions or otherwise dismiss this case for lack of standing.

## CONCLUSION

For all these reasons, Defendant's Motion to Dismiss should be granted.

Date: May 12, 2025

Respectfully submitted,

*s/Phillip G. Whaley*
Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
Patrick R. Pearce, Jr., OBA #18802
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK  73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com
rpearce@ryanwhaley.com

Trevor S. Pemberton, OBA #22271
PEMBERTON LAW GROUP PLLC
600 North Robinson Avenue, Suite 323
Oklahoma City, OK 73102
P: (405) 501-5054
trevor@pembertonlawgroup.com

***Attorneys for Defendant Steve Kunzweiler***

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing.

*s/Phillip G. Whaley*
Phillip G. Whaley