IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUSCOGEE (CREEK) NATION, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 25-cv-00075-GKF-JFJ |
| TULSA COUNTY, OKLAHOMA, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**DEFENDANT REGALADO's
REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Vic Regalado, in his official capacity as Sheriff of Tulsa County ("Sheriff Regalado"), hereby provides his Reply in support of Sheriff Regalado's Motion to Dismiss and Brief in Support [Doc. 38], and requests the Court to enter an order granting the motion and dismissing Sheriff Regalado from this action for Plaintiff's failure to state a claim upon which relief can be granted against this defendant. FED. R. CIV. P. 12(b)(6).

**I.   PLAINTIFF CANNOT PREVAIL AGAINST SHERIFF REGALADO.**

**A.  The United States Supreme Court's Jurisdictional Test.**

The key issue before the Court on Sherrif Regalado's motion to dismiss and in Plaintiff's request for extraordinary relief is purely a question of law. Indeed, the number of judges or courthouses Plaintiff has or aspires to one day establish, or how many general crimes it continues to choose not to prosecute, does not change the analysis and result. Applying the United States Supreme Court's established jurisdictional test in Indian country[1] leads to one answer; the State of Oklahoma and the Muscogee (Creek) Nation ("Nation") have concurrent jurisdiction to prosecute general crimes against non-Members in the Nation.

---

[1] *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 142 S. Ct. 2486, 213 L. Ed. 2d 847 (2022).

In its response [Doc. 57], the Nation notes that it addressed this issue in its Motion for Temporary Restraining Order and Preliminary Injunction briefing, but that Sheriff Regalado did not address its analysis in response. This argument is a non-starter; that analysis was not necessary to defeat Plaintiff's failure to establish that it was entitled to immediate extraordinary relief. *See* Opinion and Order [Doc. 54], denying Plaintiff's Motion for Temporary Restraining Order. Although Plaintiff's reliance upon the losing arguments and dissenting opinions in *Castro-Huerta* and *O'Brien*[2] is understandable, it is an established non-winnable legal position. Plaintiff has not—and cannot—state a claim against Sheriff Regalado under which it can recover.

### B. The Complaint Allegations Against Sheriff Regalado.

Plaintiff claims Sheriff Regalado is exercising criminal jurisdiction over non-Members by "booking, detaining, and incarcerating" them in the county jail. Response [Doc. 57, p. 33]. In the Complaint, Plaintiff lumps Defendant Kunzweiler, Sheriff Regalado, and since dismissed "Tulsa County, Oklahoma," into a mixed stew descriptor, "County," [Doc. 2, p. 3, ¶ 5], and dedicates its allegations almost entirely to the theory that the "County" is prosecuting Indians. *See e.g. id* at ¶¶ 7, 21- 27. However, the only party capable of prosecuting non-Member Indians is Defendant Kunzweiler. The sole allegation specific to Sheriff Regalado is Plaintiff's claim that Sheriff Regalado adopted a policy of "booking and classifying inmates [*sic*]"[3] and "asserting criminal jurisdiction over non-member Indians in light of *O'Brien*." *Id.* at ¶ 28.[4] Whether Sheriff Regalado administratively classifies an arrestee on intake to the county jail—a facility which is also utilized

---

[2]*City of Tulsa v. O'Brien*, 2024 OK CR 31.
[3]Persons held pending charges are arrestees. Charged persons held pending trial are pretrial detainees. Those held post-conviction are inmates or incarcerated persons. None of the state criminal defendants identified in the Complaint are being held at the county jail in any capacity.
[4]The Complaint does not accuse Sheriff Regalado (or the Tulsa County Sheriff's Office) of arresting non-Member Indians. Rather, the allegation relates to intaking procedures at the county jail.

by the Nation and Lighthorse under a contract with Sheriff Regalado—has no impact on jurisdiction. Criminal jurisdiction is initially exercised by the arresting agency, most of which have cross-deputization agreements with the Nation. It is next a decision by the Nation—acting by and through its prosecutor—and by the state—acting by and through the District Attorney—on whether to file criminal charges in their respective court systems or direct the release of the arrestee. If charges are filed, Nation or state court judges determine whether a person is released from the county jail, or whether their detainment will continue. Sheriff Regalado is simply classifying whether the arrestees are being held pending charges by the Nation or state.

### C. The Law.

The United States Constitution provides the State of Oklahoma with the right to exercise jurisdiction in Indian country:

> Indian country is part of the State, not separate from the State. To be sure, under this Court's precedents, federal law may preempt that state jurisdiction in certain circumstances. But otherwise, as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country.

*Castro-Huerta*, 597 U.S. at 636 (citing U.S. Const. Amdt 10). The "'sovereignty that the Indian tribes retain is of a unique and *limited* character.'" *United States v. Cooley*, 593 U.S. 345, 349-50, 141 S. Ct. 1638, 210 L. Ed. 2d 1 (2021) (quoting *United States v. Wheeler*, 435 U.S. 313, 323, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978)) (emphasis added). Indian tribes possess "inherent sovereign authority over *their* members and territories." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991) (internal citation omitted) (emphasis added). *See also Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 689, 142 S. Ct. 1929, 213 L. Ed. 2d 221 (2022) (quoting *Citizen Band Potawatomi*). One of the limitations is that

there is no traditional preemption of state jurisdiction over a non-Member Indian committing a non-major crime in Indian country. *Castro-Huerta*, 597 U.S. at 639 n.2, 641-42.[5]

The jurisdictional test to reach this conclusion was articulated by the United States Supreme Court in *Castro-Huerta*: "a State's jurisdiction in Indian country may be preempted (i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government." *Id*. at 638. With respect to preemption, the General Crimes Act provides: "Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country." 18 U.S.C. § 1152. The *Castro-Huerta* Court concluded that the General Crimes Act extends "federal law to Indian country, leaving untouched the background principle of state jurisdiction over crimes committed with the State, including Indian country." 597 U.S. at 639. Importantly, unlike the Major Crimes Act, which was the focus of *McGirt*, the General Crimes Act does not say that "federal jurisdiction is exclusive to Indian country, or that state jurisdiction is preempted in Indian country." *Castro-Huerta*, 597 U.S. at 639. While Mr. Castro-Huerta provided multiple counter-arguments to this conclusion, the U.S. Supreme Court found that "[n[one is persuasive." *Id*. at 640.

The *Castro-Huerta* Court next considered whether Public Law 280 was a source of preemption, but found "[t]hat argument is similarly unpersuasive." *Id*. at 647. Indeed, "'[n]othing

---

[5]As the Supreme Court held in *Castro-Huerta*, unlike the Major Crimes Act analyzed in *McGirt v. Oklahoma*, 591 U.S. 894, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020), "the General Crimes Act does not treat Indian country as the equivalent of a federal enclave for jurisdictional purposes. Nor does the Act make federal jurisdiction exclusive or preempt state law in Indian country." *Castro Huerta*, 597 U.S. at 642. Thus, "[u]nder the General Crimes Act . . . both the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed in Indian country." *Id*. at 639.

in the language or legislative history of Pub. L. 280 indicates that it was meant to divest States of pre-existing and otherwise lawfully assumed jurisdiction.'" *Id.* at 647-648 (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.*, 467 U. S. 138, 150, 104 S. Ct. 2267, 81 L. Ed. 2d 113 (1984)). Public Law 280 contains no language to preempt state civil or criminal jurisdiction. *Id.* at 648.

Without preemption by federal law under ordinary principles of federal preemption, a court must apply *Bracker*[6] balancing to determine if state jurisdiction would unlawfully infringe on tribal self-government. *Castro-Huerta*, 597 U.S. at 639 n.2, 649. *Bracker* requires a balancing of the federal, state and tribal interests. *Bracker*, 448 U.S. at 145. Here, the exercise of state jurisdiction does not infringe on tribal self-government. In particular, a state prosecution of a general crime committed by a non-Member would not deprive the tribe of any of its prosecutorial authority. Exercising concurrent jurisdiction over non-Member Indians bolsters the Nation's strong interest in public safety for its citizens. This is analogous to the rationale in *Castro-Huerta* for why concurrent state jurisdiction did not harm the federal interest in Indian country. *Id.* at 650-51. The Nation's dual jurisdiction to prosecute non-Members for violations of its laws is not impacted by the state's prosecution of the same non-Members for violations of the state's general crimes. There is simply no adverse impact on the Nation's right to self-governance of *its* own affairs and *its* members; the Nation does not govern a Cherokee, Osage, or any other non-Member Indian. Any tribal self-government "justification for preemption of state jurisdiction" would be "problematic." American Indian Law Deskbook §4.8, at 260; see also *Three Affiliated Tribes*, 467 U. S., at 148.[7]

---

[6]*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-43, 100 S. Ct. 2578, 65 L. Ed. 2d 665 (1980).

[7]"[W]hen analyzing U.S. Supreme Court precedent regarding the distinction between member and non-member Indians, it becomes clear that prosecution of non-member Indians does not implicate

Next, "recognition of concurrent state jurisdiction could facilitate effective law enforcement on the Reservation, and thereby further the federal and tribal interests in protecting Indians and their property against the actions of non-Indians." *Castro-Huerta*, 597 U.S. at 650-651 (internal quotations omitted). As the Court concluded,

> the State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims. The State also has a strong interest in ensuring that criminal offenders—especially violent offenders—are appropriately punished and do not harm others in the State. The State's interest in protecting crime victims includes both Indian and non-Indian victims.

*Id*. at 852 (internal citation omitted). As this Court notes, the Nation "does not contend that defendants have denied the Nation of its jurisdiction to enforce its own criminal and traffic laws against non-member Indians. The defendants are not attempting to prosecute members of the Nation." Opinion and Order [Doc. 54, p. 4]. Indeed, "[b]oth the Nation and the defendants have the duty to protect their residents, enforce their laws, and uphold justice within their territorial boundaries." *Id*. The state "prosecution of non-member Indians of the Muscogee (Creek) tribe for misdemeanor traffic offenses occurring on public streets and roads in Tulsa [County] does not affect the tribe's authority to regulate its own citizens for violations of Creek tribal law. In fact, such a prosecution would not involve prosecuting any citizen of the Muscogee (Creek) tribe." *O'Brien*, 2024 OK CR 31 at ¶ 32 (recognizing that rather than harming the Nation, concurrent jurisdiction and prosecution of non-member Indians "would bolster the tribe's strong interest in public safety for its citizens in this part of the Creek reservation.").

Regarding the Nation's incorporated argument from its injunctive relief briefing, the

---

the *self* in tribal self-government. Non-member Indians are, for criminal jurisdiction purposes, similarly situated to non-Indians. Indian tribes are separate and distinct sovereigns, not a fungible amalgamation of Native American peoples." *City of Tulsa v. O'Brien*, 2024 OK CR 31 (J. Musseman, Specially Concurring at ¶ 14).

Nation offers nothing new to bolster the failed arguments and theories urged in *Castro-Huerta*, *O'Brien*, and their respective dissents. While the limitation on the holding in *Castro-Huerta* is noted, the framework of the legal test established in *Castro-Huerta* to determine jurisdiction in Indian country is unassailable under the current binding authority of the United States Supreme Court.

## I. STANDING AND THE ABSTENTION DOCTRINES.

Both Sheriff Regalado and Defendant Kunzweiler challenged Plaintiff's standing and argued for the application of the *Younger* abstention doctrine and *Colorado River* abstention doctrine in their respective motions to dismiss [Docs. 38 and 40]. Plaintiff, in turn, addressed those issues in a combined response [Doc. 57]. Because the arguments of both defendants are essentially the same, Sheriff Regalado adopts and incorporates by reference Defendant Kunzweiler's Reply in Support of Motion to Dismiss Plaintiff's Complaint [Doc. 67] to save the Court from being unnecessarily burdened by vastly similar briefing.

## CONCLUSION

Plaintiff's Complaint and request for relief is based upon the already failed legal arguments from the dissent in *Castro-Huerta* and the short and lone dissent in *O'Brien*. Applying the established jurisdictional test for Indian country, state jurisdiction is concurrent for violations of general crimes. Indeed, the Nation has not lost any ability to charge and prosecute its Members, non-Members, or non-Indians for violating Creek law in the Nation's Reservation, and it can prosecute the defendants in the State Prosecutions if the offenses are alleged to have occurred in the Nation's Reservation. The concurrent state prosecution of non-Members cannot adversely impact the Nation's self-government of *its* affairs and of *its* Members.

Furthermore, Plaintiff's sole issue with Sheriff Regalado is a Tulsa County Sheriff's Office memorandum that discusses how to administratively in-process an arrestee into the county jail, based upon whether the arrestee is a Member of the tribal territory where the incident occurred. Sheriff Regalado has no input or authority to decide whether an arrestee will be charged with any crime by the State of Oklahoma or by one of the tribes (Cherokee or Muscogee (Creek)). Once a person is charged, Sheriff Regalado takes directions from the state and/or tribal courts. Sheriff Regalado simply does not belong as a party to this lawsuit. Plaintiff has failed to state a claim upon which relief can be granted against Sheriff Regalado. Dismissal with prejudice is proper.

Filed: May 12, 2025

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*s/ Keith A. Wilkes*
Keith A. Wilkes, OBA 16750
Johnathan L. Rogers, OBA 21341
521 East Second Street, Suite 1200
Tulsa, Oklahoma 74120
T: 918.584.0400
F: 918.594.0505
kwilkes@hallestill.com
jrogers@hallestill.com
**ATTORNEYS FOR SHERIFF REGALADO**

## CERTIFICATE OF SERVICE

  I hereby certify that on May 12, 2025, I electronically transmitted the foregoing Reply in Support of Motion to Dismiss to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing and to the registered party participants of the ECF system.

               *s/ Keith A. Wilkes*
               Keith A. Wilkes