IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 25-CV-75-GKF-JFJ |
| | ) | |
| STEVE KUNZWEILER, in his official | ) | |
| capacity as District Attorney for the | ) | |
| Fourteenth Prosecutorial District of | ) | |
| Oklahoma, | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

This matter comes before the court on the Motion for Preliminary Injunction [Doc. 4] of

plaintiff Muscogee (Creek) Nation.  The Nation seeks a preliminary injunction to prevent

defendant Tulsa County District Attorney Steve Kunzweiler from asserting concurrent criminal

jurisdiction over Indians who are not members of the Nation and who are alleged to have

committed crimes not covered by the Major Crimes Act within the boundaries of the Nation's

Reservation.  On October 9, 2025, the court held a hearing on the motion.  For the reasons stated

below, the motion is denied.

"Four factors must be shown by the movant to obtain a preliminary injunction: (1) the

movant 'is substantially likely to succeed on the merits; (2) [the movant] will suffer irreparable

injury if the injunction is denied; (3) [the movant's] threatened injury outweighs the injury the

opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the

public interest.'" *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016) (quoting *Beltronics USA,

Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)).  "A preliminary

injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the

[movant] is entitled to such relief.'" *N. M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1245 (10th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). To prevail, the Nation must establish each factor. *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022).

Three categories of preliminary injunctions are disfavored and require a heightened standard of proof: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Colorado v. EPA*, 989 F.3d 874, 883-84 (10th Cir. 2021). To obtain a disfavored injunction, the movant must make a "strong showing" that the likelihood-of-success-on-the-merits and the balance-of-harms factors tilt in its favor. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (quoting *Fish*, 840 F.3d at 724).

## Analysis

### I.    Likelihood of Success on the Merits

As mentioned above, the issue presented in this case is whether the Tulsa County District Attorney may assert concurrent criminal jurisdiction over Indians who are not members of the Muscogee (Creek) Nation (hereinafter referred to as "nonmember Indians") and who are alleged to have committed crimes not covered by the Major Crimes Act (MCA) within the Nation's Reservation.

The Nation raises five arguments in support of its likelihood to succeed on the merits. All five are variants on a common theme—that state courts have no concurrent jurisdiction to try nonmember Indians unless authorized by Congress, and that the preemption analysis contained in *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 638-49 (2022) cannot be applied in this case.

In its first argument, the Nation contends that, under Supreme Court precedent, States lack criminal jurisdiction over *all* Indians in Indian country absent clear Congressional assent, and that a "presumptive prohibition" exists against state criminal jurisdiction over nonmember Indians.  It cites *McGirt v. Oklahoma*, 591 U.S. 894, 929 (2020), for the proposition that the presumptive prohibition recognizes no distinction between member and nonmember Indians.  In *McGirt*, the Court held that Jimcy McGirt, an enrolled member of the Seminole Nation convicted in an Oklahoma state court of three serious sexual offenses, had committed his crimes on land established by Congress as a reservation for the Creek Nation, and therefore within "Indian country."  Pursuant to the MCA, "*[a]ny Indian* who commits" certain enumerated major crimes "within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a) (emphasis added).  In other words, the MCA required McGirt—a member of the Seminole Nation who committed his crime on the Creek Reservation—to be tried in federal court.  Accordingly, McGirt's state court convictions were reversed for lack of jurisdiction.  In contrast, this case involves nonmember Indians who allegedly committed crimes *not* covered by the MCA.  The Supreme Court recognized no distinction between member and nonmember Indians in *McGirt* because the MCA recognizes no such distinction. Therefore, the holding in *McGirt* does not support a presumptive prohibition against state criminal jurisdiction over nonmember Indians in this case, as this case does not involve the MCA.

Although the holding in *Castro-Huerta* does not address the issue raised in this case,[1] the opinion sets forth the preemption analysis by which issues of a State's criminal jurisdiction in Indian country must be evaluated and decided.  After reviewing its precedents, the Court stated: "[i]n short, the Court's precedents establish that Indian country is part of a State's territory and that, unless preempted, States have jurisdiction over crimes committed in Indian country."  597 U.S. at 637-38.  State jurisdiction may be preempted "(i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government."  *Id*. at 638, 652-653.[2]  Accordingly, this court shall address the Nation's likelihood of success pursuant to the preemption analysis contained in *Castro-Huerta*.

Second, the Nation asserts that Congress recognizes no distinction between member and nonmember Indians for the purposes of state criminal jurisdiction in Indian country.  But Congressional provisions using the general term "Indian" "reflect the Government's treatment of Indians as a single large class with respect to *federal* jurisdiction and programs."  *Duro v. Reina*, 495 U.S. 676, 689-90 (1990).  Those Congressional references are not dispositive of a State's jurisdiction to prosecute nonmember Indians accused of committing non-major crimes in Indian country.  More importantly, Congress need not have made a distinction between member and nonmember Indians.  As the Supreme Court stated in *Castro-Huerta*:

> [U]nder the Constitution and this Court's precedents, the default is
> that States may exercise criminal jurisdiction within their territory.
> See Amdt. 10.  States do not need a permission slip from Congress
> to exercise their sovereign authority.  In other words, the default is

---

[1] The Court clearly stated in two footnotes that it expressed no view on the issue of whether a State may exercise jurisdiction over crimes committed by Indians against non-Indians in Indian country. *See* 597 U.S. at 650 n.6, 655 n.9.

[2] The analysis is often referred to as the *Bracker* test*.  See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-45 (1980).

that States have criminal jurisdiction in Indian country unless that jurisdiction is *preempted*.

597 U.S. at 653.[3]

Third, the Nation contends—and is correct—that the Court in *Castro-Huerta* expressed no view on state jurisdiction over a State's prosecution of crimes committed by an Indian against a non-Indian in Indian country. *Id.* at 650 n.6, 655 n.9. However, as previously discussed, the Court identified the preemption analysis to be applied in deciding such issues. *See id.* at 639 n.2.

Fourth, the Nation argues that "*Castro-Huerta*'s Constitutional foundation forecloses any distinction between member and non-member Indians." [Doc. 4, p. 20]. In *Castro-Huerta*, the Court cited the Tenth Amendment in support of its statement that "as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country." 597 U.S. at 636. The Nation contends the Court's reasoning does not support state jurisdiction over crimes by Indians because Congress's power to legislate with respect to Indian tribes is "plenary and exclusive" (citing *Haaland v. Brackeen*, 599 U.S. 255, 272 (2023)), and because the Tenth Amendment reserves to the states only "that residuum of sovereignty not delegated to the United States by the Constitution." [Doc. 4, p. 22 (citing *Skiriotes v. Florida*, 313 U.S. 69, 77 (1941), and *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 899-900 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 273 (2022), among others)].

In *Haaland v. Brackeen*, a birth mother, foster and adoptive parents, and the State of Texas brought an action seeking a declaration that the Indian Child Welfare Act (ICWA) was

---

[3] An example of Supreme Court precedent rejecting the proposition that Congress must expressly authorize the exercise of state jurisdiction is *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987). There, the Court wrote that "[o]ur cases … have not established an inflexible *per se* rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent." *Id.* at 214-15.

unconstitutional because it exceeds Congress's power under Article I.  The Court rejected that claim, confirming that Congress's power to legislate with respect to Indians is well established and broad.   But defendant in the instant case does not contest Congress's plenary power to legislate with respect to Indians.   He merely rejects the proposition "that a state only has criminal jurisdiction in Indian country if Congress provides a permission slip."  [Doc. 41 at 20-21].   As previously mentioned in footnote 3 of this Opinion and Order, the Supreme Court has not established an inflexible *per se* rule precluding state jurisdiction in Indian country in the absence of express congressional consent.

*Skiriotes v. Florida* involved the state court criminal conviction of a man for using diving equipment in the taking of sponges from the Gulf of Mexico off the coast of Florida.  A Florida statute forbade the use of diving suits for the purpose of taking commercial sponges from the Gulf of Mexico within the territorial limits of that State.   The issue presented was whether Florida's statute was beyond the power of the State.   The Court found no basis for holding that the statute exceeded the limits of state power and affirmed the conviction.  The portion of the Court's opinion on which the Nation relies has nothing to do with the Tenth Amendment.  Rather, it addresses the power given to Congress by Section 3 of Article IV of the Constitution to admit new States.

In *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence,* a former tribal employee, a non-Indian, filed suit in Utah state court against the tribe on claims arising out of an employment contract.   The tribe filed suit in federal court seeking an injunction to halt the state court proceedings.  The federal district court dismissed the tribe's complaint and the tribe appealed.  The Tenth Circuit reversed and remanded, in part because "when a case brought against a tribe or its members 'arise[es] from conduct in Indian country,' state courts lack jurisdiction 'absent clear congressional authorization.'"  22 F.4th at 900 (quoting *Navajo Nation v. Dalley*, 896 F.3d 1196,

1204 (10th Cir. 2018)).  *Lawrence* is unpersuasive, as the instant case does not involve a lawsuit

brought against the Nation or its members in state court.

Because the Supreme Court has not established an inflexible *per se* rule precluding state

jurisdiction in Indian country in the absence of express congressional consent, the Nation's fourth

argument does not persuade the court that the Nation is likely to succeed on the merits.

Fifth, the Nation contends that the Oklahoma Court of Criminal Appeals' decision in *City*

*of Tulsa v. O'Brien*, ---P.3d---, 2024 WL 5001684 (Okla. Crim. App. Dec. 5, 2024), and its reliance

on *Castro-Huerta*, is not binding on this federal court.   The Nation is correct as a matter of law,

and the OCCA's opinion is not binding on this court.  However, this contention is not itself relevant

to the issue of whether the Nation is likely to succeed on the merits

### A.      Preemption by Federal Law

For the reasons stated above, the court finds and concludes that the defendant is not

preempted by federal law under ordinary principles of federal preemption from asserting

concurrent criminal jurisdiction over nonmember Indians charged with committing crimes not

covered by the MCA within the Nation's Reservation.

### B.      Preemption by Unlawful Infringement on Tribal Self-Government

"[E]ven when federal law does not preempt state jurisdiction under ordinary preemption

analysis, preemption may still occur if the exercise of state jurisdiction would unlawfully infringe

on tribal self-government." *Castro-Huerta*, 597 U.S. at 649 (citing *Bracker*, 448 U.S. at 142-143;

*New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 333-35 (1983)).  "Under the *Bracker*

balancing test, the Court considers tribal interests, federal interests, and state interests." *Castro-*

*Huerta*, 597 U.S. at 649.  For the following reasons, this court concludes that the Nation has not

met its burden of showing that the exercise of concurrent criminal jurisdiction over nonmember Indians unlawfully infringes on tribal self-government.

First, the State's exercise of concurrent jurisdiction to prosecute non-major crimes committed by nonmember Indians does not infringe upon the Nation's sovereignty or its internal self-government. The State's exercise of concurrent jurisdiction does not displace or diminish the Nation's jurisdiction and authority to prosecute those same individuals for violations of tribal law.

Second, the State's exercise of concurrent jurisdiction serves tribal interests in prosecuting nonmember Indians for crimes committed in Tulsa County against the Nation and its property, as well as the Nation's members and their property. Tulsa County is largely metropolitan, and thus quite different in many respects than other reservations. Though the Nation has presented evidence that it has opened a courtroom in Jenks, Tulsa County, Oklahoma, the testimony presented was that the Jenks court is a traffic court only.

Third, the Nation's interest in prosecuting nonmember Indians to the exclusion of the State is of lesser weight than its legitimate governmental interest in prosecuting its own members to the State's exclusion. *See Washington v. Confederated Tribes of Colville Indian Rsrv.*, 447 U.S. 134, 161 (1980) ("For most practical purposes [nonmember] Indians stand on the same footing as non-Indians resident on the reservation.").

Fourth, the State's exercise of concurrent jurisdiction to prosecute non-major crimes committed by nonmember Indians does not infringe upon federal interests. State prosecution of crimes committed by nonmember Indians, like state prosecution of crimes committed by non-Indians in Indian country, supplements federal authority, it does not supplant it. *Cf. Castro-Huerta*, 597 U.S. at 650 ("State prosecution [of a non-Indian] would supplement federal authority, not supplant federal authority."). It also furthers federal interests by protecting the Nation and its

property, and members of the Nation and their property, against the criminal actions of nonmember Indians.

Fifth, the State has a strong interest in the exercise of concurrent jurisdiction over nonmember Indians alleged to have committed non-major crimes on the Nation's Reservation. "[T]he State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims," both Indian and non-Indian. *Id.* at 651. "The State also has a strong interest in ensuring that criminal offenders are appropriately punished and do not harm others in the State." *Id.*

Having considered the arguments contained in the briefing and the evidence presented at the hearing, this court concludes that the Nation has not met its burden of showing that the exercise of concurrent state jurisdiction over nonmember Indians unlawfully infringes on tribal self-government. Because the Nation has not met its burden to show that it is substantially likely to succeed on the merits, the motion for preliminary injunction [Doc. 4] must be denied.[4]

## II.    Irreparable Harm

The second factor that must be shown to obtain a preliminary injunction is irreparable injury if the injunction is denied. *Free the Nipple*, 916 F.3d at 805 (citing *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012)). "To constitute irreparable harm, an injury must be certain, great, actual, 'and not theoretical.'" *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "[T]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that

---

[4] The failure to establish a significant possibility of success on the merits renders addressing the remaining factors for a preliminary injunction unnecessary. *Warner v. Gross*, 776 F.3d 721, 736 (10th Cir. 2015). Although the court need not address the remaining factors, it nevertheless opts to do so.

there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (emphasis in original).

As previously stated, the defendant's prosecution of nonmember Indians alleged to have committed crimes not covered by the MCA within the Nation's Reservation does not prevent the Nation from prosecuting the same nonmember Indians under tribal law.  Just as a state and the federal government may each—as separate sovereigns—prosecute an individual for the same criminal conduct without causing harm to their respective sovereignty, so too can the Nation and the State exercise concurrent jurisdiction over a nonmember Indian for the same criminal act without irreparable harm to the Nation.  Having read the parties' briefs on the motion, and having heard the evidence presented at the hearing on the motion, this court concludes that the Nation has not shown that it is irreparably harmed by the exercise of concurrent jurisdiction over nonmember Indians alleged to have committed crimes not covered by the Major Crimes Act on its Reservation.

### III.    Balance of the Equities and the Public Interest

The third and fourth preliminary injunction factors—whether the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction and whether the preliminary injunction would not be adverse to the public interest—merge when the government is the party opposing the preliminary injunction.  *Black Emergency Response Team v. Drummond*, 737 F. Supp. 3d 1136, 1157 (W.D. Okla. 2024) (citing *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020)).

The Nation has not shown that the threatened injury to its interests outweighs the harms that the preliminary injunction will cause the State.  Nor has it shown that a preliminary injunction would not adversely affect the public interest.  Tulsa County has a population of approximately 670,000 people, and a majority of Tulsa County lies within the Nation's Reservation.  The

defendant, along with approximately sixty (60) assistant district attorneys and sixty (60) support staff, enforces the laws of the State of Oklahoma in Tulsa County.  Any alleged injury to the Nation's sovereignty resulting from the State's exercise of concurrent criminal jurisdiction over nonmember Indians does not outweigh the injury to the citizens of Tulsa County—both Indian and non-Indian—or the adverse effect to the public interest by enjoining the defendant and his office from enforcing the laws of the State against nonmember Indians.  Accordingly, the court concludes the Nation has not met its burden as to the third and fourth factors.

## IV.      The Preliminary Injunction Sought is Disfavored

The traditional purpose for preliminary injunctions is to "preserve the status quo until a trial on the merits may be had." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir. 1991), *overruled on other grounds by O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).  In this Circuit, the status quo is defined "by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* at 1100 (emphasis in original).

Here, the Nation seeks a preliminary injunction that would alter the status quo.  The defendant prosecuted nonmember Indians for conduct within the Nation's Reservation for over two years before the Nation filed this lawsuit and its motion for preliminary injunction.  *See, e.g., Oklahoma v. Bohanan*, No. CM-2022-108 (Tulsa Cnty. Dist. Ct. filed Jan. 10, 2022).  DA Kunzweiler has continued to prosecute nonmember Indians for conduct that occurred on the Nation's Reservation.  *See Oklahoma v. Hess*, No. CM-2024-2951 (Tulsa Cnty. Dist. Ct. filed Aug. 8, 2024); *Oklahoma v. Mason*, No. CM-2024-4510 (Tulsa Cnty. Dist. Ct. filed Nov. 27, 2024);

*Oklahoma v. Morris*, No. CM-2024-3928 (Tulsa Cnty. Dist. Ct. filed Oct. 14, 2024); *Oklahoma v. Neafus*, No. CM-2024-1222 (Tulsa Cnty. Dist. Ct. filed Apr. 3, 2024).

Because the Nation seeks a preliminary injunction that alters the status quo, it must make a strong showing with regard to both the likelihood of success on the merits and the balancing of harms. As discussed above, it fails to do so. Even if the preliminary injunction sought here was not disfavored, this court finds and concludes the plaintiff would not prevail on its motion.

## Conclusion

For the foregoing reasons, the Motion for Preliminary Injunction of plaintiff Muscogee (Creek) Nation [Doc. 4] is denied.

IT IS SO ORDERED this 7th day of November, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE